IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>STONE & WEBSTER, INCORPORATED, et al.<br>　　　　　　　　　　Debtors,<br><br>SAUDI AMERICAN BANK,<br>　　　　　　　　　　Plaintiff,<br>v.<br>THE SHAW GROUP, INC., SWINC ACQUISITION THREE, INC. and STONE & WEBSTER ENGINEERING CORPORATION, et al.,<br>　　　　　　　　　　Defendants. | Chapter 11<br><br>Case No. 00-02142 (RRM)<br>Jointly Administered<br>Adv. No. 01-7766 (PJW)<br><br><br>1:04-cv-00834-SLR |

**APPENDIX TO OPENING BRIEF IN SUPPORT OF SAUDI
AMERICAN BANK'S MOTION FOR ASSESSMENT OF DAMAGES**

**Monzack & Monaco, P.A.**
Francis A. Monaco, Jr. (#2078)
Kevin Mangan (#3810)
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
(302) 656-8163

**Kirkpatrick & Lockhart Nicholson Graham LLP**
John C. Hutchins (BBO #246060)
Daniel E. Rosenfeld (BBO #560226)
Amy B. Abbott (BBO #648072)
75 State Street
Boston, MA 02109
(617) 261-3100

Dated: May 18, 2005

# TABLE OF CONTENTS

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit A | Unpublished Decisions Cited in Opening Brief | |
| | *Bickford v. Smithson*, C.A. No. 2002-05-187, 2003 WL 22931394 (Del. Com. Pl. Nov. 20, 2003) | A1 – A3 |
| | *Comrie v. Enterasys Networks, Inc.*, No. 19254, 2004 WL 936505 (Del. Ch. Apr. 27, 2004) | A4 – A10 |
| | *Hercules Inc. v. Aetna Casualty and Surety Co.*, Nos. 92C-10-105, 90C-FE-195-1-CV, 1998 WL 962089 (Del. Super. Sep. 30, 1998) | A11 – A22 |
| | *Salaman v. National Media Corp.*, No. C.A. 92C-01-161, 1994 WL 465535 (Del. Super. July 22, 1994) | A23 – A25 |
| | *Taylor v. American Specialty Retailing Group*, No. Civ. A 19239, 2003 WL 21753752 (Del. Ch. July 25, 2003) | A26 – A38 |
| Exhibit B | Memorandum Opinion | A39 – A56 |
| Exhibit C | Stone & Webster Engineering Corporation's Guaranty | A57 – A60 |
| Exhibit D | May 31, 2000 Demand Letter | A61 |
| Exhibit E | Credit Agreement | A62 – A65 |
| Exhibit F | Promissory Note | A66 |
| Exhibit G | Statement of Loan Account | A67 |
| Exhibit H | Excerpts from January 25, 2002 Bankruptcy Court Hearing | A68 – A76 |
| Exhibit I | Excerpts from the Deposition Transcript of Gary Graphia | A77 – A80 |
| Exhibit J | Order Under Fed. R. Bankr. P. 9019 Approving Settlement with Saudi American Bank | A81 – A89 |
| Exhibit K | Docket Report of Preference Action | A90 – A104 |

| Exhibit L | Docket Report of Recovery Action | A105 – A118 |
|---|---|---|
| Exhibit M | Docket Report of Saudi Aramco Action | A119 – A124 |
| Exhibit N | Shaw's Limited Response to the Debtors' Motion for Order Under Fed. R. Bankr. P. 9019 Approving Settlement with Saudi American Bank | A125 – A128 |

# EXHIBIT A

Westlaw.

Not Reported in A.2d
2003 WL 22931394 (Del.Com.Pl.)
(Cite as: 2003 WL 22931394 (Del.Com.Pl.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Common Pleas of Delaware,
Sussex County.
Gary P. BICKFORD and M.L. Bickford, his wife,
Plaintiffs,
v.
Edward Scott SMITHSON, Becky Davis, and Century 21/Wilgus Associates, Inc.,
Defendants.
C.A. No. 2002-05-187.

Submitted: Nov. 20, 2003.
Decided: Nov. 20, 2003.

Richard E. Berl, Jr. Esquire, Smith, O'Donnell, Procino & Berl, LLP, Georgetown, DE, for plaintiffs.

Lawrence B. Steele, III, Esquire, Edward Scott Smithson, Georgetown, DE, for defendant.

Dean A. Campbell, Esquire, Moore & Rutt, P.A., Becky Davis and Century 21, Georgetown, DE, for defendants.

TRADER, J.

*1 In this civil action the defendants, Edward Scott Smithson (Smithson) and Century 21/Wilgus Associates (Century 21) seek attorney's fees pursuant to a real estate contract. On the basis of the contract and after examining the factors set forth in DR-1.5, I award Smithson attorney's fees in the amount of $1500.00 and Century 21 attorney's fees in the amount of $1500.00.

**Posture of the Case**
Gary P. Bickford and M.L. Bickford (Bickford) entered into a real estate contract with Smithson for the purchase of property at Frankfurt, Delaware. Century 21 was the real estate agent for the sellers. The contract required the disclosure of any problems relating to the existing sewer system, and Smithson denied the existence of any problems. After settlement, the plaintiffs discovered that the septic system was not working properly and installed a new septic system.

Bickford filed a civil suit in this court and alleged that Smithson breached a real estate contract by failing to disclose defects associated with the septic system. Bickford also alleged that Smithson and Century 21 knew that the septic system was not functioning properly, misrepresented the condition of the septic system, and failed to disclose problems concerning the septic system. Smithson and Century 21 filed an answer denying the allegations of the complaint. At the conclusion of the trial, the court found that Bickford had not established by a preponderance of the evidence that either defendant committed fraud. Additionally, the court found that the plaintiff did not prove by a preponderance of the evidence a breach of contract by Smithson. Hence, the court entered judgment for the defendants for costs of these proceedings. Smithson and Century 21 now seek an award of attorney's fees pursuant to the contract and Bickford has filed a response opposing the award of attorney's fees.

**The Law Relating to an Award of Attorney's Fees**
The general rule that each party must bear his or her attorney's fees and expenses of litigation unless there is a "contractual or statutory basis for liability". *Safeway Stores v. Chamberlain Protective Services, 451 A.2d 66, 68 (D.C.1982)*. See also *Thomas v. Marta, 1990 WL 35292 at *2 (Del.Super.Ct.1990); Tri State Mall Assocs. v. A.A.R. Realty, 298 A.2d 368, 373 (Del.Ch.1972)*. Although courts of equity are permitted to impose attorney's fees on the losing side if the prevailing party can show a compelling special equity, law courts in Delaware "may not order the payment of attorney's fees as part of costs to be paid by the losing party unless the payment of such fees is authorized by some provision of statute or contract". *Casson v. Nationwide Ins. Co. 455 A.2d 361, 370 (Del.Super.Ct.1982)*.

Courts give great weight to contract clauses creating the right to payment of attorney's fees in subsequent litigation. The contracting parties have the opportunity to negotiate for provisions within the contract that would require one party to pay the attorney's fees of the other if they do not abide by the terms of the contract. *Knight v. Grinnage, 1997 WL 633299 at *3 (Del. Ch .)*. In Delaware, both courts of law and equity "routinely enforce provisions of a contract allocating costs of legal actions arising from the breach of a contract". *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2003 WL 22931394 (Del.Com.Pl.)  
**(Cite as: 2003 WL 22931394 (Del.Com.Pl.))**

Page 2

*2 In most cases an indemnification clause is broad enough to include payment of attorney's fees. In *Leung v. Feldman,* the defendant real estate agent sued the cross-claim defendant property owners for attorney's fees based on the indemnification clause within the "authorization to exchange" contract. 1984 WL 21987 at *1 (Del. Ch.). The court granted the claim even though the indemnification clause did not specifically mention attorney's fees. *Id.* at *2.

### The Claim for Attorney's Fees Arises Under the Contract

Century 21 asserts a claim for attorney's fees under paragraph 15 of the Contract of Sale. Paragraph 15 of the Contract of Sale provides as follows:

> Indemnification: In the event any dispute arises under this Contract between Seller(s) and Buyer(s) resulting in Broker(s) or any Agents, or Subagents or employees of Broker(s) being a party to any litigation, Seller(s) or Buyer(s), whichever is unsuccessful, shall indemnify and hold Broker(s), Agents, Subagents or employees of Broker(s) harmless from any liability, loss, damage, costs, expense, and attorneys fees, provided such litigation does not result in a judgment against Agents, Subagents, or employees of Broker(s) for acting improperly under this Contract.

Bickford contends that Paragraph 15 of the contract applies only to disputes that arise solely between the seller and the buyer. Bickford's contention is incorrect. The courts of this state have liberally interpreted indemnification clauses. I hold that Century 21 is entitled to attorney's fees under the indemnification provision of the contract.

Smithson's claim for attorney's fees also arises under Paragraph 15 of the Contract of Sale which provides in pertinent part as follows: "... Additionally, in the event a dispute arises under this Contract between Seller(s) and Buyer(s) resulting in any litigation, Buyer(s) or Seller(s), whichever is unsuccessful, shall also be liable for the other partys' court costs and attorney's fees ."

Bickford asserts that this claim does not arise under the contract, since he has filed a tort action based on fraud. Bickford's contention is incorrect. Although Bickford alleges a civil action based on fraud, Count 1 of his complaint sets forth an allegation of breach of contract. I hold this claims for attorney's fees arises from a dispute between sellers and buyers under the real estate contract.

### The Factors Under DR-1.5 Determine the Reasonableness of the Claim

The factors set forth in Delaware Lawyers Code of Professional Responsibility DR-1.5 determine the reasonableness of a claim for attorney's fees. Those factors are as follows:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fees customarily charged in the locality for similar legal services.

*3 (4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

These factors were applied in ordering attorney's fees in *Husband S. v. Wife S.,* 294 A.2d 89, 93 (Del.Supr.,1972) and as well as *General Motors Corp.. v. Cox,* 304 A.2d 57 (Del.Supr.,1973). To these factors, *General Motors Corp. v. Cox, Supra.* added the factor of the ability of the losing party to pay.

### Century 21's Claim for Attorney's Fees.

In applying the factors of DR-1.5 to the case, I will consider the factors addressed by counsel.

### Time Required

The time required is documented by the attachments to Mr. Campbell's Motion for Attorney's Fees. Defense counsel spends considerable time preparing for arbitration and trial as well as the time at arbitration and trial. I will consider this factor along with other factors in determining the reasonable value of counsel's services.

### Amount Involved

This factor relates to the amount involved and results obtained. Century 21's exposure to liability was approximately $18,000 and the result obtained was a judgment for Century 21. The amount involved is a significant factor, but it must be considered in relationship to other factors in determining a reasonable amount.

### Fees Customarily Charged and the Reputation of the Attorney

Based on the representation of defense counsel, I

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2003 WL 22931394 (Del.Com.Pl.)
(Cite as: 2003 WL 22931394 (Del.Com.Pl.))

Page 3

conclude that $175.00 per hour is a reasonable rate according to local standards and that defense counsel holds a good reputation in the legal community in Georgetown involving general civil litigation.

### Ability to Pay

It appears that plaintiff's financial resources are limited. Bickford had to obtain a loan from the State of Delaware in order to construct a new septic system. I must weigh this factor against the other factors in determining reasonable counsel fees. I conclude that the amount of attorney's fees must be reduced because of the plaintiffs' ability to pay. I award Century 21 counsel fees in the amount of $1500.00.

### Analysis of the Factors Relating to Smithson's Claim for Attorney's Fees

In applying the factors to Mr. Steele's claim for attorney's fees, I conclude that he is an attorney of good reputation within the community in regard to general civil litigation and that his fees are within the range of customary fees charged in the Sussex County community. I further conclude that the time spent was reasonable and necessary under the circumstances of this case. As to the result obtained, Smithson was exonerated from civil liability in an amount of $18,000.00. Taking into consideration these factors as well as plaintiff's ability to pay, I will award Smithson attorney's fees in the amount of $1500.00.

*4 Judgment is entered in behalf of the defendant, Becky Davis and Century 21/Wilgus Associates, Inc. and against Gary P. Bickford and M.L. Bickford in the amount of $1500.00 plus costs of these proceedings. Judgment is entered in behalf of Edward Scott Smithson and against Gary P. Bickford and M.L. Bickford in the amount of $1500.00 plus costs of these proceedings.

**IT IS SO ORDERED.**

2003 WL 22931394 (Del.Com.Pl.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d
2004 WL 936505 (Del.Ch.)
(Cite as: 2004 WL 936505 (Del.Ch.))

Page 1

H
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
Michael COMRIE, Ian Cheong, Earle Comrie, Kay Comrie, Leroy Dougherty, Cynthia A. Ott, Peter Ott, Stephanie Sebastiano, Sally Seto, Afshin Shams, and Julie M. Shams, Plaintiffs,
v.
ENTERASYS NETWORKS, INC., a Delaware corporation, Gnts (Canada) Inc., an Ontario corporation, and Global Network Technology Services, Inc., a Delaware corporation, Defendants.
No. 19254.

Submitted Jan. 22, 2004.
Decided April 27, 2004.

Vernon R. Proctor, Patricia Enerio, the Bayard Firm, Wilmington, Delaware, for the Plaintiffs.

William M. Lafferty, Patricia Uhlenbrock, Andrew H. Lippstone, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware; Douglas H. Meal, Emily C. Shanahan, Ropes & Gray, Boston, Massachusetts, for the Defendants.

*MEMORANDUM OPINION*

LAMB, Vice Chancellor.

*1 On January 22, 2004, the court held a hearing on the plaintiffs' application for an award of attorneys' fees and costs. For the reasons discussed below, the plaintiffs' request is granted in part and denied in part.

I.
The crux of the dispute in the underlying proceeding was the interpretation of a provision of a stock purchase agreement (the "Agreement") executed in connection with a sale of the plaintiffs' business for a combination of cash and stock options. That provision provides, in relevant part, that if a defined "Trigger Event" occurred (here, the decision not to proceed with an initial public offering without which the options provided as consideration are worthless) the buying company must either
(i) provide equivalent substitute or replacement awards on the same terms and conditions to the former employees of [the selling company]; or (ii) pay $4,620,000 in the aggregate for all Options then held by the Partners and former employees of [the selling company]. [FN1]

FN1. DX-29 Ex. 7.11.

After a Trigger Event occurred, the defendants, invoking clause (i) of that provision, proceeded to provide the plaintiffs with replacement options having the same value as the original options *at the date of replacement of the options*. The court found [FN2] that the provision, although ambiguous, required the defendants to provide the plaintiffs with replacement options having the same value as the original options *at the date of issuance of the original options*. The court found damages in the amount of $2,190,620. Because the plaintiffs held only 58.8% of the options, [FN3] the court awarded the plaintiffs $1,309,991.

FN2. The court's decision is reported at *Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1 (Del. Ch.2003).

FN3. Certain employees of the selling company who were not plaintiffs in the underlying proceeding held the remainder of the options. The court, in a subsequent opinion, see *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337 (Del. Ch. Feb. 17, 2004), held that such employees were third-party beneficiaries of the Agreement.

The plaintiffs now seek costs and attorneys' fees in connection with the underlying proceedings based on section 10.6 of the Agreement ("Section 10.6"). Section 10.6 provides, "[i]n any action or suit to enforce any right or remedy under this Agreement or to interpret any provision of this Agreement, *the prevailing party shall be entitled to recover its costs, including reasonable attorneys' fees.*" [FN4] Specifically, the plaintiffs seek (1) attorneys' fees, disbursements, and other costs in the amount of $373,260.74; (2) court costs totaling $4,983; [FN5] (3) expert witness fees totaling $68,272.70; and (4) taxable fees and expenses of $56,540.59 in

Not Reported in A.2d  
2004 WL 936505 (Del.Ch.)  
**(Cite as: 2004 WL 936505 (Del.Ch.))**

Page 2

connection with services rendered by a litigation support firm that provided economic analysis and assistance to the plaintiffs' expert witness. The total amount of costs and fees sought is $503,057.03.

> FN4. DX-29 § 10.6 (emphasis added).
>
> FN5. The plaintiffs initially sought $4,591 in court costs, but increased that amount after receiving an additional invoice from the Register in Chancery for ordinary court costs. *See* Supplemental Aff. of Vernon R. Proctor at ¶ 2 & ex. A.

The defendants respond to the plaintiffs' bill of costs with four arguments. [FN6] First, they argue that Section 10.6 requires a claim-by-claim, rather than all-or-nothing approach in determining the prevailing party. Second, the defendants argue that, even assuming the all-or-nothing approach is correct, the plaintiffs were not the prevailing party in the underlying litigation. Third, the defendants contend that regardless of which approach is used, the plaintiffs' request for attorneys' fees is unreasonable in light of the fact that the plaintiffs were only awarded $1,309,991 of the $4,620,000 originally sought. Finally, the defendants argue that, apart from attorneys' fees, the term "costs" in Section 10.6 is not broad enough to include either certain of the ordinary disbursements made by the plaintiffs' attorneys, or that portion of the plaintiffs' expert witness and litigation support fees and expenses beyond those permitted by 10 *Del. C.* § 8906.

> FN6. The defendants do not dispute that the underlying proceeding was an action to enforce a right or remedy under the Agreement.

*2 Each of the defendants' arguments is addressed in turn.

II.  
A. *Section 10.6 Calls For An All-Or-Nothing Approach To Determining A Prevailing Party*

The plaintiffs' amended verified complaint contains four counts: (1) specific performance of the Agreement; (2) injunction against a threatened breach of contract; (3) breach of contract; and (4) breach of the covenant of good faith and fair dealing. [FN7] Because the court's decision rested solely on a breach of contract theory, the choice of approach is important to the determination of fees.

> FN7. Am. Verified Compl. for Specific Performance and for Ancillary Injunctive Relief (Feb. 20, 2002).

The Agreement governs an award of costs, and the court looks solely to that document in determining which approach to utilize. [FN8] In *Brandin v. Gottlieb,* a contractual agreement provided "[t]he party prevailing in any action, suit or proceeding shall be entitled to receive from the losing party prompt reimbursement of all reasonable legal fees and disbursements incurred by the prevailing party in connection with such action, suit or proceeding." [FN9] Noting "a court of equity's natural tendency to avoid stark rulings," the *Brandin* court nevertheless held that such tendency "must give way to the court's duty to give effect to the most reasonable reading of" an agreement. [FN10]

> FN8. *See Brandin v. Gottlieb,* 2000 WL 1005954, at *28 (Del. Ch. July 13, 2000) (basing a determination of fees on contractual provisions).
>
> FN9. *Id.* at *26 (internal quotations omitted).
>
> FN10. *Id* at *27-*28; *see also Citadel Holding Corp. v. Roven,* 603 A.2d 818, 824 (Del.1992) ("When construing a contract, and unless a contrary intent appears, we will give words their ordinary meaning."), *cited in Brandin,* 2000 WL 1005954, at *28 n. 75.

The same principle guides the court in this case. Section 10.6 provides that "[i]n any action or suit to enforce any right or remedy under this Agreement ..., the prevailing party shall be entitled to recover its costs, including reasonable attorneys' fees." The language of the Agreement, itself the product of long negotiation by sophisticated parties and attorneys, clearly provides for an all-or-nothing approach in identifying the "prevailing party ." As the court stated in *Brandin,* "[h]aving chosen the common term 'prevailing party,' the parties can be presumed to have intended that the term would be applied by the court as it has traditionally done so." [FN11] That traditional application is an all-or-nothing approach involving an inquiry into which party predominated in the litigation.

> FN11. *Brandin,* 2000 WL 1005954, at *28.

The same is true here. Section 10.6, by its unambiguous terms, contemplates an all-or-nothing

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2004 WL 936505 (Del.Ch.)  
**(Cite as: 2004 WL 936505 (Del.Ch.))**

Page 3

approach to determining the prevailing party. [FN12]

> FN12. The defendants' attempts to differentiate Section 10.6 from the provision in *Brandin* are unavailing. The language of Section 10.6 is clear and unambiguous. Nothing in *Brandin* undermines that conclusion or suggests that only the specific words used in the contractual provision at issue in that case will be effective to implement an all-or-nothing approach.

B. *The Plaintiffs Are The Prevailing Party*

In determining status as the prevailing party, *Brandin* suggests the standard is "predominance in the litigation." [FN13] Using this standard, it is clear the plaintiffs here are the prevailing party.

> FN13. *Brandin*, 2000 WL 1005954, at *28.

The defendants argue that the main issue in this case is the remedy. The plaintiffs initially sought $4,620,000 in damages. The court found damages amounting to $2,190,620, but only awarded the plaintiffs $1,309,991. That is, based on the $4,620,000 figure, the damages found are only 47%, and the damages awarded to the plaintiffs are only 28%, of the damages the plaintiffs initially sought. [FN14]

> FN14. In fashioning a remedy, the court began its assessment by *accepting* the analysis of the plaintiffs' expert and rejecting that of the defendants' expert. *See Comrie*, 837 A.2d at 19 & n. 91. The court then adjusted the plaintiffs' expert's analysis, taking into account the vesting schedule of the options and the fact that termination of employment led to all unvested options being extinguished. *Id.* Thus, even *if* the remedy is the proper measure upon which to determine prevailing party status, the plaintiffs would be the prevailing party because notwithstanding the court's discount, it was the plaintiffs' and not the defendants' experts' testimony that the court accepted in fashioning the ultimate remedy.

The main issue in this case-and the issue upon which it can be determined the plaintiffs predominated in litigation-is the interpretation of the Agreement, specifically Exhibit 7.11 of the Agreement. First, were the main issue not interpretation, but award of a remedy, why would the defendants file two separate motions to dismiss and a motion for summary judgment based on the substantive question of how to properly interpret the Agreement? Second, the text of the court's opinion makes clear that the primary issue was interpretation, not remedy:

> *3 The court held a two-day trial and, following post-trial briefing and argument, now concludes that the defendants breached their performance obligation under this true alternative contract by failing to make an equivalent replacement award. This conclusion is based on a reading of the contract to require that a replacement award be structured to recreate the potential "in the money" value of the initial options at the time they were issued ... rather than the "in the money" value of those options at the time the determination was made to abandon the IPO. *Damages will be awarded based on this conclusion and certain secondary assumptions further discussed in this opinion.* [FN15]

> FN15. *Id.* at 3, 4 (emphasis added).

This wording makes clear that the plaintiffs were predominate in the main issue in the case-the interpretation of the Agreement. The remedy, a determination of damages, was based on this interpretation.

Finally, accepting the defendants' assertion would lead to perverse results. Notwithstanding the fact that the plaintiffs prevailed on all pretrial motions and the substantive issue at trial, if the defendants' argument is accepted, *they* are the prevailing parties because the plaintiffs only received 28% of the remedy initially sought. Thus, the defendants would be the ones filing a fee application. Indeed, the defendants suggest this is a proper result. [FN16] This is simply contrary to the reality of the litigation as well as the dictates of common sense.

> FN16. *See* Answering Br. of Defs. Enterasys Networks, Inc. and GlobalNetwork Technology Services, Inc. to Pls.' Application for an Award of Att'ys Fees and Costs at 11 n. 2 ("Although Defendants opted not to file an application for attorneys' fees at this juncture, Defendants reserve their right to assert at some later time their status as the prevailing parties in this action and their attendant right to recover, pursuant to Section 10.6, some or all of their costs, including reasonable attorneys' fees, from Plaintiffs.").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2004 WL 936505 (Del.Ch.)  
(Cite as: 2004 WL 936505 (Del.Ch.))

Page 4

C. *The Plaintiffs' Request For Fees Is Reasonable*

Section 10.6 allows for *reasonable* attorneys' fees. The defendants argue that "the critical factor in determining reasonableness is the limited level of success that Plaintiffs obtained in this action." [FN17] The court does not agree.

FN17. *Id.* at 11.

The defendants base their argument on this court's ruling in *Fasciana v. Electronic Data Systems Corp.* [FN18] The facts in *Fasciana* are inapposite to the facts here. First, *Fasciana* is a part of section 145 jurisprudence, [FN19] which takes into account important concerns dealing with the relationship between fiduciaries and a company not found in this case which is a run-of-the-mill contract dispute that does not involve fiduciary relations. Second, the plaintiff in *Fasciana* achieved only "very limited success" in prosecuting his advancement claim. Indeed, the court stated, "[p]ut simply, *Fasciana* did not obtain the type of 'excellent result' that would render him a prevailing party and therefore entitle him to a 'fully compensatory fee."' [FN20] Here, by contrast, the court has already determined that the plaintiffs are the prevailing parties. Finally, *Fasciana*, while determining to what extent section 145 allows for fees, recognized that parties may modify statutory default rules by contract. [FN21] This is exactly what occurred in the present case.

FN18. 829 A.2d 178 (Del. Ch.2003).

FN19. 8 *Del. C.* § 145 provides for the indemnification and/or advancement of expenses incurred by certain corporate affiliates in certain settings, most notably litigation.

FN20. *Fasciana,* 829 A.2d at 186 (emphasis added).

FN21. *See id.* n. 20. Although these cases were cited for the proposition one could contract out of "fee-on-fee" awards in the advancement context, the principle that one can provide for contractualas opposed to statutory-based fees is applicable here.

In this case, two sophisticated parties negotiated the terms of the Agreement, including a provision for an all-or-nothing approach when awarding fees. Although that provision only allows reasonable attorneys' fees, it does not explicitly tie reasonableness to success in the underlying litigation; for this court to do so would be to frustrate the language requiring an all-or-nothing approach. Rather, Section 10.6 requires a general review of fees to determine if they are reasonable. That is, reasonableness should be assessed by reference to legal services purchased by those fees, not by reference to the degree of success achieved in the litigation.

*4 The defendants have proffered no explanation (other than their failed argument) for why the plaintiffs' attorneys' fees are unreasonable. This is not a contingent fees case; the plaintiffs were billed on an hourly-rate basis. The plaintiffs received a 10% "courtesy discount" on those hourly rates across the board on their monthly statements of July 2002, December 2002, and April 2003 through the present. [FN22] The lead partner on the plaintiffs' case kept his hourly rate constant following inception of representation, notwithstanding two subsequent increases in his hourly rate for new matters. [FN23] Finally, given that the plaintiffs amended their complaint in response to the defendants' first motion to dismiss, successfully argued against the defendants' second motion to dismiss and motion for summary judgment, completed extensive discovery, and proceeded through trial, the number of hours submitted is entirely reasonable.

FN22. Affidavit of Vernon R. Proctor ¶ 6.

FN23. *Id.* ¶ 7.

D. *The Term "Costs" In Section 10.6 Does Not Extend To The Plaintiffs' Attorneys' Disbursements Or To The Plaintiffs' Expert Witness And Litigation Support Fees And Expenses Beyond Those Permitted By* 10 Del. C. § 8906

1. *Attorney Disbursements*

The plaintiffs ask the court to broadly construe the word "costs" in Section 10.6 to include all expenditures made by them in pursuing the litigation. The defendants argue the term "costs" in the Agreement should be construed in light of the more limited definition of "costs" that has developed in case law interpreting Court of Chancery Rule 54(d). [FN24]

FN24. Court of Chancery Rule 54 provides that "costs shall be allowed as of course to the prevailing party unless the Court otherwise directs." Also, 10 *Del. C.* § 5106

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A7

Not Reported in A.2d  
2004 WL 936505 (Del.Ch.)  
**(Cite as: 2004 WL 936505 (Del.Ch.))**

Page 5

provides that "[t]he Court of Chancery shall make such order concerning costs in every case as is agreeable to equity."

This court has noted, "[w]hile 'costs' and 'expenses' may seem to be synonymous in everyday usage, they are not identical for purposes of Rule 54(d)." [FN25] As has long been recognized by our courts, "[a]t the common law costs were unknown. The right to recover them depends on statutory authority, express or implied." [FN26] Court of Chancery Rule 54 provides that "costs shall be allowed as of course to the prevailing party unless the Court otherwise directs." [FN27] "Costs" under this Rule have been defined as "allowances in the nature of incidental damages awarded by law to reimburse the prevailing party for *expenses necessarily incurred in the assertion of his rights in court."* [FN28] In applications for costs brought pursuant to Rule 54, our courts have disallowed recovery for certain items, such as photocopying, transcripts, travel expense, and computer research. [FN29]

> FN25. *Gaffin v. Teledyne, Inc.,* 1993 WL 271443, at *1 (Del. Ch. July 13, 1993).
>
> FN26. *Peyton v. William C. Peyton Corp.,* 8 A.2d 89, 91 (Del.1939).
>
> FN27. Ct. Ch. Rule 54(d).
>
> FN28. *Peyton,* 8 A.2d at 91 (emphasis added), *quoted in Donovan v. Del. Water & Air Res. Comm'n,* 358 A.2d 717, 723 (Del.1976).
>
> FN29. *See, e.g., Gaffin,* 1993 WL 271443 at *2 (disallowing charges for transcripts, photocopying, travel, express mail, and computer research); *Barnett v. Braxton,* 2003 WL 21976411, at *2 (Del.Super.Aug. 15, 2003) (disallowing request to recover fees charged by process servers and couriers).

Delaware courts have, however, recognized that the scope of "costs" to be allowed may be expanded by agreement of the parties. [FN30] Thus, the question is whether the language of Section 10.6 is broad enough to include elements of litigation expenses beyond those allowed by rule.

> FN30. *See, e.g., J.J. White, Inc. v. Metro. Merch. Mart,* 107 A.2d 892, 894 (Del.Super.1954) ("It is also generally held that in actions for ... breach of a contract, in the absence of fraud, willful negligence or malice, the costs allowed should not exceed the expenses of litigation; and should not include [a]ttorneys' fees and expenses incurred by the plaintiff in the prosecution of his claim, *unless there is contractual or statutory provision therefor ."* ) (emphasis added).

Because the Agreement is a heavily negotiated contract between sophisticated persons who were represented by counsel, it is reasonable to assume that the parties and/or their attorneys were aware of the detailed and long-established usage of the word "costs ." The language of Section 10.6 can be seen to validate this assumption. By adding the statement "including reasonable attorneys' fees," the parties indicated their knowledge that the ordinary legal usage of the term "costs" is limited and would not include attorneys' fees. Moreover, Section 10.6 does not contain a broad term such as "all" (as in "all costs") or the legally recognized broader term "expenses." Those terms are present in cases relied upon by the plaintiffs. [FN31] Not only does this differentiate those cases from the present case, it indicates a general awareness among the parties and their attorneys that the definition of "costs" is, through well-developed jurisprudence, a limited one.

> FN31. *See, e.g., Salaman v. Nat'l Media Corp,* 1994 WL 465535, at * 2 (Del.Super. July 22, 1994) (provision contained term "all costs and expenses (including attorneys' fees and disbursements)"); *Phi Kappa Tau Hous. Corp. v. Wengert,* 86 S.W.3d 856, 859 (Ark.2002) (provision containing term "all costs incurred in connection with ...").

*5 For these reasons, the court construes the term "costs" in Section 10.6 consistently with the jurisprudence under Rule 54(d). The court recognizes the contrary argument that the parties' agreement to expand the definition of "costs" to include attorneys' fees evinces an intention to shift all of the costs of litigation to the losing party. Nevertheless, the court concludes that the better reading of the contract, and one that is more consistent with the precedent of this State, is to interpret the usage of the term "costs" in a manner consistent with established precedent under Rule 54(d). Parties intending to broaden that meaning by contract can easily do so.

*2. The Plaintiffs' Expert Witness And Litigation Support Fees And Expenses Beyond Those Permitted*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2004 WL 936505 (Del.Ch.)  
**(Cite as: 2004 WL 936505 (Del.Ch.))**

Page 6

*By 10 Del. C. § 8906*

The same logic applies in determining the plaintiffs' entitlement to expert witness and litigation support fees and expenses beyond those permitted by the court interpretation of 10 Del. C. § 8906. The statute provides:

> [T]he fees for witnesses testifying as experts ... in the ... Court of Chancery, within this State, shall be fixed by the court in its discretion, and such fees so fixed shall be taxed as part of the costs in each case and shall be collected and paid as other witness fees are now collected and paid.

Courts construing this statute have held that it allows prevailing parties compensation for a trial expert's actual testimonial time, waiting time, and certain travel time as " 'time necessarily spent in attendance upon the court.' " [FN32] Travel time, however, is not compensated at the same rate as in-court time. [FN33] Further, expressly excluded from the scope of recoverable expert witness fees are fees incurred in connection with the experts' time spent (1) consulting with or advising a party's attorney; [FN34] (2) preparing for testimony in court; [FN35] and (3) preparing for and providing deposition testimony. [FN36]

>    FN32. *Stevenson v. Henning*, 268 A.2d 872, 874-75 (Del.1970) (quoting *State ex rel. Price v. 0.0673 Acres of Land*, 224 A.2d 598, 602 (Del.1966)).
>
>    FN33. *Vaughan v. Creekside Homes, Inc.*, 1994 WL 586833, at *4 (Del. Ch. Oct. 7, 1994).
>
>    FN34. *Miles, Inc. v. Cookson Am., Inc.* 1995 WL 214397, at *1 (Del. Mar. 24, 1995).
>
>    FN35. *Sliwinski v. Duncan*, 1992 WL 21132, at *4 (Del. Jan. 15, 1992).
>
>    FN36. *Little v. Morgan*, 1991 WL 53456, at *1 (Del.Super.Apr. 10, 1991).

For the same reasons discussed above, Section 10.6 cannot be read to encompass an expanded definition of compensable witness fees. As such, the plaintiffs cannot recover for fees paid to their expert witness or the litigation support firm utilized by him that fall outside the scope of the statute.

### III.

The plaintiffs seem to have arrived at the $373,260.74 figure for attorneys' fees, disbursements and other costs by adding bills for fees ($361,221) and disbursements ($37,006.94), and then subtracting from that sum a courtesy discount ($24,967.20). It is unclear how the courtesy discount is split between fees and disbursements. The plaintiffs are to calculate a sum equal to billed fees ($361,221) minus any applicable courtesy discount and an award will be made in that amount.

The plaintiffs are also awarded the full amount of court costs ($4,983.00). [FN37]

>    FN37. *See* Answering Br. of Defs. Enterasys Networks, Inc. and GlobalNetwork Technology Services, Inc. to Pls.' Application for an Award of Att'ys Fees and Costs at 15 n. 4 ("Assuming the Plaintiffs are found to be the 'prevailing parties' within the meaning of Section 10.6, the Defendants do not dispute that the term 'costs' includes the Plaintiffs' court costs.").

The more difficult issue is the fees associated with the testimony of the plaintiffs' expert, Dr. Jarrell. In accordance with this letter opinion, Section 10.6 clearly does not cover the fees and expenses incurred in connection with services rendered by Dr. Jarrell's litigation support firm. The documents submitted to the court, however, are insufficient to provide a determination on which of Dr. Jarrell's fees fall within the scope of the statute. The plaintiffs are to provide further detail as to the nature of Dr. Jarrell's fees (specifically, further detailing how Dr. Jarrell's hours were spent). The plaintiffs will be awarded an amount equal to $450 (Dr. Jarrell's hourly rate) multiplied by the number of hours Dr. Jarrell spent in actual testimonial time and waiting time. In addition, the plaintiffs will be awarded an amount equal to $225 (or half Dr. Jarrell's hourly rate) [FN38] multiplied by the time spent by Dr. Jarrell traveling to his testimony location. The plaintiffs are awarded fees for Dr. Jarrell's travel expenses. [FN39]

>    FN38. This percentage is determined by the court within the discretion granted it.
>
>    FN39. *See Dunning v. Barnes*, 2002 WL 31814525, at *4 (Del.Super. Nov. 4, 2004) ("In addition, an expert's reasonable and ordinary traveling expenses may be reimbursed.").

*6 The plaintiffs are directed to provide such information within 10 days. The parties shall submit a conforming order 10 days after the plaintiffs

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2004 WL 936505 (Del.Ch.)  
**(Cite as: 2004 WL 936505 (Del.Ch.))**

Page 7

provide such information.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.