# EXHIBIT C

EXHIBIT 5

# STONE & WEBSTER ENGINEERING CORPORATION



245 SUMMER STREET, BOSTON, MASSACHUSETTS 02210

TELEPHONE: 617-589-5111          FAX: 617-589-2156, 8071

BOSTON, MA
CHATTANOOGA, TN
CHERRY HILL, N.J.
DALLAS, TX
DENVER, CO
FT. LAUDERDALE, FL
HOUSTON, TX
MADISON, AL
OAK RIDGE, TN

NEW YORK, NY
PLEASANTON, CA
PORTLAND, ME
PORTLAND, OR
RICHLAND, WA
RICHMOND, VA
TAMPA, FL
WASHINGTON, D.C.

October 11, 1994

Saudi American Bank
P. O. Box 842
Al Khobar 31952
Saudi Arabia

Gentlemen:

To induce you to extend credit by way of overdraft, short termloans, letters of credit, letters of guarantees, to or for the account of Bugshan S&W Company Ltd. (the "Borrower") and purchase or accept instruments upon which the Borrower is liable, the undersigned hereby unconditionally guarantees the punctual payment when due of 50% of all obligations of the Borrower to you now or hereafter existing ("Obligations") together with interest thereon and any and all expenses incurred by you in enforcing your rights under this Guaranty. The remaining 50% is guaranteed by A. S. Bugshan & Bros.

The liability of the undersigned under this Guaranty shall be unconditional irrespective of (i) any lack of enforceability of any Obligation, (ii) any change of the time, manner or place of payment, or any other term, of any Obligation, (iii) any exchange, release, or non-perfection of any collateral securing payment of any Obligation, (iv) any law, regulation or order of any jurisdiction affecting any term of any Obligation or your rights with respect thereto, and (v) any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Borrower or a guarantor.

The undersigned waives promptness, diligence, and notices with respect to any Obligation and this Guaranty and any requirement that you exhaust any right or take any action against the Borrower or any collateral security. This Guaranty shall be governed by the laws of the State of New York.

This is a continuing guaranty and shall remain in full force and effect until written notice shall have been received by you from the undersigned that it has been revoked, but any such notice shall not release the undersigned from any liability as to any Obligation existing at the time of receipt of such notice.

1889 · STONE & WEBSTER · 1989

2.

If and only if an amount of a designated currency is here specified Thirty Five Million U.S. Dollars (U.S. $35,000,000.00) then the liability of the undersigned under this Guaranty with respect to the aggregate principal amount of Obligations shall not exceed 50% of the equivalent of the amount here specified.

STONE & WEBSTER ENGINEERING CORPORATION

By: _____

R. B. Kelly, Senior Executive Vice President and Chief Financial Officer

Notary: _____

Commonwealth of Massachusetts
Middlesex, S.S. Date *October 12, 1994*
Then personally appeared the above na...
. . . *Richard B. Kelly* . . . .
and acknowledged the foregoing instrume ...
to be his free act and deed, before me
John C. Smith, Notary Public
My Commission Expires *March 30, 2001*

003-SAUDAMER.3

A 58

## STONE & WEBSTER ENGINEERING CORPORATION

### TRANSCRIPT FROM RECORDS OF BOARD OF DIRECTORS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*,

       RESOLVED, that, without in any way limiting the powers conferred upon them by law, by the Agreement of Association and Articles of Organization, as amended, or the By-laws of this Corporation, the Chairman of the Executive Committee, the Chairman of the Board, the Vice Chairman of the Board, the President, any Executive Vice President, any Senior Vice President, any elected Vice President (not including appointed Vice Presidents of a Group or Division of the Corporation) and the Secretary of this Corporation, be and each of them hereby is authorized, without further action by this Board or otherwise, to carry on and conduct the business of this Corporation and to do any and all things, and to sign, seal, acknowledge and deliver any and all documents pertinent or necessary to be done or delivered in and about the conduct of the said business, including specifically, without in any way limiting the generality of the foregoing, the power to sign contracts, agreements, requisitions, orders, reports and letters.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

       I, the undersigned, Assistant Secretary of Stone & Webster Engineering Corporation, hereby certify that the foregoing is a true and correct transcript from the records of a Meeting of the Board of Directors of said Corporation held on December 15, 1982, said meeting having been duly held and a quorum being present and voting in the affirmative on the above all as required by the By-laws of the Corporation, and that said resolution remains in full force and effect on the date hereof;

       and do further certify that Richard B. Kelly is the duly elected Senior Executive Vice President and Chief Financial Officer of the Corporation and that he currently holds said office, and as such is authorized to execute agreements and contracts on behalf of the Corporation, including guarantees to support the borrowing from banks by subsidiaries and affiliated companies.

       WITNESS my hand and the seal of said Corporation this 10th day of October, 1994.

_Patricia M. Corbett_
Assistant Secretary

STATE OF NEW YORK )
                  ) SS:
COUNTY OF NEW YORK)

### STONE & WEBSTER ENGINEERING CORPORATION

### INCUMBENCY CERTIFICATE

I, the undersigned, Secretary of Stone & Webster
Engineering Corporation, HEREBY CERTIFY that the following
individual has been duly appointed and currently holds the office
as set forth opposite her respective name:

| NAME | OFFICE |
|------|--------|
| Patricia M. Corbutt | Assistant Secretary |

IN WITNESS WHEREOF, I have hereunto set my hand and the
seal of said Corporation this 23rd day of January, 1995.

_____
                Secretary

Subscribed and sworn to before me this 23rd day of January, 1995.

_____
                Notary Public

JOHN P. MORANN
Notary Public, State of New York
No. 52-4507380
Qualified in Suffolk County
Certificate filed in New York County
Commission Expires Nov 30, 1995

A 60

# EXHIBIT D



31 May, 2000

Bugshan Stone and Webster Company Limited
P. O. Box 1783
Al-Khobar 31952
Saudi Arabia

Dear Sir:

We refer to the Credit Agreement dated Jan 22nd 1998, Promissory Note dated Jan 22nd 1998, and other evidence of debt (the Agreements) executed by you in favor of Saudi American Bank (SAMBA).

You have failed to timely honor your obligations under the Agreements; therefore, you are in default of your obligations to us. Accordingly, we hereby demand payment by you of your obligations, which is equal to US$ 12,150,000/- in addition to fees and expenses owing to date.

You will continue to be liable for all (i) commissions that accrue on unpaid balances owing under the agreements and (ii) expenses incurred in connection with enforcement and collection.

If you fail to make payment in full by Wednesday June 07, 2000 by 5:00 PM Riyadh time, we shall be at liberty to take all such action under the Agreements and applicable law as we deem necessary or appropriate to protect our interests and obtain payment.

The foregoing demand and notice are without prejudice to any other rights or remedies which the Bank may have against you, or any other party liable with respect to your obligations to the Bank.

Very truly yours,
Saudi American Bank

Sheheryar Ali
Assistant General Manager
Corporate Banking Group
Al-Khobar

Copy:
—   Stone & Webster Engineering Corporation
    245 Summer Street
    Boston, MA 02210, U. S. A.
    Attn.: Chief Financial Officer.
    Fax: 00-1-617-589-2201

—   Abdullah Said Bugshan & Bros.
    P. O. Box 15963
    Riyadh 11454
    Kingdom of Saudi Arabia
    Fax: 00-966-1-473-0859

Saudi American Bank

SWSA-020-1363
CONFIDENTIAL

# EXHIBIT E

البنك السعودي الامريكي
**Saudi American Bank**



1

*CREDIT AGREEMENT*

*Between Saudi American Bank
(the "Bank") and*

_____BUGSHAN S&W COMPANY LIMITED_____

_____

*(the "Borrower").*

*WITNESSETH:*

*1.  The credit*
*The Bank hereby grants the Borrower a
credit facility (the "Facility") in the maximun
principal amount of ~~SR~~/ US$ / __35,000,000.00__
_____(~~SAUDIXRXXXX~~ / United
States Dollars / __THIRTY FIVE MILLION ONLY==__
_____ ) and agrees to
consider from time to time the Borrower's
requests for advances under such Facility.
Neither this Agreement nor the Facility is a
commitment to lend, and the Bank reserves
the right to terminate the Facility at any time.*

*2.  Payment*
*Borrower hereby agrees to make full and
prompt payment of all principal and
commission in the currency specified above
and in accordance with the terms of this
Agreement. The Bank reserves the right at any
time to demand payment in full of all
outstanding indebtedness, including principal,
commission and any expenses payable by the
Borrower pursuant to Section 6 of this
Agreement.*

*3.  The Note; Evidence of Dept.*
*Borrower has issued and delivered to the
Bank a note (the "Note") evidencing the
maximum principal indebtedness permitted
under the Facility. The Bank agrees not to
enforce the Note for more than the amount of
indebtedness actually outstanding at the time
of enforcement plus any unpaid commission
and unreimbursed expenses then due under
this Agreement. The Bank will maintain an
account or accounts evidencing the
Borrower's indebtedness and the amount of
principal and commission payable and paid*

اتفاقية تسهيلات

فيما بين البنك السعودي الامريكي
_____
( البنك ) و
_____
_____
( المقترض ) .

**تمهيد :**

**١ – التسهيلات**

بهذا يمنح البنك المقترض تسهيلات اقتراض ( التسهيلات )
بمبلغ أساسي لا يتجاوز ( _____
_____
ريال سعودي/دولار امريكي/ _____ ) كما
يوافق البنك على ان ينظر بين الحين والآخر ، بعين الاعتبار في
طلبات المقترض للحصول على سلف بموجب تلك التسهيلات .
ولا تشكل هذه الاتفاقية او التسهيلات الزاما بالاقراض ، ويحتفظ
البنك بالحق في انهاء التسهيلات في اى وقت من الاوقات .

**٢ – الدفع**

بهذا يوافق المقترض على ان يدفع بالكامل وفورا اجمالي
المبلغ الاساسي والعمولة وذلك بالعملة المحددة اعلاه ووفقا
لنصوص هذه الاتفاقية . ويحتفظ البنك بالحق في أي وقت من
الاوقات في ان يطلب السداد الكامل لكافة الديون غير المسددة ،
بما في ذلك المبلغ الاساسي ، العمولة وابة مصروفات تكون
مستحقة على المقترض وفقا للمادة ٦ من هذه الاتفاقية .

**٣ – السند : اثبات الدين**

لقد اصدر المقترض وسلم البنك سندا ( السند ) يثبت الحد
الاقصى للمبلغ الاساسي للدين المصرح به بموجب التسهيلات .
ويوافق البنك على عدم انفاذ السند بأكثر من مبلغ الدين الذي يكون
غير مسدد فعليا في وقت الانفاذ ، مضافا اليه اية عمولة غير
مدفوعة او اية مصاريف تكون في ذلك الوقت مستحقة بموجب
الاتفاقية ولم يتم تسديدها . وسيحتفظ البنك بحساب أو حسابات
تثبيت مديونية المقترض وقيمة المبلغ الاساسي والعمولة المستحقة

2

*from time to time. In any legal action or proceedings, such accounts and the Note shall be conclusive evidence of the existence and amounts of the Borrower's obligations.*

4. *commission*

*Borrower shall pay commission on the unpaid principal balance outstanding from time to time under the Facility, payable monthly or as otherwise advised by the Bank. The commission rate shall be determined by the Bank and subject to change from time to time. Borrower shall be deemed to have agreed to the commission rate as determined by the Bank according to the advices and statements sent to the Borrower unless he notifies the Bank in writing of any objection within 30 days from such advice or statement from the Bank, in which case Borrower shall be bound by the commission rate determined by the Bank until a new rate ( if any ) is agreed. Commission shall be computed on the basis of a 360-days year.*

5. *Conditions to the Extensions of Credit*

a) *Conditions Precedent*

*If so requested by the Bank, the Borrower will furnish to the Bank, as appropriate in the circumstances:*

    i) *Certified copies of constitutive and corporate documents of the Borrower and/or such other documents which the Bank may require.*

    ii) *A certified copy of a resolution of the Board of Directors of the Borrower and/or the shareholders accepting the Facility on the terms and conditions stated in the Credit Agreement.*

b) *Security*

*As security for the Facility and for all other obligations of the Borrower to the Bank now outstanding or hereafter arising herein or otherwise, the Borrower agrees to provide whatever security that the Bank may request from time to time. Such security shall be furnished or procured by the Borrower at its own expense and shall be in form and substance satisfactory to the Bank. No extension of credit by the Bank (if any) shall be construed as a waiver of Borrower's obligation to provide such security or the*

المدفوعة مرة بعد أخرى . وتعتبر تلك الحسابات والسند بينة قاطعة في اية دعوى او اجراءات قانونية على قيام وعلى قيمة لتزامات المقترض .

؛ - **العمـــولـــة**

يدفع المقترض شهريا ، او وفقا لما يحدده البنك ، عمولة لى المبالغ التي تكون غير مسددة من حين لآخر بموجب اتفاقية تسهيلات ، وتحدد نسبة العمولة بواسطة البنك وتكون خاضعة تغيير من حين لآخر . ويعتبر المقترض قد وافق على نسبة عمولة التي حددها البنك وفقا للاشعارات والبيانـات الحسابية مرسلة الى المقترض باخطار البنك خطيا بأي اعتراض خلال ٣٠ ما من تاريخ ذلك الاشعار او البيان الحسابي . وفي تلك الحالة ، ون المقترض ملزما بنسبة العمولة التي حددها البنك الى ان يتم تفاق على نسبة جديدة ( ان وجدت ) وتحتسب العمولة على ساس ان السنة ٣٦٠ يوما .

– **شروط تمديدات التسهيلات**

ا **شروط مسبقة**

يتعين على المقترض ، اذا طلب منه البنك ، ان يوافي البنك نا لما تقتضيه الظروف بما يلي :

١) صورا مصدقة من مستندات تأسيس وتسجيل المقترض و/أو غير ذلك من المستندات التي قد يطلبها البنك .

٢) صورة مصدقة من قرار مجلس ادارة المقترض و/أو قرار الشركاء القاضي بقبول التسهيلات على أساس الاحكام والشروط المضمنة باتفاقية القرض .

**الضمـــان**

كضمان للتسهيلات ولكافة الالتزامات الاخرى للمقترض تجاه ك سواء كانت قائمة حاليا أو التي تنشأ فيما بعد او غير ذلك ، ق المقترض على تقديم اي ضمان يطلبه البنك بين الحيـن خر . ويجب على المقترض تقديم او العمل على تقديم ذلك مان على على نفقته الخاصة كما يجب ان يكون ذلك الضمان في ل والمضمون الذي يجب البنك يقبله البنك . ولايسر اي تمديد من قبل ، للتسهيلات (ان وجد) على انه الغاء لالتزام المقترض بتقديم

6.  _Expenses_
    Borrower shall pay upon demand all expenses, including attorney's fees, court costs, appraisal fees and all other fees and expenses, incurred by the Bank in obtaining or enforcing any of its rights under this Agreement, the Note or the Security Documents.

7.  _Set-Off; Sale of Property_
    In the event of failure to make timely payment of any amount due hereunder, the Bank may immediately and without notice set off against such amount any and all of the Borrower's deposits with the Bank or other indebtedness owing from the Bank. Furthermore, without prior notice, the Bank may sell any securities or property of the orrower held by the Bank, and retain from e proceeds the total amount remaining unpaid, including all expenses arising from such sale, and the Borrower shall be responsible to the Bank for any deficiency and will pay on demand to the Bank the amount of any such deficiency. The Bank's rights under this section are in addition to any other rights the Bank may have.

8.  _Representations and Warranties_
    If the Borrower is other than an individual, the Borrower represents and warrants that it is an entity duly formed, validly existing and in good standing under the laws of <u>Kingdom of Saudi Arabia</u> that xecution, delivery and performance by the rower of this Agreement are within the Borrower's powers and in furtherance of its purposes, have been duly authorized by all necessary action on behalf of the Borrower, and do not contravene any law or contractual restriction binding on the Borrower; and that this Agreement is a valid and legally binding obligation of the Borrower enforceable in accordance with its terms.

9.  _Governing Law and Jurisdiction_
    This Credit Agreement shall be governed by and construed in accordance with the laws and regulations of the Kingdom of Saudi Arabia and the Borrower agrees that any disputes arising Thereunder shall be submitted to the appropriate courts and/or committees in the Kingdom of Saudi Arabia for

٦ – المصاريف

يدفع المقترض عند الطلب كافة المصاريف بما في ذلك اتعاب المحاماة ، مصروفات المحاكم ، رسوم التثمين وكافة الاتعاب والمصاريف الاخرى التي يكون البنك قد تحملها في الحصول على انفاذ اي من حقوقه بموجب هذه الاتفاقية ، السند او مستندات الضمان .

٧ – المقاصة : بيع الممتلكات

في حالة الاخفاق في دفع اي مبلغ مستحق بموجب هذه الاتفاقية في موعده المحدد يجوز للبنك ، دون سابق اخطار ، اجراء مقاصة ذلك المبلغ من اي من وكافة ودائع المقترض لدى البنك او من اية ديون اخرى تكون مطلوبة من البنك . وبالاضافة الى ذلك ودون اشعار مسبق ، يجوز للبنك ان يبيع اية اوراق مالية او أيا من ممتلكات المقترض المحفوظة لدى البنك ، وان يحتفظ من عائدات البيع باجمالي المبلغ غير المسدد ، بما في ذلك كافة المصروفات الناشئة عن مثل هذا البيع ، ويكون المقترض مسئولا تجاه البنك عن اي نقص ، وعليه ان يدفع للبنك عند الطلب قيمة ذلك النقص . وتكون حقوق البنك بموجب هذه المادة اضافة الى اي حقوق اخرى يتمتع بها البنك .

٨ – الاقرارات والتعهدات

اذا لم يكن المقترض فردا ، فانه يقر ويتعهد بأنه كيان تأسس حسب الاصول وقائم بطريقة صحيحة وفي وضع سليم بموجب قوانين ------------------------- ، وان توقيـــــع وتسليم وتنفيذ المقترض لهذه الاتفاقية يقـع ضمن صلاحيـات المقترض وتحقيقا لاغراضه ، ولايتعـارض ذلك مـع اي قانون أو التزامات عقدية ملزمة للمقترض ، وان هذه الاتفاقية هـي اتفاقية صحيحة وتشـكل التزامـا قانونيا قابل للتنفيذ على المقترض وفقا لاحكامها .

٩ – القانون الذي يحكم الاتفاقية والاختصاص

تخضع اتفاقية التسهيلات هذه وتفسر وفقا لقوانين وأنظمة المملكة العربية السعودية ، ويوافق المقترض علـى تقديـم ايـة منازعات تنشأ عن هذه الاتفاقية للمحاكم و/أو اللجان المختصة

٤

Signed this _____22nd_____ day of ................... لقد تم التوقيع على هذه الاتفاقية في هذا اليوم

January _____ year 1998 ................... لسنة .................... من شهر

### BORROWER المقــتــرض

Name of Borrower : اسم المقترض :
BUGSHAN S&W COMPANY LIMITED ......................................

1. Signature: _____ : التوقيــــع – ١
   Name: ___MICHAEL W. MOTT____ ...................... : الاســــم
   Address: P.O. BOX 3790, AL-KHOBAR31952 ...................... : العنـــوان

   I. D. No. : 2114890995 ...................... : رقم الحفيظة
   Date of Issue: 6-10-1418 ...................... : تاريخ الاصدار
   Place of Issue : DAMMAM ...................... : مكان الاصدار

2. Signature: _____ : التوقيــــع – ٢
   Name: _____ ...................... : الاســــم
   Address: _____ ...................... : العنـــوان

   I. D. No. : _____ ...................... : رقم الحفيظة
   Date of Issue: _____ ...................... : تاريخ الاصدار
   Place of Issue : _____ ...................... : مكان الاصدار

(Company Stamp/Seal ختم الشركة)

### SAUDI AMERICAN BANK بنك السعودي الامريكي

Signature: _____ ...................... : التوقيــــع
Name: SHEHERYAR AL ...................... : الاســــم

### WITNESSED BY : شهد على ذلك :

1. Signature: _____ : التوقيــــع –
   Name: DAWOOD S. AL-AWAD ...................... : الاســــم
   Address: P.O. BOX 3790 AL KHOBAR ...................... : العنـــوان
   ...................... : الجنسيـــة
   I. D. No. : 145457 ...................... : هوية الشاهد
   Date of Issue: 4.7.1400 ...................... : رقـــم
   Place of Issue : RIYADH ...................... : مكان الاصدار
   ...................... : تاريخ الاصدار

2. Signature: _____ : التوقيــــع –
   Name: Mohamoud Hashi Ahm ...................... : الاســــم
   Address: P.O. BOX 1783 AL-Khoba ...................... : العنـــوان
   ...................... : الجنسيـــة
   I. D. No. : 2015293171 ...................... : هوية الشاهد
   Date of Issue: 29/3/1418 ...................... : رقـــم
   Place of Issue : Dammam ...................... : مكان الاصدار
   ...................... : تاريخ الاصدار

# EXHIBIT F

البنك السعودي الامريكي
**Saudi American Bank**



# PROMISSORY NOTE

US$ 35,000,000.00 (U.S. DOLLARS: THIRTY FIVE MILLION ONLY)

Place : Al-Khobar ........................ Saudi Arabia

Day : 22nd

Month : January

Year : 1998

For Value Received, the undersigned hereby unconditionally and irrevocably promises to pay on (date) demand to the order of Saudi American Bank (the Bank) at the Fluor Branch office of the bank in Al-Khobar Saudi Arabia, the principal sum of U.S. Dollars: Thirty Five Million Only————————

(SLR. US$ 35,000,000.00—— ........................ ) in immediately available funds.

The undersigned hereby waives all diligence, presentment, demand, protest, notice of dishonor with respect to this promissory note.

Saudi American Bank may endorse this note to any party without the approval of the undersigned. The holder of this note may obtain recourse without notice or protest for non-payment. The undersigned will pay all expenses of the holder of this note in the collection or enforcement of this note.

DEBTOR :

Name of Debtor : BUGSHAN S&W COMPANY LIMITED

1) Signature :
   Name : MICHAEL W. MOTT
   Title : GENERAL MANAGER

2) Signature :
   Name :
   Title :

(Company Stamp/Seal)

WITNESSED BY :

1) Signature of Witness :
   Name of Witness : DAWOOD S. AL-AWAD
   Address of Witness : P.O. Box 3790 AL-KHOBAR
   Nationality : SAUDI
   I.D. of Witness : 145 4571 4.7.1400 1 RIYADH
   No.                              Place of Issue    Date of Issue

2) Signature of Witness :
   Name of Witness : Mohmoud Hashi Ahmed
   Address of Witness : P.O. Box 1763 AL-Khobar
   Nationality : Somali
   I.D. of Witness : 2018293171 Dammam 29/3/1418
   No.                              Place of Issue    Date of Issue

# EXHIBIT G

P. O. Box 842
Al-Khobar 31952
Kingdom of Saudi Arabia
Tel. : +966 -3- 882 8488
Fax: +966 -3- 882 5396

ص.ب ٨٤٢
الخبر ٣١٩٥٢
المملكة العربية السعودية
هاتف : ٨٤٨٨ ٨٨٢-٣-٩٦٦+
فاكس ٥٣٩٦ ٨٨٢-٣-٩٦٦+

**DATE PREPARED: August 14, 2000**

## Statement of Loan Account
## for the period 1st January 2000 to 2nd June 2000

**Account:** Stone & Webster Engineering Corporation **(S&W)**

| Date | Details | Amount | Loan Balance |
|---|---|---|---|
| 1-Jan-00 | Opening Balance | | $8,350,000 |
| 3-Feb-00 | Payment received | ($650,000) | $7,700,000 |
| 30-Mar-00 | Payment received | ($650,000) | $7,050,000 |
| 27-Apr-00 | Payment received  (see Note 1) | ($325,000) | $6,725,000 |
| 31-May-00 | No Payment | $0 | $6,725,000 |
| 2-Jun-00 | Interest (Unpaid) from 1 June, 2000 to June 2, 2000 (see Notes 2 & 3) | $3,549 | $6,728,549 |
| **2-Jun-00** | **Balance ol Loan Account** | | **$6,728,549** |

**Note 1 .** This amount was not paid by Stone & Webster Engineering Corporation. This amount was available in the current deposit account of Bugshan S&W Company Limited (the "Borrower") and was applied to the Loan Obligation of S&W

**Note 2 .** Interest has been PAID till 31 May, 2000 by amounts that were available in the current deposit account of the Borrower. From 31 May, 2000 interest has accrued and not been paid.

**Note 3 .** Interest on S&W Loan balance has been UNPAID since 31 May, 2000 and is accruing @ 9.5% per annum. Interest Due & Payable as of 2 June, 2000 was $ 3,549, and as of 14 August, 2000 is an additional U.S. $ 127,842, making S&W's balance of Loan Account U.S. $ 6,856,391

**Asad H. Bokhari**
**8828488 Ext.530**

**A 67**

A Joint Stock Company Capital SR  4,000 Million - Commercial Reg  No. 1010035319 - Head Office  Riyadh    شركة مساهمة سعودية رأس المال ٤,٠٠٠ مليون ريال سعودي  السجل التجاري ١٠١٠٠٣٥٣١٩ - المركز الرئيسي : الرياض

# EXHIBIT H

1

1              IN THE UNITED STATES BANKRUPTCY COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                          - - -

   IN RE:
4                                    :    Chapter 11
   STONE & WEBSTER, INCORPORATED,    :
5  et al.,                           :    Case No. 00-2142-RRM
                 Debtors.
6                          - - -

7                    Wilmington, Delaware
            Friday, January 25, 2002 at 11:00 a.m.
8
                           - - -
9
   BEFORE:      HONORABLE RODERICK R. McKELVIE, U.S.D.C.J.
10
                           - - -
11 APPEARANCES:

12
            SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
13          BY:  GARY A. RUBIN, ESQ.

14               and

15          SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
            BY:  ED MEEHAN, ESQ.
16               (Washington, District of Columbia)

17               Counsel for the Debtors

18
            FERRY & JOSEPH, P.A.
19          BY:  RICK MILLER, ESQ.

20               Counsel for Maine Yankee Atomic Power

21
            ASHBY & GEDDES
22          BY:  GREG TAYLOR, ESQ.

23               Counsel for The Shaw Group

24
                       Brian Gaffigan
25                     Official Court Reporter


                     ORIGINAL

A 68

2

APPEARANCES: (Continued)

        KLETT ROONEY LIEBER & SCHORLING
        BY:  ADAM G. LANDIS, ESQ.

           and

        ORRICK HERRINGTON & SUTCLIFFE
        BY:   JAMES HOUPT, ESQ.

             Counsel for the Creditors Committee


        WALSH MONZACK & MONACO
        BY:  KEVIN MANGAN, ESQ.

           and

        KIRKPATRICK & LOCKHART, LLP
        BY:  DANIEL E. ROSENFELD, ESQ.
           (Boston, Massachusetts)

             Counsel for Saudi American Bank


        THE BAYARD FIRM
        BY:  CHRIS SIMON, ESQ.

           and

        LONG ALDRIDGE & NORMAN
        BY:  JOHN WATKINS, ESQ.

             Counsel for Machinenfabrik Diffenbacher


        THE BAYARD FIRM
        BY:  MICHAEL VILD, ESQ.

           and

        LOWENSTEIN SANDLER, P.C.
        BY:  MICHAEL S. ETKIN, ESQ.

           and

        SHAPIRO HABER
        BY:  MICHELLE BLAUNER, ESQ.

             Counsel for the ERISA Plaintiffs

3

1   APPEARANCES: (Continued)

2

3        DUANE MORRIS, LLP
         BY:  MICHAEL LASTOWSKI, ESQ.

4             Counsel for Federal Insurance

5

6        KLEHR HARRISON HARVEY BRANZBURG & ELLERS, LLP
         BY:  STEVEN K. KORTANEK, ESQ.

7             Counsel for Harbourview Electric, Ltd.

8

9             - oOo -

10            P R O C E E D I N G S

11       (Proceedings commenced at 11:14 a.m.)

12       THE COURT:  All right.  Good morning, everybody.

13       MR. RUBIN:  Good morning, your Honor.  Gary

14  Rubin, Skadden Arps for the Debtors and Debtors in Possession

15  in this case.  It's a pleasure to be before you for my first

16  appearance in Delaware this morning.

17       May it please the Court, I will quickly take us

18  through the agenda in what I will call the main case.  And

19  then if it's all right with the Court, I'd like to turn the

20  reins over to Mr. Landis to give the Court a brief update on

21  substantive consolidation, I believe at which point I would

22  like to turn the reins over to Mr. Meehan who is the partner

23  from the firm's Washington office who has been admitted pro

24  hac vice to take us through the adversary matter.

25       THE COURT:  All right.

1   the Court's determination.   I'm happy to set a schedule by

2   conference call or to come down.

3         THE COURT:   Do you want a trial date?   Is that

4   what people want?

5         MR. ROSENFELD:   What we would like, your Honor,

6   is a discovery period of approximately 90 days followed by

7   a short motion period and then a trial date.   So a trial

8   sometime in the early summer probably.

9         MR. MEEHAN:   And if we're at that point with the

10   Debtors, your Honor, we've had conversations between counsel,

11   the Debtors' view is we've already asked them for discovery.

12   They recently responded to it.   We do have issues with it,

13   but we hope to resolve them.   I don't see why 30 days isn't

14   plenty of time to do discovery because it's really not com-

15   plicated, but I do understand there are constraints on

16   counsel's schedule.   So our view is the sooner the better

17   for a trial.

18         MR. ROSENFELD:   We don't disagree with the notion

19   the sooner the better, your Honor, but we'd like to be able

20   to do full discovery, and full discovery in this particular

21   action we think includes discovery from both Shaw and the

22   Debtors.   That could require a number of depositions because

23   we are going to be going into the meaning of the asset pur-

24   chase agreement and what was negotiated and what was agreed

25   upon.   And in addition to that, your Honor, we're going to