# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| STONE & WEBSTER, INC. et al., | ) Bk. No. 00-2142(PJW) |
| | ) Jointly Administered |
| Debtors. | ) |
| -------------------------------- | |
| SAUDI AMERICAN BANK, | ) Adv. No. 01-7766(PJW) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 04-834-SLR |
| | ) |
| SHAW GROUP INC., SWINC | ) |
| ACQUISITION THREE, INC., and | ) |
| SWE&C LIQUIDATING TRUSTEE, | ) |
| | ) |
| Defendants. | ) |

**JUDGMENT IN A CIVIL CASE**

For reasons stated in the court's memorandum opinion and order of May 3, 2005;

IT IS ORDERED AND ADJUDGED that judgment be and is hereby entered in favor of plaintiff Saudi American Bank and against defendants Shaw Group, Inc., SWINC Acquisition Three, Inc., and SWE&C Liquidating Trustee.

_____
United States District Judge

Dated: May 4, 2005

_____
(By) Deputy Clerk

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STONE & WEBSTER, INC. et al., | ) | Bk. No. 00-2142(PJW) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| ――――――――――――――――――――――― | ) | |
| | ) | |
| SAUDI AMERICAN BANK, | ) | Adv. No. 01-7766(PJW) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 04-834-SLR |
| | ) | |
| SHAW GROUP, INC., SWINC | ) | |
| ACQUISITION THREE, INC., and | ) | |
| SWE&C LIQUIDATING TRUSTEE, | ) | |
| | ) | |
| Defendants. | ) | |

Francis A. Monaco, Esquire and Kevin J. Mangan, Esquire of Walsh
Monzack & Monaco, P.A., Wilmington, Delaware.  Counsel for
Plaintiff.  Of Counsel:  John C. Hutchins, Esquire, Daniel E.
Rosenfeld, Esquire and Amy Beth Abbott, Esquire of Kirkpatrick &
Lockhart L.L.P., Boston, Massachusetts.

Gregory Alan Taylor, Esquire, Stephen E. Jenkins, Esquire,
Christopher S. Sontchi, Esquire and Liza H. Meltzer, Esquire of
Ashby & Geddes, Wilmington, Delaware.  Counsel for Defendants
Shaw Group, Inc. and SWINC Acquisition Three.

Adam G. Landis, Esquire of Landis, Rath & Cobb, L.L.P.,
Wilmington, Delaware.  Counsel for Defendant SWE&C Liquidating
Trustee.

**MEMORANDUM OPINION**

Dated:  May 3, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I.    INTRODUCTION

On June 2, 2000, debtor Stone & Webster, Inc. ("debtor")[1]
filed a voluntary petition for relief under chapter 11, title 11
of the United States Code.  On October 18, 2001, plaintiff Saudi
American Bank ("SAMBA") filed an adversary action against
defendants Shaw Group, Inc. ("Shaw"), SWINC Acquisition Three,
Inc. and SWE&C Liquidating Trustee (collectively "defendants") in
the United States Bankruptcy Court for the District of Delaware
("the bankruptcy court").  (D.I. 1)[2]  Plaintiff alleged that,
under an Asset Purchase Agreement ("the APA"), defendants assumed
a debt owed to plaintiff by Stone & Webster Engineering
Corporation ("SWEC"), a subsidiary of debtor.  (Id.)  On June 1,
2004, defendants moved to withdraw the adversary proceeding from
the bankruptcy court.  (D.I. 75)  This court granted the motion
on September 13, 2004.  (D.I. 88)  The court has jurisdiction
over actions arising out of chapter 11 of the bankruptcy code
pursuant to 28 U.S.C. § 1334(a).  Presently before the court are
plaintiff's and defendants' motions for summary judgment.  (D.I.
29, 47)[3]  For the reasons set forth below, the court grants

---

[1] Although there are multiple named debtors, for ease of
reference this order shall refer to a single "debtor."

[2] Unless otherwise noted, the docket items (i.e., D.I. __)
will be from the bankruptcy court's docket for this case.

[3] There are several motions which are currently pending
before the court.  While this memorandum opinion will focus on
plaintiff's and defendants' cross motions for summary judgment,

plaintiff's motion for summary judgment (D.I. 47) and denies

defendants' motion for summary judgment (D.I. 29).

## II. BACKGROUND

On May 31, 1980, SWEC and Abdullah Said Bugshan & Bros.

("Bugshan"), a Saudi Arabian business enterprise, formed a joint

venture called Bugshan Stone & Webster ("BSW") under the laws of

Saudi Arabia. (D.I. 1 at 5)  BSW was owned in equal shares by

SWEC and Bugshan. (_Id._)  In the mid 1990s, BSW entered a $130

million contract with Saudi Arabian American Oil Company

("Aramco") to upgrade a large oil refinery at Ras Tanura in Saudi

Arabia (the "Ras Tanura Contract"). (D.I. 31 at A-173)  In an

attempt to induce plaintiff to grant credit to BSW, Bugshan and

SWEC each agreed to issue guaranties to plaintiff for 50% of any

loans plaintiff made to BSW. (D.I. 1, ex. A; D.I. 49 at A95-A96,

A125)  On October 11, 1994, SWEC delivered a letter guarantying

payment of 50% of all obligations owed to plaintiff by BSW, up to

thirty five million dollars (the "Guaranty"). (D.I. 1, ex. A)

In a letter dated July 10, 1997, plaintiff approved a loan for

$35 million "to finance mobilization & working capital

---

it will also resolve several other pending motions.  Most notably
this order will address:  (1) plaintiff's motion for leave to
file an amended complaint (D.I. 8); (2) plaintiff's motion for
consolidation or dismissal (D.I. 9); (3) defendants' motion for
summary judgment (D.I. 29); (4) plaintiff's motion for summary
judgment (D.I. 47); and (5) plaintiff's motion to strike the
declaration of James P. Carroll (D.I. 48).  Because debtor Stone
& Webster, Inc. has been terminated from the present matter, its
motion for summary judgment (D.I. 11) is denied as moot.

requirements of Saudi Aramco Cont[r]act [No.] 65004/00 (IK)."[4]
(D.I. 31 at A-168)  Unfortunately, BSW ran into difficulties on
the Ras Tanura project and was unable to repay plaintiff the
outstanding amount of the loan when the project was completed.
In late 1998, pursuant to their guaranties, SWEC and Bugshan each
agreed to repay one-half of the outstanding Ras Tanura Contract
loan at a rate of $650,000 per month (the "Payment Letter").
(D.I. 49 at A67, A127)

By June 2000, debtor was operating its businesses and
managing its properties pursuant to 11 U.S.C. §§ 1107(a) and
1108.  At the time of debtor's chapter 11 filing, SWEC allegedly
owed plaintiff approximately $6 million.  (D.I. 49 at A69)   On
July 6 and 7, 2000, substantially all of debtor's assets were
sold to defendant Shaw through an auction sale (the "Auction
Sale").  (D.I. 49 at A131-A291)

On July 7 and 12, 2000, a hearing for approval of the
Auction Sale (the "Sale Hearing") was conducted.[5]  (D.I. 50 at
A497-A648)  At the Sale Hearing, counsel for debtor represented
that debtor had

   sent out a notice of sale . . . that said, essentially, if

---

   [4] Contract No. 65004/00 (IK) was BSW's name for the contract
to upgrade Aramco's Ras Tanura facility.  (D.I. 31 at A-131, A-
170)

   [5] At the time of the Sale Hearing, the United States
District Court for the District of Delaware was hearing
bankruptcy cases pursuant to 28 U.S.C. § 1334(a).

you don't see your name on this list, or this schedule of
contracts, which is the, what I like to call the excluded
contracts, then your contract is being assumed.

. . .

Sometimes, Your Honor, in purchase contracts, schedules are
merely informative and not necessarily per se material to
the deal.  That is not the nature of this agreement.  This
agreement revolves, in terms of its economics, around three
schedules, or let's say two schedules, and whether or not
your contract is on one of those two schedules.  **And those
two schedules are the schedule for rejected contracts and
the schedule for completed contracts.  If they are not on
those schedules, in essence, your contract is an assumed
contract, and the economic impact to you as a stakeholder is
dependent upon whether you are on those two lists** . . . .

(D.I. 50 at A518-A529) (emphasis added)

On July 13, 2000, an order (the "Sale and Assumption Order")

regarding the Auction Sale was entered.   (D.I. 49 at A1-A36)   In

the Sale and Assumption Order, the court stated:

[A]ll rights and remedies of any non-debtor party or Shaw
under any of the Assumed Contracts (the "Rights and
Remedies") are fully preserved and shall be enforceable
after the Closing against Shaw or the non-debtor party
unless such Rights and Remedies are or were expressly waived
in a separate agreement or on the record of the Auction.

(D.I. 49 at A18-A19)   The court also stated that

[t]he terms and provisions of the [APA] and this Sale Order
shall be binding in all respects upon, and shall inure to
the benefit of, the [debtor], [its] estates, and [its]
creditors, Shaw, and its respective affiliates, successors
and assigns, and any affected third parties including, but
not limited to, all persons asserting Interests in the
Assets to be sold to Shaw pursuant to the [APA] . . . .

(D.I. 49 at A26)   Finally, the court stated that the APA could

not be modified without further order unless "such modification,

amendment, or supplement does not have a material adverse effect

4

on the [debtor's] estates." (D.I. 49 at A27)

On July 14, 2000, debtor and defendant Shaw entered into the APA whereby Shaw purchased a substantial portion of debtor's assets and assumed many of its liabilities. (D.I. 50 at A861-A969) On the same date, the court entered an order approving the APA.

Section 2.02 of the APA, titled "Excluded Assets," excludes a number of assets from those being acquired by defendant Shaw. (D.I. 31 at A-240) Subsection (b) defines as "Excluded Assets" all "Completed Contracts" of debtor. Section 1.01 of the APA defines "Completed Contracts" as contracts of debtor, "including those specifically set forth on Schedule 2.02(b), under which substantially all of the contractual work effort of [debtor] has been completed, even if such Contracts have continuing warranty obligations, administrative matters or work related to warranty or other claims[.]" (Id. at A-229) Schedule 2.02(b) does not include any reference to the Guaranty, the Payment Letter, or the underlying Ras Tanura Contract. (Id. at A-306)

Subsection (e) of Section 2.02 of the APA defines as "Excluded Assets" all the "Special Project Claims". (Id. at A-241) Section 1.01 of the APA defines "Special Project Claims" as "any and all claims under the project agreements set forth on Schedule 2.02(e) to the extent not reflected on the March 31

5

Balance Sheet[.]"[6]  (Id. at A-237)  Schedule 2.02(e) lists the

"Ras Tanura, Saudi Arabia, Refinery Upgrade Project" as one of

the "Special Project Claims."  (D.I. 50 at A979)  Schedule

2.02(e) also specifically identifies a "Contract for Construction

dated as of June 28, 1994 by and between Saudi Arabian Oil

Company ("Saudi Aramco")¹ and [BSW] (designated by Saudi Aramco as

Contract No. 65004/00)[]" as a "Special Project Claim".  (Id.)

Finally, Schedule 2.02(e) identifies "[o]ne or more potential

claims for payment under a series of Letters of Credit issued by

[plaintiff] and involving materials supplied under a number of

purchase orders issued by [BSW] . . . for materials incorporated

into the [Ras Tanura Refinery Upgrade Project]" as "Special

Project Claims".  (Id.)

       Section 2.03 of the APA states that "[Shaw] shall assume the

Assumed Liabilities[]" as of the closing date.  (Id. at A887)

Section 1.01 of the APA defines "Assumed Liabilities" as "all

liabilities and obligations of [debtor] set forth on Schedule

2.03 as of the Closing Date . . . ."  (Id. at A872)  Schedule

2.03 is the "List of Assumed Liabilities".  (Id. at A957)

Paragraph three of Schedule 2.03 provides that "[l]iabilities

_____

       [6] Although the APA defines "Special Project Claims" as any
and all claims set forth on Schedule 2.02(e), the Execution Copy
of the APA did not include a Schedule 2.02(e).  Rather, Schedule
2.02(e) was added to the APA by debtor and defendant Shaw
subsequent to this court's approval of the Execution Copy of the
APA.  (D.I. 51 at 42; D.I. 57 at 14 n.3)

                                    6

under [debtor's] outstanding bank indebtedness, including amounts outstanding and pursuant to existing standby letters of credit[]" are "Assumed Liabilities." (Id.)  Section 3.17 of the APA states that Schedule 3.17(a)(ix) is "a true, complete and correct list" of "any bond, indenture, note, loan or credit agreement . . . or other Contract relating to the borrowing of money or to the direct or indirect guarant[y] or assumption of obligations of any other Person for borrowed money." (Id. at A897)  Schedule 3.17(a)(ix) lists:  (1) a guaranty by BSW to plaintiff (id. at A983); (2) a letter of guaranty dated September 1, 1992 from SWEC to plaintiff regarding BSW securing credit facilities (id. at A984); and (3) a letter of guaranty dated October 19, 1992 whereby SWEC guaranteed plaintiff the repayment of 40 million Saudi Riyals (id.).  Defendant Shaw admits that Schedule 3.17(a)(ix) lists a guaranty by SWEC for BSW's borrowing from plaintiff. (D.I. 49 at A91)  Defendant Shaw assumes that the guaranty listed on Schedule 3.17(a)(ix) incorporates the Guaranty by which SWEC guaranteed 50% of BSW's obligations to plaintiff up to $35 million. (Id. at A91-A92)  Defendant Shaw admits that Schedule 3.17(a)(ix) lists contractual liabilities disclosed to defendant Shaw by debtor. (D.I. 49 at A91)

Section 2.04 of the APA, captioned "Excluded Liabilities," states that "[u]nder no circumstances shall [defendant Shaw] assume or be obligated to pay . . . any of the Excluded

Liabilities, including the following liabilities, which shall be
and remain liabilities of [debtor]: . . . (c) liabilities or
obligations associated with any Excluded Assets; . . . (e)
liabilities or obligations under the Assumed Contracts that are
not Assumed Liabilities and liabilities or obligations arising
under the Rejected Contracts or the Completed Contracts[.]"
(D.I. 31 at A-241)

On July 18, 2001, the court entered an order establishing a
cure claim procedure. (D.I. 49 at A293-A307)  The cure claim
procedure defined "cure claims" as "any and all liquidated
monetary claims[7] arising or accruing on or before July 14, 2000
under the Assumed Contracts and actually known by the non-
[debtor] party to an Assumed Contract." (Id. at A294)  The cure
claim procedure also required debtor to file a list of all
Assumed Contracts and an amended list of all Excluded Contracts.
(Id. at A305)  According to the cure claim procedure, a cure
claim had to be filed by August 25, 2000.  (Id. at A299)

On July 21, 2000, debtor filed an Assumed Contract List, an
Excluded Contract List, and an Amended Excluded Contract List.
(D.I. 50 at A649-A660)  Neither the Guaranty nor the Payment

---

[7] "Liquidated monetary claims" relate to "money due and
owing or allegedly due and owing by the [debtor] under the
Assumed Contracts, but does not include any claims by the non-
[debtor] party for any defective work (whether latent or
otherwise) by the [debtor] or [its] subcontractors or under any
warranty provisions of the Assumed Contract."  (D.I. 49 at A294-
A295)

Letter was included on any of those lists. On August 4, 2000,
debtor filed a Second Amended Excluded Contract List, and a
Second Amended Assumed Contract List. (D.I. 50 at A661-A668)
The Second Amended Assumed Contract List includes a contract with
Aramco Services Co. and two contracts with plaintiff. (D.I. 50
at A666, A668)

On August 24, 2000, plaintiff filed a statement of cure
claim against SWEC, alleging that SWEC owed outstanding financial
obligations to plaintiff. (D.I. 49 at A52-A85) Plaintiff
attached the Guaranty and the Payment Letter as exhibits to its
cure claim. (Id. at A56, A67) Defendant Shaw failed to pay or
contest plaintiff's cure claim.

On December 28, 2000, the court entered an order approving a
letter agreement, dated December 27, 2000, which confirmed the
terms of the APA. (D.I. 50 at A857-A860) Pursuant to this
letter agreement and order, certain additional projects were to
be treated as Completed Contracts under the APA and Schedule
2.02(b). (D.I. 50 at A670) Neither the Guaranty nor the Payment
Letter were added to the list of Completed Contracts. (Id.)
Debtor also stated that the additional completed contracts
"constitute the only completed contracts or substantially
completed contracts of which [debtor has] actual knowledge as not
being listed on Schedule 2.02(b) to the Disclosure Schedules
(collectively with Schedule 2.02(b), the 'Completed Contracts

9

List')."  (Id.)  Neither the letter agreement nor the order
sought to amend the Schedule of Rejected Contracts.

On August 1, 2001, debtor commenced a preference action
against plaintiff to avoid and recover certain preferential
transfers, to disallow plaintiff's claims, to estimate
plaintiff's claims at $0, and to reduce plaintiff's claims to an
amount reflected on the debtor's books and records (the
"Preference Action").  Plaintiff filed its answer and affirmative
defenses on October 18, 2001.

On August 1, 2002, plaintiff commenced the instant adversary
proceeding.  (D.I. 1)  Plaintiff's complaint alleged that, under
the APA, defendant Shaw assumed the $6,728,529 debt owed to
plaintiff by SWEC.  In the alternative, plaintiff claimed that
"[u]nless [defendant] Shaw assume[d] its obligation to pay
[plaintiff] . . . SWEC is obligated to pay [plaintiff] . . . ."
(D.I. 1 at 12)

On January 2, 2002, defendants filed an answer to
plaintiff's adversary proceeding complaint.  (D.I. 5)  Plaintiff
filed a motion for leave to file an amended complaint on January
7, 2002.[8]  (D.I. 8)  That same day, plaintiff filed a motion
seeking to consolidate the Preference Action and the instant

_____

[8] The court denies plaintiff's motion for leave to file an
amended complaint (D.I. 8), as amending the complaint will
further delay this case, which lingered in the bankruptcy court
for several years before it was withdrawn to this court.

10

litigation.[9]  (D.I. 9)   On August 13, 2002, defendant Shaw filed

a motion for summary judgment.[10]  (D.I. 29)   On October 18, 2002,

plaintiff filed its motion for summary judgment.  (D.I. 47)

III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The moving party bears the burden of proving that no

genuine issue of material fact exists.  See Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).

"Facts that could alter the outcome are 'material,' and disputes

are 'genuine' if evidence exists from which a rational person

could conclude that the position of the person with the burden of

_____

[9] The court denies plaintiff's motion to consolidate.  (D.I.
9)  Federal Rule of Civil Procedure 42(a) provides this court
with authority to consolidate "actions involving a common
question of law or fact . . . pending before the court."
Decisions to consolidate cases are at the discretion of the
district court, but often courts balance considerations of
efficiency, expense and fairness.  See United States v. Dentsply
Int'l, Inc., 190 F.R.D. 140, 142-43 (D. Del. 1999).  Because the
Preference Action and this litigation stem from different factual
circumstances, consolidation is not appropriate.
     The court also denies plaintiff's motion to dismiss the
preference action (D.I. 9), as the preference action is not
pending in this court.

[10] The court grants plaintiff's motion to strike the
declaration of James P. Carroll submitted in support of
defendants' motion for summary judgment.  (D.I. 48)

11

proof on the disputed issue is correct." <u>Horowitz v. Fed. Kemper Life Assurance Co.</u>, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." <u>Pa. Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## IV.  DISCUSSION[11]

Construction of contract language is a question of law.  <u>See</u>
<u>Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.</u>, 616
A.2d 1192, 1195 (Del. 1992).  The primary consideration in
interpreting a contract is to "attempt to fulfill, to the extent
possible, the reasonable shared expectations of the parties at
the time they contracted."  <u>See</u> <u>Comrie v. Enterasys Networks,</u>
<u>Inc.</u>, 837 A.2d 1, 13 (Del. Ch. 2003).  In ascertaining intent,
Delaware courts adhere to the "objective" theory of contracts.
<u>See</u> <u>Haft v. Haft</u>, 671 A.2d 413, 417 (Del. Ch. 1995).  Under this
approach, a contract's "construction should be that which would
be understood by an objective reasonable third party."  <u>R.E.</u>
<u>Haight & Assocs. v. W.B. Venables & Sons, Inc.</u>, C.A. No. 94C-11-
023, 1996 WL 658969, at *3 (Del. Super. Oct. 30, 1996) (quoting
<u>Demetree v. Commonwealth Trust Co.</u>, No. 14354, 1996 WL 494910, at
*4 (Del. Ch. Aug. 27, 1996)).  Thus,

> [w]here parties have entered into an unambiguous integrated
> written contract, the contract's construction should be that
> which would be understood by an objective reasonable third
> party.  An inquiry into the subjective unexpressed intent or
> understanding of the individual parties [to the contract] is
> neither necessary nor appropriate where the words of the

---

[11] In the case at bar, plaintiff asserts that defendant Shaw
assumed a debt owed to plaintiff by SWEC through operation of the
Guaranty and Payment Letter.  Because there is no dispute that
plaintiff has standing to enforce these contracts if they were
assumed by defendant Shaw pursuant to the Sale and Assumption
Order and Sections 2.03 and 3.17 of the APA, there can be no
dispute that plaintiff has standing to bring the issue for
resolution before this court.

13

contract are sufficiently clear to prevent reasonable
persons from disagreeing as to their meaning.

Demetree, 1996 WL 494910, at *4 (citations omitted); accord Eagle
Indus., Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232
(Del. 1997) ("Contract terms themselves will be controlling when
they establish the parties' common meaning so that a reasonable
person in the position of either party would have no expectations
inconsistent with the contract language."). The court,
therefore, must determine whether the contractual language in
dispute, when read in the context of the entire contract, is
ambiguous.

Ambiguity exists only when a contractual provision is
"reasonably or fairly susceptible of different interpretations or
may have two or more different meanings." Rhone-Poulenc, 616
A.2d at 1196; accord SI Mgmt. L.P. v. Wininger, 707 A.2d 37, 42
(Del. 1998). Contractual language "is not rendered ambiguous
simply because the parties do not agree upon its proper
construction." Id.; see also City Investing Co. Liquidating
Trust v. Cont'l Cas. Co., 624 A.2d 1191, 1198 (Del. 1993)
(finding contract language is not ambiguous "simply because the
parties in litigation differ concerning its meaning."). However,
inconsistent contractual provisions may create ambiguity in a
contract. Fraternal Order of Police v. City of Fairmont, 468
S.E.2d 712, 717 (W. Va. 1996) ("Contract language usually is
considered ambiguous where an agreement's terms are inconsistent

14

on their face . . . ."); <u>Weber v. Tillman</u>, 913 P.2d 84, 96 (Kan.
1996) ("To be ambiguous, a contract must contain provisions or
language of doubtful or conflicting meaning, as gleaned from a
natural and reasonable interpretation of its language.");
<u>Franklin v. White Egret Condo., Inc.</u>, 358 So. 2d 1084 (Fla. Dist.
Ct. App. 1977), <u>aff'd</u>, 379 So. 2d 346 (Fla. 1979) (finding "two
sections [of a disputed contract] are inconsistent, and
inherently ambiguous.").  When a contract is ambiguous, it raises
"factual issues requiring consideration of extrinsic evidence to
determine the intended meaning of the provision in light of the
expectations of the contracting parties."  <u>Eagle Indus., Inc. v.
DeVilbiss Health Care, Inc.</u>, 702 A.2d 1228, 1230 (Del. 1997).  If
"the court finds that a contract is ambiguous and that extrinsic
evidence is undisputed, then the interpretation of the contract
remains a question of law for the court to decide."  <u>In re
Columbia Gas Sys.</u>, 50 F.3d 233 (3d Cir. 1995).

The question of whether defendant Shaw assumed the Guaranty
and Payment Letter must be considered in light of the fundamental
premise that a guaranty "is a separate contract involving duties
and responsibilities which are different from the basic contract
to which it is collateral."[12]  <u>Financeamerica Private Brands,</u>

---

[12] Given the very clear case law establishing that a
guaranty and the underlying contract are separate contracts, the
court rejects defendant Shaw's argument that the contract at
issue is the Ras Tanura Contract.

Inc. v. Harvey E. Hall, Inc., 380 A.2d 1377, 1379 (Del. Super. 1977); see also Jones Motor Co. v. Teledyne, Inc., 690 F. Supp. 310, 313 (D. Del. 1988). Therefore, the issue presented by the parties is whether the Guaranty and Payment Letter were unambiguously assumed or rejected under the APA.

The court concludes that the Guaranty and Payment Letter were assumed under the APA. First, neither the Guaranty nor the Payment Letter fall within the definition of an "Excluded Asset" either as a "Completed Contract" or as a "Special Project Claim", as defined in Section 2.02 of the APA and the schedules related thereto. Second, Section 1.01 of the APA defines an "Assumed Contract" as any contract that is not specifically identified as a "Rejected Contract" or a "Completed Contract". Sections 1.01 and 2.03 and Schedule 2.03 of the APA define the scope of "Assumed Liabilities" as including "outstanding bank indebtedness". The record indicates that Schedule 3.17, listing those contracts which relate to such outstanding bank indebtedness as guaranties, includes at least an indirect reference to the Guaranty and Payment Letter. Defendant failed to pay or contest plaintiff's cure claim. Finally, and of great significance, are the representations made to this court by counsel for the debtor, that if contracts were not identified on the schedules listing rejected and completed contracts, then the contract would be deemed an assumed contract.

16

**V.    CONCLUSION**

For all of these reasons, the court concludes that the Guaranty and Payment Letter are contracts that were assumed by defendant Shaw by operation of the APA and the Sale and Assumption Order.  Therefore, plaintiff's motion for summary judgment shall be granted.  An appropriate order shall issue.

17

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STONE & WEBSTER, INC. et al., | ) | Bk. No. 00-2142(PJW) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| ——————————————————— | ) | |
| | ) | |
| SAUDI AMERICAN BANK, | ) | Adv. No. 01-7766(PJW) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 04-834-SLR |
| | ) | |
| SHAW GROUP, INC., SWINC | ) | |
| ACQUISITION THREE, INC., and | ) | |
| SWE&C LIQUIDATING TRUSTEE, | ) | |
| | ) | |
| Defendants. | ) | |

O R D E R

At Wilmington this 3rd day of May, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1.    Defendants' motion for summary judgment (D.I. 29) is denied.

2.    Plaintiff's motion for summary judgment (D.I. 47) is granted.

3.    The Clerk of Court is directed to enter judgment in favor of plaintiff and against defendants.

_____
United States District Judge

# EXHIBIT D

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:04-cv-00834-SLR

Saudi American Bank v. Shaw Group Inc., et al
Assigned to: Honorable Sue L. Robinson
Demand: $0
Cause: 28:0157 Motion for Withdrawal of Reference

Date Filed: 07/08/2004
Jury Demand: Defendant
Nature of Suit: 423 Bankruptcy
Withdrawl
Jurisdiction: Federal Question

## Debtor

**Stone & Webster Incorporated
et al**
*TERMINATED: 10/18/2004*

represented by **Gary Adam Rubin**
Skadden, Arps, Slate, Meagher &
Flom
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
(302) 651-3000
*TERMINATED: 10/18/2004*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Plaintiff

**Saudi American Bank**

represented by **Kevin J. Mangan**
Monzack & Monaco, P.A.
1201 North Orange Street, Suite
400
P.O. Box 2031
Wilmington, DE 19899
(302) 656-8162
Email: kmangan@monlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**Shaw Group Inc.**

represented by **Gregory Alan Taylor**
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
Email: gtaylor@ashby-geddes.com

                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**SWINC Acquisition Three Inc.**        represented by **Gregory Alan Taylor**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**SWE&C Liquidating Trustee**           represented by **Adam G. Landis**
*SWE&C Liquidating Trustee,*                            Landis Rath & Cobb LLP
*successor to SWE&C and SWE&C*                          919 Market Street, Suite 600
*Subsidiaries under the Third Joint*                    P.O. Box 2087
*Plan*                                                  Wilmington, DE 19899
*also known as*                                         (302) 467-4400
Webster Corp et al                                      Email: landis@lrclaw.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/08/2004 |   | Adversary Cause of Action: Recover Money or Property (mwm) (Entered: 07/09/2004) |
| 07/08/2004 | 1 | MOTION by Shaw Group Inc., SWINC Acquisition to Withdraw the Reference re: [1-1] motion (mwm) (Entered: 07/09/2004) |
| 07/08/2004 | 2 | DESIGNATED RECORD of withdrawal record (mwm) (Entered: 07/09/2004) |
| 07/08/2004 |   | DEMAND for jury trial by SWINC Acquisition, Webster Corp et al (mwm) (Entered: 07/09/2004) |
| 07/08/2004 | 3 | NOTICE of Docketing: Bankruptcy withdrawal record from Case # 01-AV-7766 (mwm) (Entered: 07/09/2004) |
| 07/14/2004 | 4 | CASE assigned to Judge Sue L. Robinson . Notice to all parties. (rjb) (Entered: 07/14/2004) |
| 09/09/2004 |   | So Ordered granting [1-1] motion to Withdraw the Reference ( signed by Judge Sue L. Robinson ) Notice to all parties. (rld) (Entered: 09/10/2004) |
| 09/15/2004 | 5 | ORDER, set Tele-Scheduling Conference for 8:45 10/13/04 ( signed by Judge Sue L. Robinson ) copies to: cnsl. (rld) (Entered: 09/15/2004) |
|            |   |             |

| | | |
|---|---|---|
| 09/16/2004 | 6 | Box of The Entire Record on the Withdrawal of Reference with certified copy of the Order and Docket Sheet from the United States Bankruptcy Court, District of DE (fmt) (Entered: 09/20/2004) |
| 10/12/2004 | 7 | Letter to Judge Robinson from S. Jenkins enclosing proposed scheduling order (rld) (Entered: 10/12/2004) |
| 10/13/2004 | | Scheduling conference held via teleconference; Judge Robinson presiding; no crt. rptr. (rld) (Entered: 10/13/2004) |
| 10/14/2004 | 8 | ORDER, Motion Hearing on pending motions for summary jgm. filed in Bk. Court shall be held on 11/4/04 at 1:00 p.m. ( signed by Judge Sue L. Robinson ) copies to: cnsl. (rld) (Entered: 10/14/2004) |
| 10/18/2004 | 9 | NOTICE of Substitution of Party and of Counsel for SWE&C Liquidating Tr by Adam G. Landis; SWE&C Liquidating Trustee is substituted for Stone & Webster Engineering Corporation (fmt) (Entered: 10/20/2004) |
| 10/21/2004 | | Deadline updated; set oral argument for 1:00 11/4/04 re summary jgm. motions filed in Bk. Crt. set by court order on 10/14/04 (rld) (Entered: 10/21/2004) |
| 11/04/2004 | | Oral Argument held re pending summary jgm. motions from the BK. Crt. Docket; Judge Robinson presiding; crt. rptr. V. Gunning present. (rld) (Entered: 11/04/2004) |
| 11/12/2004 | 10 | TRANSCRIPT filed [0-0] oral argument for dates of 11/4/04; Judge Robinson presiding; Court Rptr. V. Gunning (fmt) (Entered: 11/15/2004) |
| 05/04/2005 | 11 | MEMORANDUM OPINION. Signed by Judge Sue L. Robinson on 5/3/05. (rld, ) (Entered: 05/04/2005) |
| 05/04/2005 | 12 | ORDER denying defts. motion for summary jgm. (D.I. 29 on Bankruptcy Court docket) and granting pltf.'s motion for summary jgm. (D.I. 47 on the Bk. Crt. docket); Clerk of Court directed to enter jgm. in favor of pltf. and agst. defts. Signed by Judge Sue L. Robinson on 5/3/05. (rld, ) (Entered: 05/04/2005) |
| 05/05/2005 | 13 | JUDGMENT in favor of pltf. Saudi American Bank and against defts. Shaw Group, SWINC Acquisition Three, and SWE&C Liquidating Trustee in the amount of $6,728,549.00. Signed by Judge Sue L. Robinson on 5/4/05. (rld, ) (Entered: 05/05/2005) |
| 05/18/2005 | 14 | MOTION for Attorney Fees *Motion fo Assessment of Damages* - filed by Saudi American Bank. (Mangan, Kevin) (Entered: 05/18/2005) |

| 05/18/2005 | 15 | DECLARATION *of Arif Usmani in Support of Plaintiff's motion for Assessment of Damages (D.I. 14)* by Saudi American Bank. (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit # 8 Exhibit # 9 Exhibit)(Mangan, Kevin) Modified on 5/19/2005 (fmt, ). (Entered: 05/18/2005) |
|---|---|---|
| 05/18/2005 | 16 | AFFIDAVIT of Daniel E. Rosenfeld *in Support of Plaintiff's motion for Assessment of Damages (D.I. 14)* filed by Saudi American Bank. (Attachments: # 1 Exhibit # 2 Exhibit A Part 2# 3 Exhibit A Part 3# 4 Exhibit A Part 4# 5 Exhibit A Part 5# 6 Exhibit A Part 6# 7 Exhibit A Part 7# 8 Exhibit A Part 8# 9 Exhibit A Part 9(a)# 10 Exhibit A Part 9(b)# 11 Exhibit A Part 10)(Mangan, Kevin) Modified on 5/19/2005 (fmt, ). (Entered: 05/18/2005) |
| 05/18/2005 | 17 | EXHIBIT re 14 MOTION for Attorney Fees *Motion fo Assessment of Damages,* 16 Affidavit, *Exhibits A Part 11 through 15 and Exhibits B through G to Affidavit of Daniel E. Rosenfeld in SUpport of Plaintiff's Motion for Assessment of Damages* by Saudi American Bank. (Attachments: # 1 Exhibit A Part 12# 2 Exhibit A Part 13# 3 Exhibit A Part 14# 4 Exhibit A Part 15# 5 Exhibit B through G) (Mangan, Kevin) (Entered: 05/18/2005) |
| 05/18/2005 | 18 | AFFIDAVIT of John C. Hutchins re 14 MOTION for Attorney Fees *Motion fo Assessment of Damages* filed by Saudi American Bank. (Mangan, Kevin) (Entered: 05/18/2005) |
| 05/18/2005 | 19 | AFFIDAVIT of Kevin J. Mangan re 14 MOTION for Attorney Fees *Motion fo Assessment of Damages* filed by Saudi American Bank. (Attachments: # 1 Exhibit A Part 1# 2 Exhibit A Part 2# 3 Exhibit A Part 3# 4 Exhibit A Part 4# 5 Exhibit B)(Mangan, Kevin) (Entered: 05/18/2005) |
| 05/18/2005 | 20 | APPENDIX *to Opening Brief in Support of Saudi American Bank's Motion for Assessment of Damages (D.I. 21)* by Saudi American Bank. (Attachments: # 1 Appendix Part 2# 2 Attachment Part 3a# 3 Appendix Part 3b# 4 Appendix Part 4# 5 Appendix Part 5# 6 Appendix Part 6# 7 Appendix Part 7# 8 Appendix Part 8a# 9 Appendix Part 8b)(Mangan, Kevin) Modified on 5/19/2005 (fmt, ). (Entered: 05/18/2005) |
| 05/18/2005 | 21 | OPENING BRIEF in Support re 14 MOTION for Attorney Fees *Motion fo Assessment of Damages* filed by Saudi American Bank.Answering Brief/Response due date per Local Rules is 6/2/2005. (Attachments: # 1 Certificate of Service)(Mangan, Kevin) (Entered: 05/18/2005) |
| 05/20/2005 | 22 | AMENDED DOCUMENT by Saudi American Bank. Amendment to 15 Declaration, *Amended Declaration of Arif Usmani of Plaintiff's Motion for Assessment of Damages - This document is being* |

| | | amended only to include the Civil Action Number. Please refer to Docket No. 15 for the Exhibits. (Mangan, Kevin) (Entered: 05/20/2005) |
| 05/20/2005 | 23 | AMENDED DOCUMENT by Saudi American Bank. Amendment to 18 Affidavit *of John C. Hutchins in SUpport of Plaintiff's Motion for Assessment of Damages - This document is being amended only to include the Civil Action Number. Please refer to Docket No. 18 for the exhibits.*. (Mangan, Kevin) (Entered: 05/20/2005) |

<table>
<tr><td colspan="4" align="center">**PACER Service Center**</td></tr>
<tr><td colspan="4" align="center">**Transaction Receipt**</td></tr>
<tr><td colspan="4" align="center">05/26/2005 10:10:49</td></tr>
<tr><td>**PACER Login:**</td><td>am0014</td><td>**Client Code:**</td><td>shwgrp-6</td></tr>
<tr><td>**Description:**</td><td>Docket Report</td><td>**Search Criteria:**</td><td>1:04-cv-00834-SLR Start date: 1/1/1970 End date: 5/26/2005</td></tr>
<tr><td>**Billable Pages:**</td><td>3</td><td>**Cost:**</td><td>0.24</td></tr>
</table>