**F**

**Westlaw.**

Not Reported in F.Supp.2d                                                   Page 1
1999 WL 999431 (E.D.Pa.)
**(Cite as: 1999 WL 999431 (E.D.Pa.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Albert L. HARBUCK, husband Jocelyn C. Harbuck,
wife Plaintiffs,
v.
ARAMCO, INC. and ALGOSAIBI DIVING &
MARINE SERVICE COMPANY, Defendants.
**No. CIV. A. 99-1971.**

Oct. 21, 1999.

Dante Mattioni, Mattioni, Mattioni & Mattioni, Ltd.,
Phila, for Albert L. Harbuck, husband, Jocelyn C.
Harbuck, wife, Plaintiffs.

E. Michael Keating, III, Hollstein, Keating, Cattell,
Johnson & Goldstein, P.C., Philadelphia, for Aramco,
Inc., Algosaibi Diving & Marine Services,
Defendants.

MEMORANDUM AND ORDER

VANANTWERPEN, J.

I. INTRODUCTION

**\*1** On April 15, 1999, Plaintiffs, Albert Harbuck
("Harbuck"), and Jocelyn Harbuck, husband and
wife, commenced this action against movant,
Algosaibi Diving & Marine Services Company
("ADAMS") and ARAMCO, Inc. [FN1], alleging
negligence, strict liability, unseaworthiness, and loss
of consortium. (Compl. attached to Def. Mem. Exh.
G) Plaintiffs allege we have subject matter
jurisdiction over their case, pursuant to 28 U.S.C. §
1331(1) (admiralty and maritime jurisdiction) and 28
U.S.C. § 1332 (diversity of citizenship). Plaintiffs do
not invoke Fed.R.Civ.P. 9(h). (Compl.¶¶ 1-2)

> FN1. Plaintiffs allege ARAMCO, Inc.
> "engaged" ADAMS to provide it with diving
> services. (Compl.¶ 13) Plaintiffs further
> allege ARAMCO, Inc. negligently
> supervised Harbuck aboard the "Algosaibi
> 42," a vessel carrying an allegedly defective
> onboard crane, which ARAMCO, Inc.
> allegedly designed and approved. (Id. at ¶¶

14-19) According to Robert McKirkle Ross,
a director of ADAMS, the first-named
defendant, "ARAMCO, Inc.," does not exist.
(Ross Aff. ¶ 25) Nevertheless, there
apparently does exist a company named
"Saudi ARAMCO." (Id.) Saudi ARAMCO,
we take it, does not join ADAMS in its
Motion. Therefore, the legal conclusions
outlined in this opinion do not pertain to
Saudi ARAMCO, if in fact it is a defendant
here.

On August 13, 1999, ADAMS filed a Motion to
Dismiss the Complaint, pursuant to Fed.R.Civ.P.
12(b)(2), for lack of personal jurisdiction, or
alternatively for *forum non conveniens*. Attached to
ADAMS's brief, are affidavits from one if its
directors, Robert McKirkle Ross ("Ross"), and from a
**Saudi Arabian** lawyer, Ismail S. Nazer, Esq.
("Nazer"). Plaintiffs filed their reply brief on
September 20, 1999, and ADAMS filed its Sur Reply
on October 8, 1999.

After reviewing the parties's briefs, and exhibits
attached thereto, and for the reasons set forth below,
we grant ADAMS's Motion to Dismiss for lack of
personal jurisdiction, or alternatively for *forum non
conveniens*.

II. FACTS

ADAMS is a **Saudi Arabian** corporation, with its
principal place of business located in Dammam,
**Saudi Arabia.** (*Ross* Aff. at ¶ 3) On June 20, 1997,
ADAMS employed Harbuck as "Lead Diver 1."
(Ross Aff. ¶ 11; Def. Mem. Exh. A) Prior to his
employ with ADAMS on June 20, 1997, Harbuck
had been employed with ADAMS on four prior
occasions -July 1992, October 1993, February 1995,
and March 1996. (Def.Mem.Exh. B) Each of the five
employment contracts, between Harbuck and
ADAMS, expressly provided that "This Contract is
subject to the Laws of **Saudi Arabia** only." (Def.
Mem. Exh. A and B) At the time of signing all five
employment contracts with ADAMS, including the
June 20, 1997 contract, Harbuck reported his address
as 130 San Francisco Street, Mano, Philippines.
[FN2] (Def. Mem. Exh. A and B) Furthermore,
Harbuck's Permit to Re-enter the Philippines appears
to have been issued in March 1996, and expires in
January 1998. (Def.Mem.Exh. C) Ross averred that
none of ADAMS's contacts with Harbuck took place

**B34**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 999431 (E.D.Pa.)
**(Cite as: 1999 WL 999431 (E.D.Pa.))**

in the United States. (*Id.* at ¶¶ 11-12)

> FN2. Plaintiffs claim Harbuck was hired in Panama. (Plaint.Mem. p. 3) Plaintiffs's counsel apparently incorrectly surmised that Harbuck was hired in Panama, because an addendum to the contract of employment states, "Issued at Panama on April 07, 1995." However, that language clearly refers to Harbuck's "Seaman Book," and not his place of hire. (Plaint Mem. Exh. 1)

While employed for ADAMS, Harbuck allegedly sustained an injury aboard a vessel, known as the "Algosaibi 42" (Compl.¶ 12), which was located in **Saudi Arabian** territorial waters. [FN3] (Ross Aff. ¶ 18) Plaintiffs allege that on May 28, 1998, Harbuck mounted a crane aboard the Algosaibi 42, in the performance of his work duty. (Compl. at ¶ 21) An allegedly defective design in the crane allegedly caused the service way for mounting and dismounting the crane to block, and Harbuck was allegedly forced to ascend the crane, in part, by jumping. When Harbuck landed on the deck, he allegedly struck a stand-by chair, allegedly sustaining serious injuries. (*Id.* at ¶¶ 22-24)

> FN3. Plaintiffs claim Harbuck was injured in the Philippines. (Plaint.Mem. p. 3) This is a bald assertion, and directly contradicts the evidence exhibited in ADAMS's memorandum, which indicates the injury took place in **Saudi Arabia.** We credit ADAMS's evidence.

**\*2** Harbuck apparently received treatment at the Almana Hospital in **Saudi Arabia,** following his injury, then flew back home to the Philippines at ADAMS's expense. (Def. Mem. Exh. D; Ross Aff. ¶ 19) Harbuck remained on full pay following his injury, and ADAMS transferred his monthly salaries to a bank account in Angeles City, Philippines. [FN4] (Def. Mem. Exh. D and E) Only in February 1999, did Harbuck request ADAMS transfer his salary to his mother's Lancaster, Pennsylvania, bank account. Harbuck apparently lives in Lancaster, Pennsylvania, now. (Compl.¶ 5) His wife Jocelyn, the co-Plaintiff here, still resides in Angeles City, Philippines, awaiting permission from the Immigration and Naturalization Service, to enter the United States. (*Id.* at ¶ 6)

> FN4. It appears that a portion of Harbuck's June 1998 salary was transferred to an account in the United States. Nevertheless,

the bulk of that salary was transferred to his Angeles City account, and the rest of his monthly salaries, from April through November 1998, were transferred, in whole, to his Angeles City account. (Def.Mem.Exh. E)

As Ross avers in his Affidavit, virtually all material witnesses and evidence relevant to Plaintiffs's claims, save Harbuck himself, are located in **Saudi Arabia.** (Ross Aff. ¶ 22) The vessel, the Algosaibi 42, which Plaintiffs allege is unseaworthy, is a 173 foot vessel of 795 gross register tons, and operates from Port of Ras Al Tanajib, **Saudi Arabia.** The crane, which Plaintiffs allege is defective, is a marine crane of 12 tons, which measures 8.8 meters when stowed, and weighs approximately 9 tons. The crane is permanently affixed to the vessel. The 18-member crew of the vessel, whom Ross avers will refute Plaintiffs's claims of negligent supervision and unseaworthiness, are all based in **Saudi Arabia.** (*Id.*) Ross further avers, it would be an "extreme hardship and tremendous expense for ADAMS to defend this action anywhere in the United States." (*Id.* at ¶ 23)

As discussed above, ADAMS is a **Saudi Arabian** corporation, operating out of **Saudi Arabia.** ADAMS does not now, nor has it in the past, maintained offices, conducted business, or employed agents, representatives, or other employees in the United States. (Ross Aff. ¶¶ 5-7) The only contact with the United States ADAMS has ever had, was its occasional procurement of equipment from United States sources, outside of Pennsylvania. ADAMS has never had any contact with Pennsylvania. (*Id.* at ¶¶ 8-10)

Kalifa A Algosaibi Holding Company of Dammam, **Saudi Arabia,** is ADAMS's parent company. (Ross Aff. ¶ 1) Kalifa A Algosaibi Holding Company maintains a Web site identifying ADAMS, among other companies, as one of its holdings, and briefly describes the nature of ADAMS's business. (Plaint Mem. Exh. 3) The Web site does not provide users a place to order merchandise or services.

Ismail S. Nazer, Esq. is a **Saudi Arabian** lawyer, whose Affidavit is attached to ADAMS's Memorandum. Nazer's Affidavit discusses the sources of **Saudi Arabian** law, which include the **Koran,** and other Muslim teachings. (Nazer Aff. ¶¶ 8-17) Nazer also examined Plaintiffs's claims with respect to **Saudi Arabian** law, and concluded that Plaintiffs could file a claim against Defendants with either the Saudi Labor Commission, or the *Shari'a*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 999431 (E.D.Pa.)
(Cite as: 1999 WL 999431 (E.D.Pa.))

Page 3

Court, which hears civil claims. (Nazer Aff. ¶¶ 41-43) Furthermore, according to Nazer, Plaintiffs could file their claims *pro se*, or with the assistance of a **Saudi Arabian** attorney, many of whom speak English fluently, and that their claims would probably be resolved within a year. (*Id.*)

### III. DISCUSSION
### A. Jurisdictional Issues

**\*3** ADAMS moves to dismiss Plaintiffs's Complaint pursuant to Fed.R.Civ.P. 12(b)(2), arguing that this court lacks personal jurisdiction. When a motion to dismiss under Fed.R.Civ.P. 12(b)(2) is filed, the burden falls upon the plaintiff to come forward with sufficient facts to establish a *prima facie* case in favor of personal jurisdiction. *Carteret Savings Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir.1992). To the extent that a defendant files opposing affidavits or depositions, a plaintiff may not rest on mere allegations in the complaint, but must support such jurisdictional allegations with appropriate affidavits or other evidence. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66-67 n. 9 (3d Cir.1984). We resolve any conflict of facts in the plaintiffs's favor. *TJS Brokerage & Co., Inc. v. Mahoney*, 940 F.Supp. 784, 787 (E.D.Pa.1996); *Di Mark Mktg., Inc. v. Louisiana Health Serv. & Indemnity Co.*, 913 F.Supp. 402, 405 (E.D.Pa.1996).

The applicable law has been stated many times. Pursuant to Fed.R.Civ.P. 4(e), federal courts are authorized to exercise personal jurisdiction over a nonresident to the extent permitted by law of the state where the action is brought. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir.1987). Federal courts follow a two-step analysis to determine if personal jurisdiction is proper: (1) jurisdiction must be proper under the forum's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant must comport with due process, under the United States Constitution.

Accordingly, we look to the Pennsylvania Long-Arm Statute, 42 Pa.C.S.A. § 5332, to determine whether facts or circumstances exist to require ADAMS to answer in this forum. Section 5332(a)(4) states that the long-arm statute extends to a person who causes "harm or tortious injury by an act or omission in this Commonwealth." It also states that personal jurisdiction "shall extend to all persons ... to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed

under the Constitution of the United States." 42 Pa.C.S.A. § 5332(b). Thus, the two-step inquiry collapses into one coextensive with the due process clause of the United States Constitution because "[t]he Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment." *See e.g., Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir.1992); *Empire Abrasive Equipment v. H.H. Watson, Inc.*, 567 F.2d 554, 556 n. 1 (3d Cir.1977).

### 1. SPECIFIC JURISDICTION

Specific jurisdiction applies "when a controversy is related to or arises out of a defendant's contacts with the forum." [FN5] *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). In such a case, we examine the alleged "minimum contacts" that exist. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A court generally applies two standards in deciding whether the minimum contacts test has been met for specific jurisdiction. First, the plaintiff must show that the "defendant had the minimum contacts with the forum necessary for the defendant to have 'reasonably anticipate[d] being haled into court there.' " *Penzoil Prods. Co. v. Colelli & Associates*, 149 F.3d 197, 201 (3d Cir.1998) (*quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Important factors in determining whether this test has been met are (1) the quality of the contacts between the forum, the defendant, and the litigation, *see Shaffer*, 433 U.S. at 204; (2) whether the cause of action flows from the contacts; and (3) whether the defendant has purposefully availed itself of the privilege of conducting activities in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Second, a court must also inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King v. Rudzewicz*, 471 U.S. 463, 476 (1985) (*quoting International Shoe*, 326 U.S. at 320); *see also Penzoil Products*, 149 F.3d at 201.

> FN5. Plaintiffs argue that ADAMS is subject to jurisdiction in this district, based on his national contacts, throughout the United States, and not merely on his forum-related (*i.e.*, Pennsylvania) contacts. (Plaint.Mem. p. 3) (*citing Go-Video, Inc. v. Akai Elect. Co., Ltd.*, 885 F.2d 1406, 1415-17 (9th Cir.1989). *See also* Fed. R. Civ. P. 4(k)(2). We need not reach this question,

B36

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 999431 (E.D.Pa.)
**(Cite as: 1999 WL 999431 (E.D.Pa.))**

Page 4

however, because ADAMS lacks the sufficient contacts to either Pennsylvania or the United States, which would make it amenable to suit in any federal district court. For the sake of completion, however, we will address ADAMS's national contacts.

\*4 Turning to the facts, we first note that Harbuck was allegedly injured in **Saudi Arabia**. The alleged injury befell Harbuck, while he was employed pursuant to an employment contract, governed by **Saudi Arabian** law. [FN6] ADAMS, the employer, is a **Saudi Arabian** corporation, which is allegedly responsible for Harbuck's injury, because of its alleged acts or omissions, which would have occurred *in Saudi Arabia*. Therefore, Plaintiffs's cause of action arises from ADAMS's alleged non-forum related activity, and we do not have specific jurisdiction over ADAMS here.

> FN6. This case raises a choice of law problem; but not one crucial to our decision. Harbuck's contract with ADAMS states: "This contract is subject to the Laws of **Saudi Arabia** only." (Def.Mem.Exh. B) Plaintiffs argue, however, "the applicable law in this case is not **Saudi Arabian** law, but Admiralty law." (Plaint.Mem. p. 3) Choice of law clauses are valid in maritime cases. *Neely v. Club Med Management Services, Inc.*, 63 F.3d 166, 184-85 (3d Cir.1995). We question, though, if the choice of law clause applies here, because the cause of action sounds in tort, not in contract. Furthermore, the torts alleged here, negligent supervision and strict liability, are not directly related to the contract. *Compare, Indictor v. Tucker Leasing Capital Corp.*, No. Civ.A.91-4125, 1992 WL 132583, at \* 2 (E.D. Pa. June 3, 1992) (contractual choice of law clause applies to torts directly related to the contract, such as tortious interference with contract). We think it would be an issue of **Saudi Arabian** contract law to determine if the clause covers torts arising from performance of the contract, but unrelated to the contract itself. Therefore, we will continue with a choice of law analysis below.
>
> The choice of law analysis concerning maritime claims in the Third Circuit, was set out in *Neely* (applying the so-called "*Lauritzen* triad" of cases, *i.e., Lauritzen v. Larsen*, 345 U.S. 571 (1953), *Romero v. International Terminal Operating Co.*, 358

U.S. 354 (1959), and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970)). *Neely* provides a two-step analysis to solving maritime choice of law problems. First, we look to see if significant American interests are implicated in this case, and second we ascertain whether applying American law would be reasonable. *Neely*, 63 F.3d at 182. The touchstone of analysis in this inquiry are the "substantial contacts" the case has with the United States. *Id.*

At the threshold, we doubt American interests are significantly implicated here. However, *Neely* appears hold that when an American seaman is injured, American interests are sufficiently implicated, so that prescriptive jurisdiction over the case is proper. *63 F.3d at 186.* Harbuck was domiciled in the Philippines at the time of contracting with ADAMS in June 1997, and was living there for years prior to his June 1997 contract with ADAMS. Furthermore, Harbuck's wife, a co-plaintiff, is a Filipino national. However, Harbuck currently resides in Pennsylvania, was born in North Carolina, and carries a United States passport. Therefore, it appears Harbuck is a United States citizen. All other *Lauritzen* factors, as applied to the instant facts, appear to demonstrate a lack of American interest: the injury occurred on foreign waters; ADAMS is a **Saudi Arabian** corporation; the Algosaibi 42 is a **Saudi Arabian** flagged ship; and a contractual choice of law clause (if it applies) specifies that **Saudi Arabian** law governs.

Even if there were a basis for prescriptive jurisdiction, we believe applying American law here would be unreasonable. Harbuck signed a contract for employment in **Saudi Arabian** territorial waters; Harbuck was injured in **Saudi Arabian** territorial waters; **Saudi Arabia** provides an adequate and accessible forum for Plaintiffs to file their claims (see pp. 18-19 *infra* ); and ADAMS has no significant contacts with the United States. *Compare Neely, 63 F.3d at 190-97.* While Harbuck is a United States citizen, his citizenship alone does not outweigh the other factors in assessing the reasonableness of applying American law here. *See Id.* at 196 (disavowing a *per se lex Americana* rule for choice of law in maritime suits brought by injured Americans); *see also Bilk v. Vessel Nair*, 754 F.2d 1541 (9th Cir.1985)

B37

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(denying application of American law where American helicopter pilot injured on high seas, while under Mexican contract to a Mexican firm, which did no business in the United States, and where the case's sole connection the United States was Plaintiff's United States citizenship). Therefore, considering the totality of the circumstances, it is unreasonable to apply American law here.

It is not clear whether the analysis set forth in *Neely* would apply to Plaintiffs's claims based on diversity of citizenship, under 28 U.S.C. § 1332. In a diversity case, the court applies the forum state's choice of law rule. *See Indictor,* 1992 WL 132583, at *2 (*citing Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 187 (3d Cir.1991). The Pennsylvania conflicts of law approach was outlined in *Griffith v. United Airlines, Inc.,* 203 A.2d 796, 416 Pa. 1 (1964). Under the *Griffith* analysis, the court must evaluate the contacts which establish the most significant relationship, giving due weight to the relevant interests and policies of the pertinent fora. *See Indictor,* 1992 WL 132583, at * 2. As discussed *infra,* we believe **Saudi Arabia** has a greater interest in this case than Pennsylvania does. Thus, Pennsylvania law would not apply.

## 2. GENERAL JURISDICTION

General jurisdiction permits a court to exercise personal jurisdiction over a nonresident defendant when "that party can be called to answer any claim against [it], regardless of whether the subject matter of the cause of action has any connection to the forum." *Mellon Bank,* 960 F.3d at 1221. General jurisdiction can thus be exercised over non-forum related activities when the defendant has engaged in "systematic and continuous" activities in the forum state. *See Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414- 16 (1984). In *Helicopteros,* for example, the Supreme Court denied general jurisdiction, finding that the defendant did not have sufficient "systematic and continuous" contact with the forum state, although it had purchased millions of dollars worth of products, negotiated a contract, and even trained employees from within the forum state. *Id.* at 418.

Unilateral activity on the part of the plaintiff is not sufficient to maintain jurisdiction over the defendant. Rather, the defendant must have purposefully availed

"itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Middle Atlantic States Engineering, Inc. v. Camden City Municipal Utilities Authority, et al.,* 426 F.Supp. 299 (E.D.Pa.1977) (*quoting Hanson,* 357 U.S. at 253).

Robert McKirkle Ross, a director of ADAMS, averred that ADAMS is a **Saudi Arabian** corporation, with its principal place of business located in Dammam, **Saudi Arabia.** ADAMS does not now, nor has it in the past, maintained offices, conducted business, or employed agents, representatives, or other employees in the United States. The only contact with the United States ADAMS has ever had, was its occasional procurement of equipment from United States sources, outside of Pennsylvania. [FN7] ADAMS has never had any contact with Pennsylvania. On June 20, 1997, pursuant to an employment contract, ADAMS employed Harbuck as a "Lead Diver 1," however, none of ADAMS's contacts with Harbuck took place in the United States. Ross's averments, which Plaintiffs do not contradict, demonstrate the scarcity of ADAMS's contacts with the United States. In fact, ADAMS's contacts with the United States do not even amount to those alleged in *Helicopteros,* where the Supreme Court found no general jurisdiction. Therefore, we find ADAMS's alleged contacts with the United States insufficient upon which to maintain jurisdiction over ADAMS.

FN7. Ross avers none of ADAMS's contacts with Saudi ARAMCO occurred in the United States. Saudi ARAMCO does have an affiliate, ARAMCO Services Company, in Houston, Texas. However, Ross avers ADAMS has had no contacts with ARAMCO Services Company, in the United States. (Ross Aff. ¶ 25)

**\*5** Plaintiffs apparently argue that ADAMS established sufficient contacts with the United States by (1) maintaining a Web page, which is accessible in Pennsylvania, and throughout the United States; (2) entering into an employment contract with Harbuck, a United States citizen; and (3) transferring money to a bank account in Pennsylvania, on Harbuck's behalf. However, we conclude that ADAMS does not have "systematic and continuous" contacts with the United States, and Plaintiff has not produced sufficient evidence to meet this high threshold. We discuss Plaintiffs's claims, in turn, below.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 999431 (E.D.Pa.)
(Cite as: 1999 WL 999431 (E.D.Pa.))

Page 6

a. "*www.algosaibi-holding.com* "

Plaintiffs claim that the Web page under "www.algosaibi-holding.com," which is available to Internet users worldwide, establishes sufficient contacts with the United States for us to maintain jurisdiction over ADAMS. The issue of personal jurisdiction based on Internet activity is a relatively new issue for the federal courts. The varied federal court decisions have announced some guiding principles that can be gleaned from the case law. Under the minimum contacts inquiry, the general focus is the nature and quality of activity that a defendant conducts over the Internet. See *Zippo Mfg. Co. v. Zippo Dot Com., Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997).

Personal jurisdiction clearly exists, for example, when Internet activity involves business over the Internet, including on-line contracts with residents of a foreign jurisdiction, or substantial interactivity of a commercial nature with the Web site. See, e.g., *Zippo Mfg. Co., 952* F.Supp. at 1125-26 (held that jurisdiction may be exercised because defendant contracted with approximately 3,000 individuals and seven Internet access providers in Pennsylvania); *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328, 1333 (E.D.Mo.1996) (held that creating an online commercial mailing list by signing people up at their Web site for commercial purposes was purposeful availment); *Gary Scott Int'l, Inc. v. Baroudi,* 981 F.Supp. 714, 716-17 (D.Mass.1997) (held that personal jurisdiction could be exercised because defendant solicited and sold his product via his Web site to Massachusetts residents and had a major deal with a Massachusetts business). In the seminal case of *CompuServe, Inc. v. Patterson,* the Sixth Circuit held that on-line contracts between the defendant and plaintiff were sufficient to exercise personal jurisdiction over the defendant. 89 F.3d 1257, 1264 (6th Cir.1996). In particular, the court found the defendant had a "substantial connection" with the forum state as more than a purchaser of services: "Patterson chose to transmit his software from Texas to CompuServe's system in Ohio, that myriad others gained access to Patterson's software via that system, and that Patterson advertised and sold his product through that system." *Id.* at 1264.

Beyond such clear cut cases, courts have differed in their determination of the level of interactivity and commercial nature of the information that occurs on the Web site required to trigger personal jurisdiction. In one line of cases, courts have declined to exercise jurisdiction on the basis that the Web site is passive,

where the site merely provides information to those who seek it. [FN8] See, e.g., *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418-19 (9th Cir.1997) (held that an Internet advertisement alone is insufficient to subject an advertiser to jurisdiction); *Transcraft Corp. v. Doonan Trailer Corp.,* No. 97-C-4943, 1997 WL 733905, at *8-*10 (N.D.Ill. Nov. 17, 1997) (held that Web site advertisement with an e-mail address for inquiries was insufficient to subject a defendant to personal jurisdiction); *CFOS 2 GO, Inc. v. CFO 2 GO, Inc.,* No. C-97-4676 SI, 1998 WL 320821, at *6 (N.D. Cal. June 5, 1998) (held that Web site with description of defendant's business and contact information did not amount to purposeful availment); *Smith v. Hobby Lobby Stores, Inc.,* 968 F.Supp. 1356, 1364-65 (W.D.Ark.1997) (held that an advertisement in a trade publication on the Internet without a contract to sell any goods or services with citizens of the forum state is insufficient to trigger jurisdiction).

> FN8. The following courts also declined to exercise personal jurisdiction over a defendant that had merely advertised on the Web. See, e.g., *Bensuan Restaurant Corp. v. King,* 126 F.3d 25 (2d Cir.1997); *Hearst Corp. v. Goldberger,* No. 96 Civ. 3260, 1997 WL 97097 (S.D.N.Y. Feb. 26, 1997). While such cases are instructive, they were decided under the New York long-arm statute, which is more limited than due process.

*6 Another line of cases has rejected the holding that advertisement Web sites are merely passive. For example, in *Inset Sys., Inc. v. Instruction Set, Inc.,* the court held that a minimum contacts test was satisfied by merely an Internet advertisement and a toll-free number for inquiries. 937 F.Supp. 161, 165 (D.Conn.1996); *see also Telco Communications v. An Apple A Day,* 977 F.Supp. 404, 407 (E.D.Va.1997) (held that advertising and solicitation over the Internet via a Web site triggers jurisdiction). The weight of the case law, however, seems to favor the analysis that requires something more than a Web site that acts as a worldwide advertisement to trigger personal jurisdiction.

Returning to our present case, Kalifa A Algosaibi Holding Company of Dammam, **Saudi Arabia,** is ADAMS's parent company. Kalifa A Algosaibi Holding Company maintains a Web site identifying ADAMS, among other companies, as one of its holdings, and briefly describes the nature of ADAMS's business. [FN9] The Web site does not

B39

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 999431 (E.D.Pa.)
(Cite as: 1999 WL 999431 (E.D.Pa.))

provide users a place to order merchandise or services. Rather, the Web site amounts to "passive" advertising at best; and subjecting ADAMS to this court's jurisdiction because of the Web site would be unreasonable.

> FN9. It is unnecessary for us to decide if we have jurisdiction over ADAMS through the acts of its parent, because even the acts of its parent company are insufficient to maintain jurisdiction over it, or its subsidiary, ADAMS.

b. *Other Contacts*

Plaintiffs further claim we have jurisdiction over ADAMS, because it contracted with Harbuck, a United States citizen, and because it sent him money through a United States bank. However, "a contract alone does not automatically establish sufficient minimum contacts in the other party's home forum." Cf. *Vetrotex Certainteed v. Consolidated Fiberglass, 75 F.3d 147, 151 (3d Cir.1996) (quoting Grand Entertainment Group Ltd., v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir.1993)).* In *Middle Atlantic,* for example, plaintiff, a Pennsylvania corporation, alleged the court maintained personal jurisdiction over the defendant, a New Jersey corporation, based upon the contract for services plaintiff entered into with defendant. That contract was fully negotiated and entered into in New Jersey, and provided for services to be performed on New Jersey sewerage facilities. Chief Judge Lord found the contract had no relationship to Pennsylvania. Therefore, the court held "it would offend traditional notions of fair play and substantial justice to allow a New Jersey ... corporation to be sued in Pennsylvania on the basis of a contract negotiated and executed in New Jersey for the purpose of evaluating, planning, and coordinating sewerage facilities in New Jersey." *Id.* at 300 (internal quotes omitted).

Sparse contact between parties, pursuant to an executed contract, is not the mortar upon which we might build a jurisdiction basis. In *FDIC v. British-American Ins. Co., Ltd., 828 F.2d 1439 (9th Cir.1987),* a California corporation contracted with British-American Insurance Company, to buy British-American's Fiji Islands branch. The contract included a provision stating Fiji law would govern the contract. The parties executed the contract, and one of British-American's officers collected payment in California. Where the "subject of the contract was in Fiji, the governing law was Fiji's, and the defendant's only significant performance in

California was picking up a check for an already completed and executed contract," the court "recognized that the receipt of payment alone for services rendered outside the forum state is not sufficient to support personal jurisdiction." *Id.* at 1443 (*citing Pacific Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1327-29 (9th Cir1985)).*

*7 On June 20, 1997, ADAMS employed Harbuck as "Lead Diver 1." Prior to his employ with ADAMS, on June 20, 1997, Harbuck had been employed with ADAMS on four prior occasions -July 1992, October 1993, February 1995, and March 1996. Each of the five employment contracts, between Harbuck and ADAMS, expressly provided that "This Contract is subject to the Laws of **Saudi Arabia** only." *See also supra* note 9, at 8-9. At the time of signing all five employment contracts with ADAMS, Harbuck reported his address as 130 San Francisco Street, Mano, Philippines. Furthermore, Harbuck's Permit to Re-enter the Philippines appears to have been issued in March 1996, and expires in January 1998.

After Harbuck's injury, ADAMS transferred his monthly salaries to a bank account in Angeles City, Philippines. Only in February 1999 did Harbuck request ADAMS transfer his salary to his mother's Lancaster, Pennsylvania bank account. Therefore, it appears to us, after reviewing the employment contracts, the memos concerning the transfers of Harbuck's salaries, and his Permit to Re-enter the Philippines, that Harbuck resided in the Philippines at the time of entering into each of the employment contracts with ADAMS.

Even if Harbuck resided in Pennsylvania at the time he contracted with ADAMS, he did not list this residence on the employment contract which he signed. There is no indication ADAMS was aware Harbuck resided in Pennsylvania, or anywhere in the United States, until well after his alleged injury in **Saudi Arabia.** Harbuck did indicate his place of birth on the contract forms as Charlotte, North Carolina. However, the subject of the contract was **Saudi Arabia,** where Harbuck was to perform his services as "Lead Diver 1." The governing law of the contract was **Saudi Arabia's.** ADAMS's only performance in Pennsylvania, or the United States, was transferring Harbuck's salary, upon his request, to his mother's bank account in Lancaster. Any of ADAMS's contacts with Pennsylvania, or the United States, were instigated by Harbuck's unilateral acts of (1) being born in North Carolina; and (2) requesting ADAMS transfer his salary to a Pennsylvania bank account. Outside of Harbuck's unilateral acts, there is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

no indication that ADAMS acted in Pennsylvania, or any of the United States, or availed itself to the protection and benefits of any of our laws. Therefore, it would offend traditional notions of fair play and substantial justice to hale ADAMS into our court.

### 3. *REASONABLENESS*

Even if a defendant has the requisite minimum contacts with the forum, other factors may militate against exercising jurisdiction. These "fairness factors" include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most convenient and efficient relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the interest in furthering fundamental substantive social policies. *Penzoil Products*, 149 F .3d 197 at 205-06 (*quoting Burger King*, 471 U.S. at 477).

**\*8** Applying these factors to the facts at hand, we reiterate that ADAMS is a **Saudi Arabian** corporation, with its place of business in **Saudi Arabia**, and with almost no history of contact with the United States. As Ross's Affidavit avers, it would be extremely burdensome and expensive for ADAMS to defend against this suit in the United States, because of distance, lack of familiarity with our legal system, and because the documents, physical evidence, and witnesses relevant to the defense against Plaintiffs's claim are all located in **Saudi Arabia**. (*See* Plaint Mem. p. 10)

The United States or Pennsylvania's interest in this action is minimal, because Harbuck's contract was executed in **Saudi Arabia**, and is governed by **Saudi Arabian** law. However, **Saudi Arabia**'s interest in this case may be substantial. In *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 115 (1986) (emphasis added), the Supreme Court called on us to "consider the policies of *other nations* whose interests are affected by the assertion of jurisdiction" by a court in the United States. The Court continued:

> In every case [the interests of other nations], as well as the Federal Government's interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by the minimal interests on the part of the plaintiff or the forum State.
> *Id.*

Ismail S. Nazer, Esq. is a **Saudi Arabian** lawyer, whose Affidavit is attached to ADAMS's Memorandum. Nazer averred that it is "[o]f great significance to the Saudi Arab Government's interest [to] apply its law in these proceedings," because the "alleged personal injury and other alleged negligent acts of which Plaintiffs complain occurred ... within **Saudi Arabian** territory." (Nazer Aff. ¶ 30). Nazer also instructs us that **Saudi Arabia's** interest in applying its own laws, founded on Islam, is based upon centuries of tradition during which **Saudi Arabia** always subjected foreigners to its own laws. This tradition is opposed to those other Islamic states, under European domination, who historically granted foreigners immunity from Islamic law. (Id. at ¶ ¶ 33-34) Therefore, cognizant of the Supreme Court's admonition, we give great deference to ADAMS's claim that it would be a burden to defend this suit in our court, and take special note of **Saudi Arabia's** interest in hearing Plaintiffs's suit. Accordingly, we find that the factors weigh in favor of not exercising jurisdiction over ADAMS.

### B. *Forum Non Conveniens*

Under the common law doctrine of *forum non conveniens*, a district court may dismiss a complaint, even if jurisdiction is proper, if the court, in its discretion, determines that justice and convenience warrant dismissal. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). To dismiss a claim for *forum non conveniens*, we must first be convinced that an adequate alternative forum exists to hear the case. The alternative forum requirement is ordinarily satisfied when the defendant is amenable to process in the other jurisdiction. *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1226 (3d Cir.1995) (*quoting* Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981)). If an alternative forum does exist, we weigh the "private and public interests factors that are relevant to the *forum non conveniens* determination." *Bhatnagar*, 52 F .3d at 1226 (*quoting Lacy v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir.1988).

**\*9** The private interests include considerations such as "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining evidence of willing, witnesses; possibility of view of premises, if view would be appropriate to the action, and other factors that make trial of the case easy, expeditious and inexpensive." *Bhatnagar*, 53 F.3d at 1226 n. 5 (*quoting Gulf Oil*, 330 U.S. at 508-509) (internal quotes omitted). The public interests include congestion of domestic courts; not forcing jury duty

B41

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 999431 (E.D.Pa.)
(Cite as: 1999 WL 999431 (E.D.Pa.))

Page 9

upon those with no interest or relation to the particular controversy; and having cases adjudicated in the forum familiar with the law to be applied, thereby avoiding the necessity of learning foreign law. *Id.*

First, an adequate forum exists in **Saudi Arabia** for the resolution of Plaintiffs's claims. It appears ADAMS would be amenable to suit before the Saudi Arab Labor Commission, where Plaintiff could have filed a timely claim, [FN10] under the provisions of the Saudi Arab Labor and Workmen Law. (Nazer Aff. ¶ 41-43) Even if Plaintiffs failed to file a timely claim under the Saudi Arab Labor and Workmen Law, they could still pursue a claim for personal injury, against ADAMS, in the *Shari'a* Courts, which deal with civil claims. (*Id.*) There are no relevant statutes of limitation, which would preclude Plaintiffs's claims in the *Shari'a* Courts. (*Id.*)

> FN10. It appears that a one year statute of limitations exists. It is not clear whether it has run on Plaintiffs's claims or not. (See Nazer Aff. ¶ 41)

We next weigh the private and public factors relevant to the determination of a *forum non conveniens* motion. ADAMS draws our attention to *Jeha v. Arabian American Oil Co.*, 751 F.Supp. 122, 125 (S.D. Texas 1990), aff'd 936 F.3d 569 (5th Cir.1991) (Def.Mem.11-13), a case we find persuasive because of its factual similarity to the instant case. [FN11] In *Jeha*, a Lebanese employee and his wife brought a medical malpractice action in the Southern District of Texas, against the husband's employer, for treatment received by his wife from the employer's doctors in **Saudi Arabia.** The court dismissed the case for *forum non conveniens*, finding that **Saudi Arabia** was an adequate, available forum for plaintiffs to litigate their claim.

> FN11. In both *Bhatnagar* and *Jeha*, plaintiffs were alien nationals. The Third Circuit recognized that a plaintiff's choice of forum is entitled to less deference where the foreigner has brought the suit. *See Bhatnagar, 52 F.3d at 1226 n. 4* (*citing Piper Aircraft, 454 U.S. at 255*). Since Harbuck carries a United States passport, we will give his choice of forum full deference. We do this even though he has been living abroad for a number of years, and his wife, a co-Plaintiff, is a Filipino national. However, the other private and public interest factors weigh so heavily on the side of dismissing

the case for resolution in **Saudi Arabia,** they override Plaintiffs's choice of forum.

The court also found that the private and public interest factors weighed in defendant's favor, for dismissal. The court found that all the evidence in the case would come from **Saudi Arabia** or Lebanon, not Texas. In fact, the evidence would be virtually inaccessible to the Texas court. The court also found that litigation in Texas would unnecessarily require witnesses, at considerable expense, to leave their jobs in **Saudi Arabia,** for an extended period of time. Finally, the court found that the lawsuit had no connection to Texas or the United States, particularly since the laws of the United States would not apply to the action, and no policy or right of the United States was implicated.

Here, the employment contract between Harbuck and ADAMS was for employment in **Saudi Arabia,** and **Saudi Arabian** law governs the dispute. **Saudi Arabian** courts would be more competent than we would be, in applying their own laws to this case. Next, all of the witnesses, documents, and evidence relating to this case are in **Saudi Arabia.** Witnesses would have to come to Pennsylvania for trial, assuming they would even be willing to do so, at great financial expense and intrusion into their work schedules and family lives. The crane, which allegedly caused Harbuck's injury, is also in **Saudi Arabia.** It would be nearly impossible for us to access that crane without making a trip to **Saudi Arabia.** Since Plaintiffs will most likely have to make the trip to **Saudi Arabia** anyway, to access the crane, and since they have worked and lived in other countries, it is less of a burden for them to go to **Saudi Arabia,** than for the **Saudi Arabian** defendants, witnesses, and evidence to come here.

**\*10** Our court is not a convenient forum for other administrative reasons, related to the public interests in this case. Our court is heavily overloaded right now, and we do not need another case, especially one involving unfamiliar foreign law, congesting our docket. Furthermore, we doubt the interest a potential jury would have in hearing a case about an injury that occurred in **Saudi Arabia,** and applying **Saudi Arabian** law to that case, especially the when Plaintiffs's only connection to Pennsylvania is that Harbuck apparently moved recently to Lancaster. Therefore, we conclude this court is a *forum non conveniens* for this case, and we dismiss the Complaint accordingly.

IV. Conclusion

B42

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 999431 (E.D.Pa.)
(Cite as: 1999 WL 999431 (E.D.Pa.))

Page 10

For all of the reasons stated above, we dismiss the Complaint, as to ADAMS, for lack of personal jurisdiction, or alternatively for *forum non conveniens*. An Order follows this Memorandum.

ORDER

AND NOW, on this 21st day of October, 1999, in consideration of Defendant Algosaibi Diving & Marine Service Company's Memorandum in Support of Defendant's Motion to Dismiss, and attached exhibits, filed on August 13, 1999, Praecipe to Attach Affidavit of Ismail S. Nazer to Defendant's Motion, filed August 16, 1999, Plaintiffs's Memorandum in Opposition to Defendant's Motion to Dismiss, and attached exhibits, filed September 20, 1999, and Defendant's Sur Reply thereto, filed on October 8, 1999, it is hereby ordered, consistent with the foregoing Memorandum, as follows:

Plaintiff's Complaint in the above-captioned Civil Action is DISMISSED as to Algosaibi Diving & Marine Service Company, without prejudice to Plaintiffs's right to proceed in another forum, consistent with the foregoing Memorandum. [FN1]

> FN1. On page 4 of its Memorandum, Plaintiffs pray we grant them an additional "60 days to complete discovery including the discovery set forth in Exhibit 4." There is no Exhibit 4 attached to Plaintiffs's Memorandum, however. Plaintiffs have had ample time to complete discovery pending the outcome of Defendant's Motion, and their request is denied.

1999 WL 999431 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• ____2:99CV01971_____(Docket) (Apr. 19, 1999)

END OF DOCUMENT

B43

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.