G

Not Reported in F.Supp.2d
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
**(Cite as: 2004 WL 1977572 (N.D.Ill.))**

**H**

**Motions, Pleadings and Filings**

United States District Court,
N.D. Illinois, Eastern Division.
WAFRA LEASING CORPORATION 1999-A-1,
Plaintiff,
v.
PRIME CAPITAL CORPORATION, Prime Leasing
Corporation, Prime Finance Corporation
1999-A-1, Prime Finance Corporation 1999-A-2,
KPMG LLP, Bischoff & Swabowski,
Ltd., Mark Bischoff, James Friedman, Vern Landeck,
Thomas Ehmann, William
Smithburg and John Walter, Defendants.
**No. 01 C 4314.**

Aug. 31, 2004.

Leon Zelechowski, Attorney at Law, Chicago, IL,
for Plaintiff.

David S. Waxman, Richard Keith Hellerman, James
Alan Chatz, Arnstein & Lehr, Andrew Dylan
Campbell, Mayer, Brown, Rowe & Maw, Michael
Jon Gill, Michael K. Desmond, Figliulo & Silverman,
David H. Kistenbroker, Leah J. Domitrovic,
Stephanie D. Jones, Carl E. Volz, Katten Muchin
Zavis Rosenman, Kim Renee Walberg, Shefsky &
Froelich, Ltd., Miriam Goldman Bahcall, Samera S.
Ludwig, Ungaretti & Harris, Kevin D. Finger,
Greenberg Traurig, Chicago, IL, Ted A. Donner,
Donner & Company Law Offices LLC, Wheaton, IL,
for Defendants.

*MEMORANDUM OPINION AND ORDER*

ST. EVE, J.

**\*1** Plaintiff Wafra Leasing Corporation 1999-A-1
("Wafra") filed suit against Defendants Prime Capital
Corporation, Prime Leasing Corporation, Prime
Finance Corporation 1999-A-1, Prime Finance
Corporation 1999-A-2 (collectively, the "Prime
Defendants"), KPMG LLP, Bischoff & Swabowski,
LTD ("B & S"), Mark Bischoff (B & S and Bischoff
are referred to collectively at the "Bischoff
Defendants"), James Friedman, Vern Landeck,
Thomas Ehmann, William Smithburg, and John

Walter.

Count I alleges a violation of Section 10(b) of the
Exchange Act of 1934, 15 U.S.C. § 78c, and Rule
10b-5, 17 C.F.R. § 240.10b-5, against the Prime
Defendants, the Bischoff Defendants, Friedman,
Landeck, Ehmann, Smithburg, and Walter. Count II
alleges a violation of Section 20(a) of the Exchange
Act against Friedman, Bischoff, Landeck, Ehmann,
Smithburg, and Walter. Count III alleges common
law fraud against the Prime Defendants, the Bischoff
Defendants, Friedman, Landeck, and Ehmann. Count
IV alleges negligent misrepresentation against the
Bischoff Defendants. Counts V, VI, and VII allege
breach of contract, unjust enrichment, and
conversion, respectively, against the Prime
Defendants. Count VIII alleged Section 10(b) and
Rule 10b-5 violations against KPMG, but is no
longer part of this lawsuit. Count IX alleges negligent
misrepresentation against KPMG. Count X alleges a
violation of the Illinois Consumer Fraud and
Deceptive Business Practices Act against all
Defendants. Count XI alleges a violation of Section
10(b) and Rule 10b-5 against KPMG based on failure
of its alleged duty to disclose.

BACKGROUND
I. Factual Background

Plaintiff Wafra Leasing Corporation 1999-A-1
("Wafra") is organized pursuant to the laws of the
Cayman Islands. (R. 208-1, Defs.' Statement of Facts
¶ 16.) Defendant Prime Capital Corporation, is a
Delaware corporation. (*Id.* ¶ 4.) Prime Leasing, Inc.,
Prime Finance Corporation 1999-A-1, and Prime
Finance Corporation 1999-A-2 are wholly owned
subsidiaries of Prime Capital. (*Id.* ¶ ¶ 5-7.)
Defendant KPMG is a limited liability partnership
organized pursuant to the laws of the state of
Delaware with offices throughout the United States,
including Chicago, Illinois. (*Id.* ¶ 11.)

Prime Capital is a specialty finance company that
through its affiliates financed certain equipment
leases. (*Id.* ¶ 4.) Securitization of the leases largely
financed Prime's activities. (*Id.*) Prime Leasing acted
as the originator of, and servicer for, the
securitizations. (*Id.* ¶ 5.) In order to facilitate the
securitizations, Prime Capital and Prime Leasing
created special purpose bankruptcy-remote
corporations. (*Id.* ¶ 6.) These corporations typically

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

owned the leased assets and issued the notes purchased by the investors. (*Id.* ¶ 6.) For purposes of the 1999 securitization, Prime Leasing created Prime Finance Corporation 1999-A-1 and 1999-A-2. (*Id.* ¶ 7.) During all critical times, KPMG was Prime's auditor. (*Id.* ¶ 34.)

**\*2** Defendant James Friedman was President, Chief Executive Officer, and Chief Operating Officer of Prime Capital and a member of its board of directors. (*Id.* ¶ 8.) Vern Landeck was Vice President and Chief Financial Officer of Prime Capital. Thomas Ehmann was Vice President, Finance, of Prime Capital from September 1997 until December 1998, when he tendered his resignation but continued to perform the same duties at Prime. (*Id.* ¶ 9.) Defendant B & S was an Illinois professional services corporation performing legal services for clients, including Prime Capital. (*Id.* ¶ 12.) Mark Bischoff was a partner at B & S and a member of Prime Capital's board of directors and its Audit Committee. (*Id.* ¶ 13.) William Smithburg was also a member of Prime Capital's board of directors and its Audit Committee. (*Id.* ¶ 14.) John Walter was a member of Prime Capital's board of directors and its Executive Committee. (*Id.* ¶ 15.)

Wafra Investment formed the plaintiff corporation, Wafra, which is a wholly owned subsidiary of the Wafra Fund. (*Id.* ¶ 22.) The sole owners of the Wafra Fund are the Kuwaiti National Security Administration, a branch of the Kuwaiti government, and Aref Investment Group, owned by the Kuwait Public Institution for Social Security and an Islamic bank. (*Id.* ¶ 19.) Wafra invested in the 1999-A Securitization on May 4, 1999. (*Id.* ¶¶ 16, 39.) Wafra's investors sought to comply with **Islamic law**, or Sharia, which **prohibits** investors from collecting **interest**, but allows them to earn money from the ownership and operation of assets. (*Id.* ¶ 17.)

Under the securitizations, Prime was to make lease payments directly into a lockbox account established for each securitization. (*Id.* ¶ 25.) A third party, Bankers Trust, served as the trustee responsible for monitoring the lockboxes for the 1999-A Securitization. (*Id.* ¶ 59.) Despite this structure, it was not uncommon for lessees to make payments ("misdirected payments") directly to Prime, and not to the appropriate lockbox account. (*Id* . ¶ 25.) Additionally, in mid-1998, two lessees opted to pay their entire lease amounts to Prime in a lump sum ("lease buyouts"). (*Id.* ¶ 29.) The securitization agreements required Prime to remit the misdirected payments and lease buyout proceeds to the lockbox

account within two days of receiving them. (*Id.* ¶ 24; R. 217-1, Pl.'s Resp. to Defs.' Statement of Facts ¶ 29.)

On June 3, 1999 Prime disclosed in its first quarter Form 10-Q that $78 million of Prime's $188 million in credit had not been renewed. (*Id.* ¶ 63.) On June 17, 1999, Prime disclosed that its CEO had made a $900,000 loan to Prime. (*Id.* ¶ 64.) On November 1, 1999, KPMG resigned as Prime's auditor. (*Id.* ¶ 67.) The Form 8-K disclosed "the existence of certain unreconcilable differences between the account detail and the general ledger and information included in the account detail which could not be substantiated and that many of these differences relate to transactions that occurred in prior years." (*Id.*) KPMG and Wafra never communicated at any time before or after Wafra made its investment in the 1999 Securitization. (*Id.* ¶ 39.)

**\*3** On June 9, 2000, Prime announced that it would be unable to continue servicing the assets of the trusts, thereafter making interest but not principal payments. Prime made no payments on Plaintiff's principal investment after May 15, 2000, but continued making interest payments.

II. Procedural Background

Wafra filed this suit on June 8, 2001. [FN1] (*Id.* ¶ 53.) On March 25, 2002, the court granted KPMG's motion to dismiss in part. *Wafra Leasing Corp.1999-A-1 v. Prime Capital Corp., 192 F.Supp.2d 852, 857 (N.D.Ill.2002)* ( *"Wafra I"* ). While the dismissal motion was pending, Wafra amended its complaint to include a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. *Wafra Leasing Corp.1999-A-1 v. Prime Capital Corp., 204 F.Supp.2d 1120, 1122 (N.D.Ill.2002)* (*"Wafra II"* ). In *Wafra II*, the court granted Defendants' motions to dismiss in part. On October 3, 2002, the Court granted Wafra leave to file its Second Amended Complaint. KPMG again moved to dismiss. On November 25, 2002, the Court granted the motion in part. *Wafra Leasing Corp.1999-A-1 v. Prime Capital Corp., 247 F.Supp.2d 987, 993 (N.D.Ill.2002)* (*"Wafra III"* ). Wafra thereafter filed a Third Amended Complaint and KPMG answered.

> FN1. Judge Bucklo presided over this case until it was reassigned to this Court on August 30, 2002.

LEGAL STANDARDS

Summary judgment is proper when "the pleadings,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
(Cite as: 2004 WL 1977572 (N.D.Ill.))

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, 259 F.3d 619, 625* (7th Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)*). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson, 477 U.S. at 248, 106 S.Ct. at 2510.* The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).* A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Employment Opportunity Comm'n v. Roebuck & Co., 233 F.3d 432, 437* (7th Cir.2000). The Court "considers the evidentiary record in the light most favorable to the nonmoving party, and draws all reasonable inferences in his favor." *Lesch v.. Crown Cork & Seal Co., 282 F.3d 467, 471* (7th Cir.2002).

## ANALYSIS

### I. Statute of Limitations

Defendants argue that Plaintiff's claims under Section 10(b) and Section 20(a) are barred by a one-year statute of limitations. The one-year statute of limitations [FN2] for federal securities fraud claims begins to run when the potential plaintiff is put on "inquiry notice." *Fujisawa Pharm. Co. v. Kapoor, 115 F.3d 1332, 1334* (7th Cir.1997). "Inquiry notice starts the running of the statute of limitations when the victim of the alleged fraud became aware of the facts that would have led a reasonable person to investigate whether he might have a claim." *Whirlpool Fin. Corp. v. GN Holdings, Inc., 67 F.3d 605, 609* (7th Cir.1995) (quotation omitted). "However, more than 'merely suspicious circumstances' must exist; instead the plaintiff must learn of a circumstance that places him 'in possession of, or with ready access to, the essential facts that he needs in order to be able to sue." ' *Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 670* (7th Cir.1998) (quoting *Fujisawa Pharm., 115 F.3d at 1337*). "The facts constituting such notice must be sufficiently probative of fraud--sufficiently advanced beyond the stage of a mere suspicion, sufficiently confirmed or substantiated--not only to incite the victim to investigate but also to enable him to tie up any loose ends and complete the investigation in time to file a timely suit." *Fujisawa Pharm., 115 F.3d at 1335.*

> FN2. On July 3, 2002, Congress extended the statute of limitations to two years, but the parties do not dispute that the one-year period applies to this case.

*4 Defendants argue that Plaintiff knew or should have known of the alleged fraudulent scheme more than a year in advance of June 8, 2001, the date Wafra filed suit. In support of this argument, Defendants point to footnote 4 in Prime's 1998 Annual Report, which states in relevant portion:

"The Company acts as servicer for each of its securitizations as well as its assets in various warehouse credit facilities. As servicer, the Company receives funds due its affiliated special purpose entities. These funds, certain of which were required to be transferred to these entities in 1998 and were transferred in 1999, are included in accrued expenses and other liabilities and totaled $6,742,681 and $3,563,195, at December 31, 1998 and 1997, respectively."

(R. 208-1, Defs' Joint Statement of Facts ¶ 54.) Such language, Defendants argue, at least put Plaintiff on inquiry notice that Defendants were holding payments in violation of the securitization agreements. The annual report was filed with the SEC on May 28, 1999--well before the critical date of June 8, 2000. Additionally, Defendants note that Plaintiff knew of Prime's financial distress well before June 8, 2000, but chose to ignore the warning signs.

Judge Bucklo's opinion in *Wafra I* addressed the statute of limitations in the context of a 12(b)(6) motion for dismissal. Considering Prime's financial distress, Judge Bucklo held that "[m]ere notice of Prime's failing finances was insufficient to give notice of the fraud without knowing that the funds from the lock-box account had been misappropriated." *Wafra I, 192 F.Supp.2d at 861.* Considering both the failing finances and footnote 4, Judge Bucklo determined that "the defendants have not demonstrated what information Wafra could have obtained prior to Prime's disclosure of the misappropriation and diversion that would have revealed even the general nature of the fraud." *Id. at 862.*

To grant summary judgment, the Court must find that the record shows no dispute that Wafra should

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
(Cite as: 2004 WL 1977572 (N.D.Ill.))

Page 4

have been on inquiry notice of Prime's fraud. To show that Wafra became aware of facts that would have led a reasonable person to investigate, Defendants point to the same evidence they relied upon in their motion to dismiss, as well as testimony of Robert Toan that, among other things, characterized Prime's delinquent payments reflected in the footnote as "arising to the level of fraud." (R. 208-1, Def.'s Statement of Facts ¶ 24 .) [FN3]

> FN3. The appendix cited by Defendants and provided to the Court did not include the cited deposition pages.

Defendant argues that the sum of the available information should have caused Wafra to investigate and discover Prime's alleged fraud. Nevertheless, when viewing the evidence in the light most favorable to Wafra, it is not clear that Wafra was "in possession of, or with ready access to, the essential facts" it needed to establish a fraud claim. Indeed, Prime's February 18, 1999 letter regarding late payments to Bankers Trust contradicts Defendants' theory, and creates a genuine issue regarding the possible interpretations of footnote 4. (R. 217-1, Pl.'s Resp. to Defs.' Joint Statement of Facts, Ex. 44.) In that letter, Defendants characterized Prime's late payments not as part of a fraudulent scheme, but as mere symptoms of a process that needed refinement. (Id.) Prime thus gave a plausible explanation of late payments that did not involve fraud. Having explained away late payments to Bankers Trust, Defendants cannot show as a matter of law that Wafra was put on inquiry notice of Prime's fraud based on the notice of late payments in footnote 4. There is a genuine issue of fact as to whether the available information regarding Prime's use and misuse of the special purpose vehicles put Plaintiff on notice more than one year before June 8, 2001. The statute of limitations, therefore, does not bar Plaintiff's claims.

I. COUNT I--10(b) Violation

**5 In order to survive summary judgment on a claim for securities fraud under Section 10(b) and Rule 10b--5, Wafra must show issues of fact that Defendants (1) made a false statement or omission; (2) of a material fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon which Plaintiff justifiably relied; and (6) the reliance proximately caused Plaintiff's damages. In re HealthCare Compare Corp., 75 F.3d 276, 280 (7th Cir.1996). Defendants contend that they did not make misleading statements or omissions, and did not

possess the requisite scienter.

A. Misleading Statement or Omission

1. Bischoff and the B & S law firm

Bischoff's 10(b) liability is premised on issues surrounding B & S's opinion letter, which an associate attorney prepared under the direction of Bischoff. In connection with the opinion letter, Wafra argues that Bischoff falsely stated that "no information has come to our attention which would give us actual knowledge or actual notice [that] any ... of the foregoing documents, certificates, reports and information on which we have relied are not accurate and complete." The Bischoff letter included as an attachment Landeck's Officer's Certificate, which misleadingly stated that Landeck knew of no misstatements in the Private Placement Memorandum. Wafra argues that because Bischoff knew that Landeck's statement was inaccurate--because of known continuing violations of the two-day rule--Bischoff's opinion letter was misleading to the extent Bischoff relied on a document he knew to contain false statements.

There is credible evidence that Bischoff learned of a limited number of late payments due to lease buyouts in December 1998 during a conversation with KPMG auditor, Jim Winikates. (R. 219-1, Pl.'s Statement of Facts ¶ 16.) With respect to such lease buyouts, however, it is undisputed that Friedman assured Bischoff that the problem had been corrected. (R. 205-1, Bischoff's Supp. Statement of Facts ¶ 22.) Bischoff does not recall, however, discussing with Jim Winikates violations of the two-day rule with respect to misdirected payments. Bischoff claims to have learned of those late payments sometime in late May or early June of 1999--after closing and after he sent the May 4 opinion letter to Wafra. (R. 238-1, Def.'s Resp. to Pl.'s Statement of Facts ¶ 16.) Plaintiff's only admissible argument that Bischoff knew of this information is that Winikates knew at the time of his late 1998 meeting with Bischoff that both misdirected payments and lease buyouts were not timely transferred to the lockbox account and that Winikates also knew that both failures indicated violations of the applicable agreements. Plaintiff wants the Court to make the leap that if Winikates knew of such information when he met with Bischoff, then an issue of fact exists as to whether Winikates told Bischoff. Plaintiff's bald contention regarding Winikates's knowledge, however, is not supported in the record. Winikates testified that although he knew of the misdirected payments in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 5
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
(Cite as: 2004 WL 1977572 (N.D.Ill.))

September 1998, he did not know that withholding the misdirected payments violated the servicing agreement until March or April 1999. (R. 217-1, Pl.'s Resp. to Defs.' Statement of Facts, at 8, pp. 43-54.) Still, Plaintiff argues that it is implausible that Winikates met with Bischoff, a member of Prime Capital's audit committee, to discuss the misreporting of late payments due to buyouts but not those due to misdirected payments. Plaintiff has not provided credible evidence to support this inference of implausibility. Winikates testified that he did not know that Prime was violating the servicing agreements with respect to misdirected payments until at least March 1999. There is no evidence that the misdirected payments would have been addressed along with the lease buyouts. Therefore, even viewing the evidence in the light most favorable to the Plaintiff, the Court cannot conclude that Bischoff knew that Prime would not honor the two-day rule based on Bischoff's conversations with Winikates.

*6 Additionally, Plaintiff points to the testimony of Wafra's director of structured finance, Robert Toan, for the proposition that Bischoff knew of the misdirected payments. (R. 217-1, Pl.'s Resp. to Defs.' Statement of Facts, Ex. 1, pp. 710-13.) Toan testified about a telephone conversation with Landeck in which Landeck told him that Bischoff and others knew about the timing of the misdirected payments. Plaintiff offers Toan's testimony about Landeck's statements for proof of the matters asserted by Landeck, not Bischoff. As such, Toan's testimony is hearsay and the Court may not consider it in determining whether an issue of fact defeats summary judgment with respect to Bischoff. Fed.R.Evid. 801; *Ciesielski v. Hooters of America, Inc.*, No. 03 C 1175, 2004 WL 1699020, *2 (N.D.Ill. July 28, 2004) (citing *Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir.1994) (holding that hearsay statements are incapable of creating a genuine issue of material fact)). [FN4] There is no question of fact, therefore, with respect to whether or not the May 4 letter was a false statement for the purposes of Section 10(b). Even if the Court could consider the hearsay evidence, Toan's statement does not indicate when Bischoff knew of problems with the misdirected payments. Because the critical question is whether Bischoff knew about ongoing violations of the securitization agreements before the securitization closed, Toan's hearsay testimony would still be insufficient to create an issue of fact. Summary judgment is granted on Count I with respect to the Bischoff Defendants.

FN4. Defendants pointed out the hearsay

issue in the Bischoff memorandum, and Plaintiff did not respond. Landeck's statement was not an admission by a party-opponent under Rule 801(d)(2), as Plaintiff is not offering it against Landeck, but against the board members that Landeck allegedly named in his telephone conversation with Toan. Fed.R.Evid. 801(d)(2). Therefore, a response by Plaintiff would not have preserved this statement.

### 2. Friedman, Landeck, and Ehmann

An omission of material fact may violate Section 10(b), but "[m]ere silence about even material information is not fraudulent absent a duty to speak." *Chiarella v. United States*, 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980); see also *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331 (7th Cir.1995). Such a duty arises if a defendant makes a statement that would be misleading without disclosing certain other information. Thus, "[i]f one speaks, he must speak the whole truth." *Ackerman v. Schwartz*, 947 F.2d 841, 848 (7th Cir.1991).

The ongoing violation of securitization agreements is material information to a party considering investment in the securitization. It is undisputed that Friedman and Landeck had discussions with Robert Toan in connection with the 1999 securitization. There is at least a question of fact as to whether Toan also met with Ehmann with respect to the deal. There is no question of fact, however, that none of them disclosed the material fact that Prime had not and would not comply with the securitization agreements. There is a genuine issue of material fact, therefore, regarding whether Friedman, Landeck, and Ehmann made a material omission. [FN5]

FN5. The Court addresses the Section 10(b) claims against Defendants Smithburg and Walter in the discussion of scienter.

### B. Scienter

Plaintiffs alleging causes of action under Section 10(b) must show scienter on the part of the defendant. Scienter is either "the intent to deceive, manipulate or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), or the "reckless disregard of the truth" of the material asserted. *S.E.C. v. Jakubowski*, 150 F.3d 675, 681 (7th Cir.1998). "Reckless conduct is, at least, conduct which is highly unreasonable and which represents an extreme departure from

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
**(Cite as: 2004 WL 1977572 (N.D.Ill.))**

Page 6

standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Rehm v. Eagle Fin. Corp.*, 954 F.Supp. 1246, 1255 (N.D.Ill.1997) (quotations omitted).

### 1. James Friedman

*7 Friedman contends that he lacked the requisite scienter because he did not believe the violations of the securitization agreements to be ongoing. After receiving the memorandum from Ehmann, Friedman testified that he conferred with Landeck regarding the buyouts and regular contractual customer payments. Landeck apparently told Friedman that those payments "are being made as agreed." (R. 217-1, Pl.'s Resp. to Defs.' Statement of Facts, Ex. 2, p. 124.) Further describing the conversation, Friedman said that Landeck told him "we're following our procedures and we're forwarding the funds to the bank on the appropriate and timely basis. The buyouts he was going to look into and get back to me." (*Id.*)

Friedman admitted, however, that Ehmann continued to dispute the validity of Prime's procedures in paying the lockbox accounts. (*Id* . at p. 128-9.) Friedman apparently accepted Landeck's explanation that Prime had been operating in this manner for some time with no further consideration of the matter. This testimony leaves a question of fact as to whether he knew or was at least reckless in determining that Prime's time-honored practice actually conformed with the requirements of the securitization agreements. It is undisputed that Ehmann was telling him in no uncertain terms that Prime's practices were inappropriate. Given the undisputed fact that Ehmann was "blowing the whistle" on Prime's payment practices, there is an issue of fact as to whether Friedman knew that Prime was and had been violating the securitization agreements. This is notwithstanding Friedman's testimony that the fact Prime was violating the two-day rule "never really sank in" until sometime in 2000. (*Id.* at 140.) There is a question of fact as to Friedman's scienter.

### 2. Landeck

With respect to scienter, Defendant Landeck simply asserts that he did not act with the intent to deceive Wafra. Given Ehmann's protests as discussed above, however, and Landeck's discussions with Friedman about them, there is a question of fact regarding Landeck's state of mind in connection with Prime's compliance with the securitization agreements.

### 3. Ehmann

There is an issue of fact that Ehmann met with Toan in connection with the 1999 securitization and did not mention that Prime had been violating the securitization agreements. Ehmann remained silent on that matter even though he had been pursuing it with fellow Prime management and resigned  [FN6] his position in protest over the matter. Accordingly, there is also a question as to whether he was at least reckless in failing to disclose information that he admittedly considered material to the securitization.

> FN6. Ehmann resigned in name only. He performed the same duties after his resignation.

### 3. Walter and Smithburg

Defendants Walter and Smithburg moved for summary judgment on Plaintiff's Count I, arguing that they did not possess the required scienter. Plaintiff did not respond to either motion with respect to Count I. Even if Plaintiff had responded to Defendants' motions, there is no evidence that Smithburg or Walter knew of the ongoing violations of the securitization agreements that support Plaintiffs 10(b) claim. There are no questions of fact as to whether Walter or Smithburg made a material misstatement or omission, or possessed the scienter to support a claim under Section 10(b). Accordingly, their motions for summary judgment are granted as to Count I.

### C. Reliance by Wafra

*8 Landeck argues that Wafra did not rely on Defendants' omissions in investing in the 1999 securitization. Toan has testified, however, that the bankruptcy remoteness provided by the lockbox accounts was an important aspect of the investment. (R. 219-1, Pl.'s Statement of Facts ¶ 114.) Accordingly, there is a question of fact regarding whether Toan would have acted differently had he known of the lack of bankruptcy remoteness caused by Prime's ongoing payment activities.

### II. Count II--Control Person Liability under 20(a)

In Count II, Plaintiff alleges control person liability pursuant to Section 20(a) of the Exchange Act against Defendants Friedman, Bischoff, Landeck, Ehmann, Smithburg, and Walter (the "Control Group

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Defendants"). Section 20(a) provides: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a).

In order to prevail on a Section 20(a) claim, Wafra must show the following: (1) a primary securities violation;   [FN7] (2) each of the individual Defendants exercised general control over the operations of Prime Capital; and (3) each of the individual Defendants "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 881 (7th Cir.1992).

> FN7. Defendants do not challenge this element of Plaintiff's Section 20(a) case. Nevertheless, there is a genuine issue of fact as to whether there was an underlying securities fraud violation in this case.

**1. Bischoff and Smithburg**

Mark Bischoff and William Smithburg served as board members of Prime Capital and comprised Prime Capital's Audit Committee. According to Prime's proxy statement, the function of the Audit Committee was "establishing and maintaining communications with the Company's internal and independent accountants, reviewing the methods used and examinations made by the auditors in connection with the Company's published financial statements and reviewing with the auditors the Company's financial and operating controls." (R. 219-1, Pl.'s Statement of Facts, Ex. 16.) Bischoff argues that only Prime Leasing and the Prime SPVs dealt with the securitization in question, and further, that neither the approval nor the participation of Prime Capital's board was required for the securitization.

Bischoff testified that board members oversaw management with respect to securities fraud. At summary judgment, the Court is bound to view the record in the light most favorable to Plaintiff. With respect to general control over Prime, Bischoff's testimony reveals that he and other board members, including Smithburg, engaged in oversight of management in connection with securities fraud. There is a question of fact as to whether such oversight constitutes general control for the purposes of Section 20(a).

*9 With regard to power over the specific fraudulent transaction, Bischoff admitted that the duties of the Audit Committee included making sure that audits were completed accurately. This admission, along with the description of the Audit Committee's duties, creates an issue of fact with respect to Bischoff and Smithburg. The transaction upon which the underlying violation is predicated is the closing of the 1999 securitization without revelation of the ongoing violation of the securitization agreements. The proxy description explicitly charges Bischoff and Smithburg with the duties of reviewing the company's financial and operating controls and serving as the conduits of information between the company and its accountants. Accordingly, there is a question as to whether each man possessed the general and specific control necessary to satisfy Section 20(a). Bischoff's and Smithburg's motions for summary judgment are denied with respect to Count II.

**2. James Friedman**

Friedman argues that his title as President, CEO, and COO of Prime Capital and Prime Leasing does not automatically make him a control person for the purposes of Section 20(a). The undisputed facts in the record show that Friedman did have general control over Prime, and specific power with respect to the 1999 securitization. The Court agrees that title alone does not suffice to create control person liability, but there is more evidence than simply Friedman's title to support Plaintiff's claim. There is evidence that Friedman acted as gatekeeper of information to Prime's board. He stood in a position of control with respect to this deal because had he allowed or required Ehmann to proceed to the board with his concerns, action might have been taken in connection with lease buyouts and misdirected payments. When asked why he did not approach the board with the matters raised by Ehmann, Friedman testified, "[i]t's ... a management decision that I make. I managed the company, and it's not a Board issue." (R. 219-1, Pl.'s Statement of Facts, Ex. 2, p. 130.) Friedman also had direct contact with Wafra in connection with the 1999 securitization. Based on this evidence, there is at least an issue of fact as to whether Friedman was a control person.

**3. Landeck**

B50

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
(Cite as: 2004 WL 1977572 (N.D.Ill.))

Landeck argues that he had no control over Prime's general or specific activities, and points to "the myriad of uncontested facts that unequivocally show [he] lacked the power or influence to direct activities at Prime." (R. 213-1, Landeck's Supp. Mem., p. 7.) The record shows that Landeck's influence within Prime was at least sufficient to quash Ehmann's complaints about late payments, however, as Landeck assured Friedman that the matter was an isolated incident. Further, Ehmann testified that Landeck had control over when payments were made to the lockbox accounts. (R. 221-1, Pl.'s Opp. to Landeck's Statement of Facts ¶ 6.) Additionally, Landeck had personal contact with Toan in connection with the 1999 securitization. There is a question of fact as to whether Landeck is a control person.

**4. Ehmann**

*10 The fact that Ehmann lacked control sufficient to influence Prime is the most elaborately proven fact in the record. Despite multiple memoranda to and discussions with Friedman, Ehmann's alarmed viewpoint apparently never reached Prime's board before Wafra's closing. In the face of this evidence, Plaintiff provides no support for its allegation that Ehmann could exert control over Prime. Mere titles are insufficient for this task, as are recitations of knowledge that support Plaintiff's Section 10(b) claim. Judgment is granted in favor of Ehmann on Count II.

**5. John Walter**

Walter was a director of Prime Capital since mid-1998. He was also a member of Prime Capital's Executive and Proxy Committees. In addition to the foregoing titles, Plaintiff points to one additional fact to show Walter's control over Prime in general and over the fraudulent transaction in particular. Walter, Plaintiff argues, was present at the meeting in which Bischoff allegedly revealed the basis of Prime's ongoing fraud to members of Prime's board. Plaintiff contends that the knowledge Walter gained at this meeting placed him in a position to stop Prime's fraud. While Bischoff's testimony as to the duties of directors presents an issue of fact as to whether members of the board can influence Prime in general, there is no issue as to Walter's power over the allegedly fraudulent transaction. While Plaintiff points to knowledge that Walter allegedly had, this knowledge does not have support in the record. As discussed above, there is no evidence that Bischoff

brought evidence of an ongoing fraudulent scheme to the attention of the board. Accordingly, Walter's motion for summary judgment is granted with respect to Count II.

**III. Count III--Common Law Fraud**

In Illinois, the elements of common law fraud are: (1) a false statement or omission of material fact; (2) made by one person with the intent to induce a second person to act; (3) action by the second person in reliance on the statement or the omission; and (4) actual injury to the second person from that reliance. *Sain v. Nagel,* 997 F.Supp. 1002, 1012 (N.D.Ill.1998); *Drobny v. Commissioner of Internal Revenue,* 113 F.3d 670, 679 n. 14 (7th Cir.1997), *cert. denied,* 522 U.S. 916, 118 S.Ct. 303, 139 L.Ed.2d 233 (1997); *Lidecker v. Kendall College;* 194 Ill.App.3d 309, 314, 141 Ill.Dec. 75, 550 N.E.2d 1121, 1124 (1st Dist.1990).

**A. Bischoff Defendants, Smithburg, and Walter**

Plaintiff's common law fraud claim against the Bischoff Defendants, Smithburg and Walter is premised on the same basis as Wafra's 10(b) claim. As discussed above, Plaintiff has not created an issue of fact showing that Bischoff made a false or misleading statement in connection with B & S's May 4, 1999 opinion letter. Also, Plaintiff has not shown any facts to support that the Bischoff Defendants, Smithburg, or Walter even knew of the underlying fraud before the closing of the 1999 securitization. Accordingly, the Court grants the summary judgment motions of Smithburg, Walter, and the Bischoff Defendants with respect to Count III.

**B. Friedman, Landeck, and Ehmann**

*11 Plaintiff's common law fraud claim against Friedman, Landeck, and Ehmann is also based on the same activity supporting Wafra's 10(b) claims. These Defendants argue that Plaintiff has not shown any specific misstatements or omissions made by the Defendants. Nevertheless, as discussed in connection with Section 10(b) above, there is no question that Defendants neglected to disclose the fact that Prime had not and would not comply with the requirements of the securitization agreements before the securitization closed. Additionally, there is an issue of fact as to whether Friedman, Landeck, and Ehmann knew of Prime's fraud before having discussions and closing the deal with Wafra. There are also questions of fact as to whether Defendants made the omission in order to close the securitization

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
(Cite as: 2004 WL 1977572 (N.D.Ill.))

with Plaintiff, whether Plaintiff relied on Defendants' omission, and whether Plaintiff was harmed by Defendants' omission. These Defendants' motions for summary judgment are denied with respect to Count III.

IV. Count IV--Negligent Misrepresentation

Wafra asserted a common law claim of negligent misrepresentation against the Bischoff Defendants. The elements of claims for fraud and negligent misrepresentation are essentially the same. *Quinn v. McGraw-Hill Cos.,* 168 F.3d 331, 335 (7th Cir.1999). The only difference is the intent requirement: to prevail on a claim for negligent misrepresentation, the plaintiff need only prove the defendant's carelessness with respect to ascertaining the truth of the statement. Accordingly, to prevail on their negligent misrepresentation claim, Plaintiffs must establish: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce Plaintiff to act; (4) action by Plaintiff in reasonable reliance on the truth of the statement; and (5) damage suffered by Plaintiff as a result of its reasonable reliance. *Lemont Partners, LLC v. Meijer Stores Ltd. P'ship,* No. 02 C 1799, 2002 WL 31641623, at *12 (N.D.Ill. Nov.22, 2002) (citing *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor,* 295 Ill.App.3d 567, 574, 229 Ill.Dec. 823, 692 N.E.2d 812, 818 (Ill.App.Ct.1998)). Additionally, a plaintiff must establish a duty on the part of the defendant to communicate accurate information, such as where the defendant was "in the business of supplying information for the guidance of others in their business dealings." *Tolan & Son, Inc. v. KLLM Architects, Inc.,* 308 Ill.App.3d 18, 27, 241 Ill.Dec. 427, 719 N.E.2d 288, 296 (Ill.1999). As with fraud, the plaintiff's reliance upon the defendant's negligent misrepresentation must be reasonable. *In re Rovell,* 194 F.3d 867, 870 (7th Cir.1999) (citing *Board of Educ. v. A, C & S, Inc.,* 131 Ill.2d 428, 451, 137 Ill.Dec. 635, 546 N.E.2d 580, 591 (1989)).

In support of Count IV, Wafra alleges three separate misrepresentations: (1) Bischoff fraudulently relied on Landeck's Officer Certificate even though Bischoff knew the Private Placement Memorandum was false or misleading; (2) Bischoff gave a fraudulent opinion on the enforceability of securitization agreements knowing of Prime's fraud; and (3) Bischoff did not refuse to write the opinion letter even though he knew of Prime's fraud.

*12 Each of these contentions relies on the assertion

that Bischoff knew of the alleged fraud underlying the 1999 securitization. As discussed above, however, Plaintiff has failed to present any admissible evidence that Bischoff knew of the ongoing violation of the two-day rule. Accordingly, there is no evidence that Bischoff was aware of any fraud in connection with the securitization when his firm issued the May 4 opinion. As discussed above, without knowledge of underlying fraud, Bischoff's opinion letter is not a misrepresentation. Because Plaintiff cannot satisfy the elements of negligent misrepresentation even when viewing the evidence in the light most favorable to it, the Bischoff Defendants' motion for summary judgment is granted with respect to Count IV.

V. Count IX and X--State Law Claims against KPMG

KPMG argues that the Illinois Privity Statute bars Wafra's state law claims. According to the Illinois Public Accounting Act, a public accountant is generally immune from suits by plaintiffs who were not in privity with the accountant. 225 ILCS 450/30.1. The statute, however, has two exceptions. First, a plaintiff not in privity may sue an accountant for "acts, omissions, decisions or conduct that constitute fraud or intentional misrepresentations." *Id.* Second, immunity does not attach if the accounting firm "was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action." *Id.* at § 30.1(2).

A. The First Exception Does Not Apply

Wafra claims that there are issues of material fact with regard to whether the fraud exception applies because "a trier of fact could find that KPMG engaged in conduct with scienter." (R. 224-1, Pl.'s Consol. Mem. in Opp. to Summ. J., p. 77.) The fraud-based exception, however, does not apply because Wafra has not alleged that KPMG engaged in fraudulent acts.

Under Federal Rule of Civil Procedure 9(b), "in all averments of fraud or mistake the circumstances constituting the fraud or mistake shall be stated with particularity." An allegation of consumer fraud under the ICFA "must be plead with the same particularity and specificity as that required under common law fraud." *Strohmaier v. Yemm Chevrolet,* 211 F.Supp.2d 1036, 1043 (N.D.Ill.2001). Wafra has alleged fraud against several defendants, but not against KPMG. Wafra may not circumvent the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

heightened pleading requirements and claim a fraud-based exception against KPMG without alleging actual fraud. Additionally, at summary judgment the nonmoving party must do more than make allegations. Wafra has not identified any evidence showing a genuine issue of material fact that KPMG engaged in fraud. Therefore, the first exception to the Illinois privity bar does not apply as a matter of law.

B. The Second Exception

KPMG contends that the second exception to the privity bar--that KPMG was aware that Prime intended the audit to influence Wafra--does not apply to Plaintiff's claims either. Wafra first argues that the law of the case doctrine prevents the Court from addressing the issue because Judge Bucklo rejected KPMG's argument in *Wafra I*. (R. 224-1, Pl.'s Mem. in Opp. to Summ. J., p. 78-81.) Alternatively, Wafra argues that KPMG failed to carry its burden and show that the Privity Statute shields it from liability. (*Id.* at p. 81.) Wafra argues that KPMG verified the report to Wafra because KPMG (1) knew Wafra used the report and (2) KPMG participated in the securitization. (*Id.* at p. 82-85.)

1. Law of the Case

**\*13** In *Wafra I,* Judge Bucklo ruled that the second exception allegedly applied to Wafra's allegations, finding that KPMG knew before the closing that Prime provided its 1997 10-K to Wafra, and that Wafra relied on it. *Wafra I, 192 F.Supp.2d at 873.* Wafra argues that by moving to "dismiss again, KPMG is asking the Court to re-examine the rulings of Judge Bucklo." (*Id.* at p. 81.) The instant motion, however, is not a reiterated motion to dismiss. KPMG does not argue that the complaint fails to state a claim, but that there is no issue of material fact that the privity statute bars Wafra's claim. The holding of the court in *Wafra I* that Wafra's complaint states a claim despite the privity bar does not preclude the Court from later examining whether there are any issues of material fact surrounding application of the bar. The standards for summary judgment and Rule 12(b)(6) dismissal are distinct.

If KPMG is able to show that no genuine issues of fact exist in connection with the Illinois privity bar, then the law of the case doctrine does not preclude summary judgment.

2. KPMG's Awareness of Prime's Intent

In order to prevail on summary judgment, KPMG

must show that no genuine issue of material fact remains regarding whether KPMG knew that Prime intended the 1997 audit to benefit or influence Wafra. KPMG argues that at the time it completed the 1997 audit, Prime could not have intended Wafra to rely on the document because Prime was not aware of Wafra's existence at that time. (R. 237-1, Def. KPMG's Reply, p. 3.) Wafra has admitted that Prime did not communicate with Wafra until about six months after KPMG completed the 1997 audit. (*Id.*) Because Prime did not harbor the required intent at the time of the audit, the exception only applies if KPMG subsequently verified the audit to Wafra. *Wafra I, 192 F.Supp.2d at 873* (Judge Bucklo stated that if an auditor discovers after completion of its work that a third party is relying on the documents, that auditor is liable if "it verified the audit's accuracy to the particular plaintiff at that time.").

Wafra has presented sufficient evidence showing that KPMG was aware that Wafra was relying on the 1997 audit. The 1997 audit, completed in March of 1998, was Prime's latest financial statement available at Wafra's closing. Wafra presented a memorandum sent from Prime's Thomas Ehmann to KPMG. (R. 224-1, Pl.'s Consol. Mem. in Opp. to Summ. J., Ex. 31.) The memorandum acknowledges that KPMG did not want to give Prime an unqualified opinion in the 1998 audit until Wafra and other investors closed in the middle of 1999. (*Id.*) There is a question of fact, therefore, as to whether KPMG was aware that the 1999 securitization clients were relying on the 1997 audit.

Wafra, however, has not presented evidence that would create a triable issue of fact as to whether KPMG actually verified the 1997 audit to Wafra. Wafra claims that KPMG verified the 1997 audit by providing the Procedure Letter at closing. Wafra states that "[KPMG] knew that by [providing the letter], it was unambiguously telling the 1999-A investors that they could rely on its prior audit report." (*Id.* P. 87.) Wafra has agreed that KPMG and Wafra otherwise had no direct communication. (R. 220-1, KPMG's Statement of Facts ¶ 39.)

**\*14** Arguing that there can be verification without direct communication, Wafra presented *Builders Bank v. Barry Finkel and Assoc., 339 Ill.App.3d 1, 273 Ill.Dec. 888, 790 N.E.2d 30* (1st Dist.2003). There, the court held that the defendant implicitly verified to the plaintiff that certain audits were accurate. *Id. at 9, 273 Ill.Dec. 888, 790 N.E.2d 30.* That holding was a "narrow one based on the facts of th[e] case," which included direct communication

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
(Cite as: 2004 WL 1977572 (N.D.Ill.))

between the defendant accounting firm and the plaintiff. *Id.* The facts of the case at hand are distinguishable from those in *Builders Bank* in that there was no communication between KPMG and Wafra. Therefore, while *Builders Bank* stands as an example of implicit verification, the Court need not find that implicit verification took place between Wafra and KPMG.

In order to find implicit verification in this case, the Court would have to decide that Wafra could present to a jury facts showing that Wafra rightfully relied on the May 4th letter as a verification of the 1997 audit. The Court has previously rejected this argument on three separate occasions because the May 4 th letter contained disclaimers limiting which parties may rely on it. In *Wafra I*, the court stated that "no reasonable reading of the letter shows that Wafra was intended to rely on it." *Wafra I, 192 F.Supp.2d at 872.* Again, in *Wafra II*, while dismissing portions of the amended complaint, the court stated that "the letter was addressed only to Prime Leasing, Prime Financial, and Merrill Lynch, and stated that: "this report is intended solely for the use of the addressees and should not be used by those who have not agreed to the procedures and taken responsibility for the sufficiency of the procedures for their purposes." *Wafra II, 204 F.Supp.2d at 1125.* Lastly, in *Wafra III*, the Court rejected Wafra's attempt to use the letter as a basis for a claim. There, the Court indicated that "the very accounting provision upon which Plaintiff relies, as well as the plain language of the May 4 Letter, defeat Wafra's argument that it could have reasonably relied upon the May 4 Letter." *Wafra III, 247 F.Supp.2d at 995.*

Despite these clear rulings from this Court, Wafra again tries to rely on the May 4 Letter. Given the explicit disclaimers and limitations in the letter, and considering the previous rulings in this case, there is no genuine issue of material fact that KPMG did not verify the 1997 audit to Wafra. Consequently, the second exception to the privity statute does not apply and Wafra's claims against KPMG under Illinois law are barred. KPMG's motion for summary judgment is granted with respect to Counts IX and X. [FN8]

FN8. Because this Court holds that Wafra may not sue KPMG under Illinois law, this Court does not need to determine whether Wafra has standing to sue or whether there are any genuine issues of material fact regarding to the elements of a claim under Illinois law.

## VI. Count X--Illinois Consumer Fraud Act

### A. Bischoff Defendants

Wafra alleged violations of the Illinois Consumer Fraud Act (the "Act") against all Defendants. In *Wafra II*, Judge Bucklo ruled that "[l]egal services, including the actual practice of law as well as billing practices, are exempt from the Act." *Wafra II, 204 F.Supp.2d at 1124* (citing *Cripe v. Leiter, 184 Ill.2d 185, 234 Ill.Dec. 488, 703 N.E.2d 100, 105 (Ill.1998)*). Plaintiff's complaint alleges that Bischoff's activities support a claim under the Act, and that B & S is vicariously liable for Bischoff's actions. As discussed above, however, the only action on the part of Bischoff that Plaintiff relies upon to support a fraud claim is his involvement in preparing the May 4, 1999 opinion letter. In connection with this activity, Bischoff acted as an attorney preparing a legal opinion. Accordingly, neither Bischoff nor his law firm are appropriate defendants under the Act. Even if the Bischoff Defendants were connected to the alleged fraud in a role other than legal advisor, Plaintiff has not shown that they made any material misrepresentations or omissions. The Bischoff Defendants' motion for summary judgment is granted with respect to Count X.

### B. Wafra Has Standing to Sue under the Act

**\*15** Defendants argue that Wafra is not an appropriate plaintiff under the Act because (1) it is a foreign corporation that lacks standing to sue, and (2) it is a non-consumer, and has failed to establish the required nexus between the alleged violations of the Act and Illinois interests. The Court disagrees.

Judge Bucklo addressed the question of Plaintiff's standing under the Act in *Wafra II*. Refuting Defendants' argument that nonresidents do not have standing under the Act, Judge Bucklo held that "[a]lthough Wafra is not an Illinois citizen, it is a consumer of Illinois products and services, and thus has standing to sue under the Act." *Wafra II, 204 F.Supp.2d at 1123.* Plaintiff urges the Court to honor this ruling under the law of the case doctrine. Under the law of the case doctrine, "[a]lthough the second judge may alter previous rulings if he is convinced they are incorrect, he is not free to do so merely because he has a different view of the law or facts from the first judge. Instead, the presumption is that earlier rulings will stand, even though it can be overcome for compelling reasons (such as new controlling law or clear error)." *Best v. Shell Oil Co., 107 F.3d 544, 546 (7th Cir.1997)* (internal quotation

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
**(Cite as: 2004 WL 1977572 (N.D.Ill.))**

and citation omitted).

Defendants point out that Judge Bucklo's dismissal opinion relied, as it should, only on the allegations of Plaintiff's complaint. At summary judgment, Defendants argue, the Court has access to new facts that Judge Bucklo did not consider. Specifically, the previous opinion noted that "Wafra purchased the Owner's Certificate in Illinois, in reliance on misrepresentations made by the defendants in Illinois, and alleges that it was injured by the cover-up of a fraudulent diversion, misappropriation and kiting scheme that occurred entirely in Illinois." *Wafra II,* *204 F.Supp.2d at 1123.* Discovery has shown that the closing of the securitization actually occurred in New York, not in Illinois. Accordingly, Defendant argues that this Court is not bound by the previous ruling.

Simply because the location of closing was not in Illinois does not offset the other factors relied upon in *Wafra II*--factors not addressed by Defendants despite access to new updated information through discovery. Defendants' revelation that closing took place in New York falls short of the "clear error" required for the Court to reconsider Judge Bucklo's finding that Wafra has standing under the Act. Accordingly, the Court declines to invalidate the previous ruling on standing under the Act.

C. Friedman, Landeck, and Ehmann

For the same reasons they argue Plaintiff's Section 10(b) claim is insufficient, Friedman, Landeck and Ehmann argue that there is no evidence of activity that could support a claim under the Illinois Consumer Fraud Act. As discussed above, however, there is a question of fact as to whether these Defendants violated Section 10(b) in connection with Wafra and the 1999 securitization. As the elements for these claims are similar insofar as Defendants contest them, this argument fails. Friedman's, Landeck's, and Ehmann's motions for summary judgment are denied with respect to Count X.

D. Walter and Smithburg

**\*16** Walter and Smithburg argue that even if Plaintiff has standing to sue under the Act, they did not violate the Act. Plaintiff did not respond to the individual arguments of either Defendant. Regardless, there is no issue of fact in the record before the Court as to whether Walter or Smithburg violated the Act. There is no evidence that either Defendant knew or should have known of the ongoing violations of the securitization agreements.

The Court therefore grants the summary judgment motions of Defendants Walter and Smithburg with respect to Count X.

VII. Count XI--KPMG's Duty to Disclose

In Count XI of the Third Amended Complaint, Wafra alleges that KPMG violated Section 10(b) and Rule 10b-5 because KPMG failed to correct the 1997 audit even though KPMG discovered that the audit was incorrect. (R. 131-1, Third Amended Complaint ¶ ¶ 186-194.) Allegedly, KPMG discovered that the 1997 audit was incorrect "not earlier than October 1998 and not later than May 4, 1999." (*Id.* ¶ 194.) KPMG argues, however, that the statute of limitations bars the lawsuit. (*Id.* at p. 13.) Alternatively, KPMG argues that no genuine issues exist as to two essential elements of Wafra's claim. (*Id.* at p. 18.)

A. Statute of Limitations

As indicated above, Defendants have failed to show "what information Wafra could have obtained prior to Prime's disclosure of the misappropriation and diversion that would have revealed even the general nature of the fraud." *Wafra I, 192 F.Supp.2d at 862.* Additionally, Defendants fail to show that there is no triable issue of fact that Wafra could have discovered the fraud without the use of the legal process. As a result, there is a question of fact as to the application of the statute of limitations in this case.

B. The Elements

Wafra has adopted a duty-to-correct theory for its claim against KPMG. Under that theory, Wafra must show at trial that KPMG discovered that the 1997 audit was incorrect within the alleged time frame. *In re HealthCare Compare Corp. Sec. Litig., 75 F.3d 276, 282* (7th Cir.1996). Wafra must also show that the 1997 audit contained untrue information. *Gallagher v. Abbott Labs., 269 F.3d 806, 810* (7th Cir.2001).

1. KPMG's Discovery Between October 1998 and May 1999

KPMG argues that the period for KPMG's discovery of audit inaccuracies ended on December 31, 1998. In support of this argument, KPMG's expert opines that an auditor has the duty to "evaluate whether there is a substantial doubt about the entity's ability to continue as a going concern for a period of time not to exceed one year beyond the date of the financial

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
(Cite as: 2004 WL 1977572 (N.D.Ill.))

Page 13

statements." (R. 224-1, Pl.'s Consol. Mem. in Opp. to Summ. J., Ex. 22, p. 18.) KPMG argues that Wafra's expert only indicated that KPMG should have re-evaluated Prime's ability to continue to function as a going concern. As such, KPMG's re-evaluation could have only taken place before the end of 1998.

There is a triable issue of fact, however, as to whether Wafra's sole request is that KPMG issue a "going concern" statement: Wafra alleges that KPMG violated procedures that an auditor should follow upon discovery of facts that affect the validity of the report. Wafra's expert states that upon discovering the problems with the 1997 audit KPMG should have "pull[ed] its 1997 opinion, fil[ed] with the SEC and [said] publicly that the opinion should no longer be relied on, *and/or potentially* reissue their opinion with a going concern or disclaimer." (R. 217-1, Pl.'s Response, Ex. 32 at 20 (emphasis added).) Wafra is claiming that KPMG should have amended the 1997 audit to include a general disclaimer about the new facts, not exclusively add a "going concern" paragraph. Consequently, there is a question of fact as to whether Wafra's window for showing KPMG discovery of audit problems extends beyond December 31, 1998.

*17 In addition to the one-year window argument, KPMG offers other arguments to show that it did not discover any audit inaccuracies during Plaintiff's alleged time frame. First, according to KPMG, most of the evidence "fails to distinguish between lease buyouts and misdirected payments. Second, the documents are insufficient as they were prepared for the 1998 audit and such work did not begin until "March and April of 1999." Third, KPMG argues that it could not have discovered errors in the 1997 audit while performing work for the 1998 servicer reports because those procedures concerned only at the 1998 reports.

Even in light of these objections, Wafra has presented sufficient evidence showing that there is a triable issue at to whether KPMG discovered that the 1997 audit was incorrect within Wafra's stipulated period. For example, Wafra presented KPMG's internal memo, titled "Prime Capital Corporation, Due to Trust Accounts, 12/31/98." That memo states that "Prime does not remit misdirected standard payments within the two day requirement, instead they make one transfer to the respective servicing accounts each month for the total of the buyouts and misdirected funds received each month ... Prime has never remitted payments within the two days as required by the servicer agreement." (R. 224-1, Pl.'s

Consol. Mem. in Opp. to Summ. J., Ex. 46, p. 1.)

KPMG argues that the December 31, 1998 date only indicates that the document was created for purposes of the 1998 audit, and was actually created after March 1999. KPMG also points out that the memorandum discusses early 1999 in the past tense, making it impossible for the document to have been written in 1998. Because Wafra's window for showing KPMG's discovery of errors in the 1997 audit extends into the first half of 1999, however, this document creates a triable issue of whether KPMG discovered that the audit was inaccurate within the alleged time frame.

Wafra also presents sections of Winikates's deposition in which he recognized that, during work for the 1998 audit, KPMG discovered Prime's misdirected payments. KPMG objects to this deposition on the basis that it does not distinguish between misdirected payments and lease buyouts. Regardless, there is at least a question of fact as to whether Winikates discovered in "March or April of '99" that Prime's handling of misdirected payments violated the securitization agreements. (R. 217-1, Pl.'s Resp. to Defs.' Statement of Facts, Ex. 8, p. 53.)

2. Incorrect Statements within the 1997 Audit

A necessary element of Wafra's duty-to-correct theory is that the 1997 audit contained a misstatement. KPMG claims that because Wafra cannot point to a GAAP principle that the 1997 audit violated, there is no triable issue of fact as to whether the 1997 audit had any misstatement. KPMG emphasizes the difference between accounting rules that require substantive correctness, such as GAAP, and those that require a valid process, such as GAAS. (*Id.*) Wafra does, however, create an issue of fact with respect to incorrect statements under other accounting standards.

*18 Wafra presents several auditing standards to demonstrate that the 1997 audit was inaccurate. First, Wafra presents Auditing Standard ("AU") Section 431, which requires adequate disclosure of material matters. (*Id.* at 92.) Wafra contends that the disclosure of Prime's scheme was a material matter. (*Id.*) The contention is not without support, as KPMG considered the late payment of funds to be a substantial matter when KPMG chose to disclose that fact in Footnote 4 of the 1998 audit. (*Id.* at 93.) Therefore, there is an issue of material fact as to whether the disclosure of the mishandling of payments was a material matter that should have

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
**(Cite as: 2004 WL 1977572 (N.D.Ill.))**

Page 14

been disclosed pursuant to AU Section 431.

Second, Wafra claims that there are issues of fact regarding whether the 1997 audit complied with auditing standards that require auditors to incorporate knowledge of their client's illegal acts into the auditor's reports if the illegal acts have a material effect on the reports. (*Id.* p. 98-99.) Wafra cites a violation of the Statement of Auditing Standards ("SAS") No. 54 and AU Section 317. (*Id.*) KPMG claims that Wafra cannot use the opinion of its auditor expert at trial to show an illegal act because that expert is not a lawyer. (R. 187-1, KPMG's Mot. for Summ. J., p. 23.) To support this argument KPMG points to *Sanches v. KPMG Peat Marwick,* 1996 U.S. Dist. LEXIS 2773 (D.N.M. Jan. 5, 1996). In that case, the court held that an accountant may not testify that an act is illegal. *Id.* at *12. Even though Wafra's accountant cannot offer a legal opinion at trial, there is an issue of fact as to whether KPMG knew of Prime's allegedly illegal acts and did not incorporate such knowledge into its audit.

Additionally, Wafra presents an issue of material fact as to whether the 1997 audit was incorrect, when as part of that report, KPMG stated that "we conducted our audits in accordance with generally accepted auditing standards." (*Id.* Ex. 3, p. 19.) Wafra argues that there are substantial issues of material fact as to whether KPMG followed several generally accepted auditing standards. KPMG argues that because the 1997 audit was in accordance with GAAP, GAAS violations are irrelevant. The document, however, explicitly states that it was created through procedures in accordance with accounting standards. Therefore, if Wafra can show issues of material fact whether the 1997 audit violated GAAS, then summary judgment is also improper on this ground.

Wafra has met its burden by identifying the Third General Standard, and the Standards of Field Work of GAAS. The Third General Standard states that "due professional care is to be exercised in the performance of the examination and preparation of the report." (R. 224-1, Pl.'s Consol. Mem. in Opp. to Summ. J., p. 94.) There is evidence that Muehling, who worked on a critical part of the 1997 audit, misunderstood critical parts of the securitization agreement. Specifically, in his deposition, Muehling states that:

*19 A: ... a misdirected funds is a fund or payment is made to the 1995 securitization when it should have been in the 1994 securitization.
Q: In other words, where a customer sends it to the

wrong lock box?
A: Right
(*Id.* at Ex. 9, 52-53.) Muehling may have misunderstood how the two-day rule functions. A proper understanding of the terms of the securitization was central to the auditor's work in this case. Therefore, there is an issue of material fact as to whether Muehling's lack of understanding is a violation GAAS requirement of due professional care.

GAAS's Standards of Field Work require the auditor to adequately plan, supervise employees, understand internal control structures, and obtain sufficient and competent evidence as bases for the auditor's opinion. The auditor who performed the fieldwork of the "cash, assets and accounts payable" portion of the audit was Muehling. (*Id.* at Ex. 9, p. 6.) Muehling's misunderstanding of the terms of the Prime securitization give rise to issues of fact as to whether he obtained the type of support from KPMG that is required under GAAS Field Work Rules.

KPMG also argues that GAAS violations alone cannot prove loss causation, pointing to *Edward J. DeBartolo Corp. v. Coopers & Lybrand,* 928 F.Supp. 557 (W.D.Pa.1996). In that case, the court ruled on a motion for a judgment as a matter of law at the conclusion of the trial. *Id.* at 559. This court, of course, does not have the benefit of deciding the issue of causation following a trial. That case is also substantively distinguishable from the case at hand. There, the court found that the plaintiffs presented "no evidence that the financial statements would have been materially different, assuming that a GAAS audit had been performed in those years." *Id.* at 563. In this case, however, there is some question at this stage that the failure to follow GAAS standards caused the 1997 audit to be inaccurate. As stated above, Wafra has shown that a genuine issue of material fact exists as to whether the 1997 audit was incorrect. Therefore, summary judgment is improper, and KPMG's motion is denied with respect to Count XI.

VIII. Loss Causation and Out-of-Pocket Losses

Defendants argue that Plaintiff has not shown loss causation sufficient to survive summary judgment on any of its claims. Alternatively, Defendants argue that Plaintiffs losses should be limited to its "out-of-pocket loss, or the amount invested less any amount received from the investment."

The Seventh Circuit has determined that a finding of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908

**(Cite as: 2004 WL 1977572 (N.D.Ill.))**

Page 15

loss causation at the motion to dismiss stage of litigation does not preclude summary judgment for the securities fraud defendant on the issue. *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 649-50 (7th Cir.1997) ("Our holding does not preclude [defendant] from submitting, at the summary judgment stage, that [plaintiff] cannot prove the loss causation that it has alleged in this complaint."). The *Caremark* opinion went on to explain, however, "[t]o defeat [plaintiff's] claim at summary judgment, therefore, [defendant] would have to establish that, as a matter of undisputed fact, the depreciation in the value of the notes could not have resulted from the alleged false statement or omission of the defendant." *Id.*

**\*20** In this case, Defendants offer several possible reasons for the loss that Wafra suffered, including "failure of the lessees to make their required contributions, defaults of the parties obligated under the servicing agreements, [and] additional costs and expenses related to the replacement of Prime as the servicer." Defendants have not shown, however, that "as a matter of undisputed fact" Wafra's loss "could not have resulted from the alleged false statement or omission of the defendant[s]." *Caremark, Inc.*, 113 F.3d at 650.

With respect to Defendants' argument that Plaintiff's losses should be capped at $1,759,543, Defendants correctly note that "federal securities laws allow victims of fraud to recover their actual loss--the difference between what they paid for the stock and what it was worth." *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1551 (7th Cir.1990); *Pelletier v. Stuart-James Co., Inc.*, 863 F.2d 1550, 1557-58 (11th Cir.1989); *Feldman v. Pioneer Petroleum, Inc.*, 813 F.2d 296, 301-02 (10th Cir.1987). Nevertheless, the Court declines to place a specific monetary limit on Plaintiff's damages based on the record before it.

CONCLUSION

The Bischoff Defendants' motion for summary judgment is granted with respect to Counts I, III, IV, and X, and denied with respect to Count II as to Mark Bischoff individually. Defendants Friedman's and Landeck's motions for summary judgment are denied. Defendant Ehmann's motion for summary judgment is granted with respect to Count II, and denied with respect to Counts I, III, and X. Defendant Smithburg's motion for summary judgment is granted with respect to Counts I, III, and X, and denied as to Count II. Defendant Walter's motion for summary judgment is granted. Defendant KPMG's motion for

summary judgment is granted with respect to Counts IX and X, and denied as to Count XI.

2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2256730 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Bischoff Defendants' Motion to Strike Certain Portions of Plaintiff's Consolidated Opposition to Defendants' Motions for Summary Judgment (Aug. 11, 2004)

• 2004 WL 2256729 (Trial Motion, Memorandum and Affidavit) Bischoff Defendants' Amended Reply in Support of Their Motion for Summary Judgment (Jul. 29, 2004)

• 2004 WL 2256728 (Trial Motion, Memorandum and Affidavit) Bischoff Defendants' Reply in Support of Their Motion for Summary Judgment (Jul. 26, 2004)

• 2004 WL 2256720 (Trial Motion, Memorandum and Affidavit) Defendant Friedman's Reply in Support of His Motion for Summary Judgment (Jul. 23, 2004)

• 2004 WL 2256722 (Trial Motion, Memorandum and Affidavit) Defendant Smithburg's Reply in Support of His Motion for Summary Judgment (Jul. 23, 2004)

• 2004 WL 2256724 (Trial Motion, Memorandum and Affidavit) Defendant Walter's Reply in Support of His Motion for Summary Judgment (Jul. 23, 2004)

• 2004 WL 2256725 (Trial Motion, Memorandum and Affidavit) Defendant KPMG LLP's Reply Brief in Support of Motion for Summary Judgment (Jul. 23, 2004)

• 2004 WL 2256726 (Trial Motion, Memorandum and Affidavit) Defendants' Joint Response to Plaintiff's Rule 56.1 Statement of Additional Facts (Jul. 23, 2004)

• 2004 WL 2256727 (Trial Motion, Memorandum and Affidavit) Defendant Landeck's Supplemental Reply Memorandum (Jul. 23, 2004)

• 2004 WL 2256719 (Trial Motion, Memorandum and Affidavit) Plaintiff's Consolidated Memorandum

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
**(Cite as: 2004 WL 1977572 (N.D.Ill.))**

in Opposition to Defendants' Motions for Summary Judgment (Jul. 06, 2004)

• 2004 WL 2256715 (Trial Motion, Memorandum and Affidavit) Bischoff Defendants' Memorandum in Support of Motion for Summary Judgment (Jun. 08, 2004)

• 2004 WL 2256710 (Trial Motion, Memorandum and Affidavit) Defendant KPMG LLP's Motion for Summary Judgment (Jun. 02, 2004)

• 2004 WL 2256711 (Trial Motion, Memorandum and Affidavit) Motion of Defendant James A. Friedman for Summary Judgment (Jun. 02, 2004)

• 2004 WL 2256712 (Trial Motion, Memorandum and Affidavit) Motion of Defendant John Walter for Summary Judgment (Jun. 02, 2004)

• 2004 WL 2256713 (Trial Motion, Memorandum and Affidavit) Motion of Defendant William D. Smithburg for Summary Judgment (Jun. 02, 2004)

• 2004 WL 2256709 (Trial Motion, Memorandum and Affidavit) KPMG LLP's Reply Brief in Support of Its Motion to Bar and Strike Certain Opinion Testimony of Plaintiff's Retained "Accounting and Auditing Expert" (Mar. 08, 2004)

• 2004 WL 2256708 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendant KPMG LLP's Motion to Bar and Strike Plaintiff's Expert Testimony (Mar. 03, 2004)

• 2004 WL 869686 (Trial Motion, Memorandum and Affidavit) Kpmg LLP's Motion to Bar and Strike Certain Opinion Testimony of Plaintiff's Retained "Accounting and Auditing Expert" (Feb. 17, 2004)

• 2004 WL 392933 (Trial Filing) Notice of Filing (Jan. 20, 2004)

• 2004 WL 487300 (Trial Filing) Notice of Filing (Jan. 20, 2004)

• 2004 WL 869685 (Trial Motion, Memorandum and Affidavit) Plaintiff's Agreed Motion for Extension of Time to File Plaintiff's Expert Disclosure Report (Jan. 12, 2004)

• 2003 WL 23417270 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Renewed Settlement Conference (Nov. 13, 2003)

• 2003 WL 23417268 (Trial Motion, Memorandum and Affidavit) William Brandt, Jr.'s, as Assignee, Reply in Support of His Motion to Reassign (Oct. 31, 2003)

• 2003 WL 23817831 (Trial Motion, Memorandum and Affidavit) William Brandt, Jr.'s, as Assignee, Reply in Support of His Motion to Reassign (Oct. 31, 2003)

• 2003 WL 23817828 (Trial Motion, Memorandum and Affidavit) Plaintiff Wafra Leasing Corporation 1999-A-1's Response to Motion to Reassign (Oct. 28, 2003)

• 2003 WL 23417265 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for Extension of Time (Oct. 14, 2003)

• 2003 WL 23417255 (Trial Motion, Memorandum and Affidavit) Motion to Reassign (Oct. 02, 2003)

• 2003 WL 23312760 (Trial Motion, Memorandum and Affidavit) Notice of Motion (Aug. 27, 2003)

• 2003 WL 23312771 (Trial Motion, Memorandum and Affidavit) Notice of Motion (Aug. 27, 2003)

• 2003 WL 23325556 (Trial Motion, Memorandum and Affidavit) Notice of Motion (Aug. 27, 2003)

• 2003 WL 23325565 (Trial Motion, Memorandum and Affidavit) Notice of Motion (Aug. 27, 2003)

• 2003 WL 23417815 (Trial Motion, Memorandum and Affidavit) Bischoff Defendants' Motion to Strike Or, in the Alternative, Opposition to Plaintiff's Motion to Compel (Aug. 27, 2003)

• 2003 WL 23417824 (Trial Motion, Memorandum and Affidavit) KPMG LLP's Petition for Attorneys Fees (Aug. 27, 2003)

• 2003 WL 23312759 (Trial Motion, Memorandum and Affidavit) Notice of Motion (Aug. 25, 2003)

• 2003 WL 23325560 (Trial Motion, Memorandum and Affidavit) Notice of Motion (Aug. 25, 2003)

• 2003 WL 23417782 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion to Compel Production of "Privileged" Documents Withheld by Defendants Bischoff and Bischoff and Swabowski (Aug. 25, 2003)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
**(Cite as: 2004 WL 1977572 (N.D.Ill.))**

Page 17

• 2003 WL 23417795 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Support of its Motion to Compel Production of Documents by Defendants Mark Bischoff and Bischoff & Swabowski, Ltd. (Aug. 25, 2003)

• 2003 WL 23817825 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Support of Its Motion to Compel Production of Documents by Defendants Mark Bischoff and Bischoff & Swabowski, Ltd. (Aug. 25, 2003)

• 2003 WL 23417771 (Trial Motion, Memorandum and Affidavit) KPMG LLP's Motion for Protective Order (Aug. 08, 2003)

• 2003 WL 23417804 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for Entry of Order Granting Plaintiff Leave to File Instanter Plaintiff's Memorandum in Opposition to KPMG's Motion for Protective Order (Aug. 2003)

• 2003 WL 23417757 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Amend Scheduling Order (Feb. 21, 2003)

• 2003 WL 23417684 (Trial Pleading) Answer of William D. Smithburg to the Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23417692 (Trial Pleading) Answer of James Friedman to Plaintiff's Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23417701 (Trial Pleading) Answer of John Walter to the Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23417711 (Trial Pleading) Answer and Affirmative Defenses of Defendants Bischoff Partners, LLC (f/k/a Bischoff & Swabowski, Ltd.) and Mark P. Bischoff to Amended Portions of Plaintiffs' Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23417724 (Trial Pleading) KPMG LLP's Answer to Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23417734 (Trial Pleading) Answer to Third Amended Comlaint (Jan. 27, 2003)

• 2003 WL 23417742 (Trial Pleading) Defendant Landeck's Answer to Plaintiff's Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23417749 (Trial Pleading) Defendant

Ehmann's Answer to Plaintiff's Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23817811 (Trial Pleading) Answer of William D. Smithburg to the Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23817812 (Trial Pleading) Answer of James Friedman to Plaintiff's Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23817813 (Trial Pleading) Answer of John Walter to the Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23817815 (Trial Pleading) Answer and Affirmative Defenses of Defendants Bischoff Partners, LLC (f/k/a Bischoff & Swabowski, Ltd.) and Mark P. Bischoff to Amended Portions of Plaintiffs' Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23817817 (Trial Pleading) KPMG LLP's Answer to Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23817819 (Trial Pleading) Answer to Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23817821 (Trial Pleading) Defendant Landeck's Answer to Plaintiff's Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23817823 (Trial Pleading) Defendant Ehmann's Answer to Plaintiff's Third Amended Complaint (Jan. 27, 2003)

• 2003 WL 23817810 (Trial Pleading) Third Amended Complaint (Jan. 07, 2003)

• 2003 WL 23417674 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for Leave to File Third Amended Complaint (Jan. 03, 2003)

• 2003 WL 23417664 (Trial Pleading) KPMG LLP's Answer to Second Amended Complaint (Jan. 02, 2003)

• 2003 WL 23817809 (Trial Pleading) KPMG LLP's Answer to Second Amended Complaint (Jan. 02, 2003)

• 2002 WL 32451367 (Trial Pleading) Defendant Landeck's Answer to Plaintiff's Second Amended Complaint (Nov. 20, 2002)

• 2002 WL 32451378 (Trial Pleading) Defendant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
**(Cite as: 2004 WL 1977572 (N.D.Ill.))**

Ehmann's Answer to Plaintiff's Second Amended Complaint (Nov. 20, 2002)

• 2002 WL 32451389 (Trial Pleading) Answer of Defendants Bischoff Partners, LLC (f/k/a Bischoff & Swabowski, Ltd.) and Mark P. Bischoff to Plaintiffs' Second Amended Complaint (Nov. 20, 2002)

• 2002 WL 32451407 (Trial Pleading) Answer to Second Amended Complaint (Nov. 20, 2002)

• 2002 WL 32451424 (Trial Pleading) Answer of James Friedman to Plaintiff's Second Amended Complaint (Nov. 20, 2002)

• 2002 WL 32676407 (Trial Pleading) Defendant Landeck's Answer to Plaintiff's Second Amended Complaint (Nov. 20, 2002)

• 2002 WL 32676411 (Trial Pleading) Defendant Ehmann's Answer to Plaintiff's Second Amended Complaint (Nov. 20, 2002)

• 2002 WL 32676413 (Trial Pleading) Answer of Defendants Bischoff Partners, LLC (f/k/a Bischoff & Swabowski, Ltd.) and Mark P. Bischoff to Plaintiffs' Second Amended Complaint (Nov. 20, 2002)

• 2002 WL 32676416 (Trial Pleading) Answer to Second Amended Complaint (Nov. 20, 2002)

• 2002 WL 32676418 (Trial Pleading) Answer of James Friedman to Plaintiff's Second Amended Complaint (Nov. 20, 2002)

• 2002 WL 32451356 (Trial Motion, Memorandum and Affidavit) Agreed Motion to Extend Time for Defendants to Answer or Otherwise Respond to Second Amended Complaint (Oct. 22, 2002)

• 2002 WL 32451346 (Trial Motion, Memorandum and Affidavit) KPMG LLP's Reply Brief in Support of Motion to Dismiss Counts VIII and XI of the Second Amended Complaint (Oct. 15, 2002)

• 2002 WL 32676402 (Trial Motion, Memorandum and Affidavit) KPMG LLP's Reply Brief in Support of Motion to Dismiss Counts VIII and XI of the Second Amended Complaint (Oct. 15, 2002)

• 2002 WL 32373108 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Smithburg and Walter's Motions to Strike Additional Affirmative Matter in Plaintiff's Reply (Sep. 18, 2002)

• 2002 WL 32388023 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Smithburg and Walter's Motions to Strike Additional Affirmative Matter in Plaintiff's Reply (Sep. 18, 2002)

• 2002 WL 32451316 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for Entry of Order Granting Plaintiff Leave to File Instanter Plaintiff's Memorandum in Opposition to Smithburg and Walter's Motions to Strike Additional Affirmative Matter in Plaintiff's Reply (Sep. 18, 2002)

• 2002 WL 32676399 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Smithburg and Walter's Motions to Strike Additional Affirmative Matter in Plaintiff's Reply (Sep. 18, 2002)

• 2002 WL 32451303 (Trial Motion, Memorandum and Affidavit) Plaintiff's Agreed Motion for Extension of Time (Aug. 19, 2002)

• 2002 WL 32451292 (Trial Motion, Memorandum and Affidavit) Smithburg and Walter's Motion to Strike Additional Affirmative Matter in Plaintiff's Reply (Aug. 15, 2002)

• 2002 WL 32451264 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply to Smithburg and Walter's Opposition to Motion for Leave to File Second Amended Complaint (Aug. 02, 2002)

• 2002 WL 32451279 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for Extension of Time to File Plaintiff's Written Discovery Requests (Aug. 02, 2002)

• 2002 WL 32451253 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for Extension of Time (Jul. 24, 2002)

• 2002 WL 32451244 (Trial Motion, Memorandum and Affidavit) Motion of KPMG LLP for Extension of Time (Jul. 09, 2002)

• 2002 WL 32451215 (Trial Motion, Memorandum and Affidavit) Motion of Defendants Bischoff & Swabowski, Ltd. and Mark P. Bischoff for Substitution of Counsel (Jun. 21, 2002)

• 2002 WL 32451234 (Trial Motion, Memorandum and Affidavit) Agreed Motion of Defendants Bischoff & Swabowski, Ltd. and Mark P. Bischoff to

B61

Not Reported in F.Supp.2d
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
**(Cite as: 2004 WL 1977572 (N.D.Ill.))**

Vacate Technical Defaults and for an Extension of Time Within which to Answer Plaintiffs' Amended Complaint (Jun. 21, 2002)

• 2002 WL 32451205 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for Leave to File Second Amended Complaint (Jun. 17, 2002)

• 2002 WL 32451201 (Trial Pleading) KPMG LLP'S Answer to First Amended Complaint (Jun. 10, 2002)

• 2002 WL 32676396 (Trial Pleading) KPMG LLP's Answer to First Amended Complaint (Jun. 10, 2002)

• 2002 WL 32451194 (Trial Motion, Memorandum and Affidavit) Reply in Support of Defendants Ehmann and Landeck's Motion to Dismiss Plaintiff's Amendment to Its Complaint (Mar. 29, 2002)

• 2002 WL 32676394 (Trial Motion, Memorandum and Affidavit) Reply in Support of Defendants Ehmann and Landeck's Motion to Dismiss Plaintiff's Amendment to Its Complaint (Mar. 29, 2002)

• 2002 WL 32451181 (Trial Motion, Memorandum and Affidavit) Smithburg and Walter's Reply in Support of Motion to Dismiss Plaintiff's Amendment to Its Complaint (Mar. 25, 2002)

• 2002 WL 32451189 (Trial Motion, Memorandum and Affidavit) KPMG LLP'S Reply Memorandum of Law in Support of Motion to Dismiss Count X of First Amended Complaint (Mar. 25, 2002)

• 2002 WL 32676390 (Trial Motion, Memorandum and Affidavit) Smithburg and Walter's Reply in Support of Motion to Dismiss Plaintiff's Amendment to Its Complaint (Mar. 25, 2002)

• 2002 WL 32676391 (Trial Motion, Memorandum and Affidavit) KPMG LLP's Reply Memorandum of Law in Support of Motion to Dismiss Count X of First Amended Complaint (Mar. 25, 2002)

• 2002 WL 32451174 (Trial Motion, Memorandum and Affidavit) Agreed Motion for Extension of Time to File Reply to Plaintiff's Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss Amendment to Complaint (Mar. 22, 2002)

• 2002 WL 32451167 (Trial Motion, Memorandum and Affidavit) Plaintiff's Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss Amendment to Complaint (Mar. 13, 2002)

• 2002 WL 32676388 (Trial Motion, Memorandum and Affidavit) Plaintiff's Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss Amendment to Complaint (Mar. 13, 2002)

• 2002 WL 32451158 (Trial Motion, Memorandum and Affidavit) Bischoff's Supplemental Memorandum of Law in Support of 12(b)(6) Motion to Dismiss Wafra's Complaint (Feb. 26, 2002)

• 2002 WL 32676386 (Trial Motion, Memorandum and Affidavit) Bischoff's Supplemental Memorandum of Law in Support of 12(b)(6) Motion to Dismiss Wafra's Complaint (Feb. 26, 2002)

• 2002 WL 32451149 (Trial Pleading) Defendants' Answer to Plaintiff's Amendment to its Complaint (Feb. 20, 2002)

• 2002 WL 32676383 (Trial Pleading) Defendants' Answer to Plaintiff's Amendment to Its Complaint (Feb. 20, 2002)

• 2002 WL 32451138 (Trial Motion, Memorandum and Affidavit) Motion for Enlargement of Time (Feb. 13, 2002)

• 2002 WL 32451127 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for Entry of Order Setting Unified Briefing Schedule on Defendants' Various Motions to Dismiss Amendment to Plaintiff's Complaint (Feb. 08, 2002)

• 2002 WL 32451107 (Trial Motion, Memorandum and Affidavit) Defendant KPMG LLP's Motion to Dismiss Count X of First Amended Complaint (Feb. 04, 2002)

• 2002 WL 32451118 (Trial Motion, Memorandum and Affidavit) KPMG LLP's Memorandum of Law in Support of Motion to Dismiss Count X of First Amended Complaint (Feb. 04, 2002)

• 2002 WL 32676382 (Trial Motion, Memorandum and Affidavit) KPMG LLP's Memorandum of Law in Support of Motion to Dismiss Count X of First Amended Complaint (Feb. 04, 2002)

• 2002 WL 32451095 (Trial Motion, Memorandum and Affidavit) Smithburg, Walter, and Friedman's Motion to Adopt and Supplement Ehmann and Landeck's Motion to Dismiss Plaintiff's Amendment to its Complaint and Supporting Memorandum (Jan. 24, 2002)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1977572 (N.D.Ill.), Fed. Sec. L. Rep. P 92,908
**(Cite as: 2004 WL 1977572 (N.D.Ill.))**

• 2002 WL 32451084 (Trial Motion, Memorandum and Affidavit) Defendants Ehmann and Landeck's Motion to Dismiss Plaintiff's Amendment to its Complaint (Jan. 18, 2002)

• 2002 WL 32676380 (Trial Pleading) First Amended Complaint (Jan. 15, 2002)

• 2002 WL 32676372 (Trial Motion, Memorandum and Affidavit) Plaintiff's Surreply in Further Opposition to Ehmann's and Landeck's Motion to Dismiss (Jan. 04, 2002)

• 2002 WL 32676376 (Trial Pleading) Plaintiff's Amendment to Its Complaint (Jan. 04, 2002)

• 2002 WL 32451333 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition To Smithburg and Walter's Motions to Strike Additional Affirmative Matter in Plaintiff's Reply (2002)

• 2001 WL 34665686 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of the Motion of Defendants Ehmann and Landeck to Dismiss Plaintiff's Complaint (Nov. 30, 2001)

• 2001 WL 34665685 (Trial Pleading) Defendants' Answer to Complaint (Nov. 06, 2001)

• 2001 WL 34394284 (Trial Pleading) Complaint (Jun. 08, 2001)

• 2001 WL 34665681 (Trial Pleading) Complaint (Jun. 08, 2001)

• 1:01CV04314 (Docket) (Jun. 08, 2001)

END OF DOCUMENT

B63

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.