IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STONE & WEBSTER, INCORPORATED | ) | Case No. 00-02142 (PJW) |
| et al., | ) | Jointly Administered |
| | ) | Adv. No. 01-7766 (PJW) |
| Debtors | ) | |
| | ) | |
| SAUDI AMERICAN BANK, | ) | 1:04-cv-00834-SLR |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE SHAW GROUP INC., SWINC | ) | |
| ACQUISTION THREE, INC., and | ) | |
| STONE & WEBSTER ENGINEERING | ) | |
| CORPORATION, et al., | ) | |
| Defendants | ) | |

**SAUDI AMERICAN BANK'S REPLY BRIEF TO THE
RESPONSE OF THE SHAW GROUP, INC. IN OPPOSITION TO
SAUDI AMERICAN BANK'S MOTION FOR ASSESSMENT OF DAMAGES**

**Monzack & Monaco, P.A.**
Francis A. Monaco, Jr. (#2078)
Kevin Mangan (#3810)
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
(302) 656-8163

**Kirkpatrick & Lockhart Nicholson Graham LLP**
John C. Hutchins (BBO #246060)
Daniel E. Rosenfeld (BBO #560226)
Amy B. Abbott (BBO #648072)
75 State Street
Boston, MA 02109
(617) 261-3100

Dated: June 8, 2005

**TABLE OF CONTENTS**

I.    Introduction....................................................................................................................1

II.   In the Absence of Federal Law on the Issue of Pre-Judgment Interest the Court Must
      Apply Delaware Law.....................................................................................................1

      A.   SAMBA is Entitled to Pre-Judgment Interest..........................................................1

      B.   Choice of Law..........................................................................................................4

III.  SAMBA is Entitled to Attorneys' Fees..........................................................................8

IV.   Shaw Waived the Right to Object to the Amount of Samba's Cure Claim...................9

      A.   SAMBA's Cure Claim Constitutes *Prima Facie* Evidence of the Validity and
           Amount of the Claim ...............................................................................................9

      B.   Shaw Failed to Contest SAMBA's Cure Claim .....................................................10

V.    Islamic Law Does Not Govern the Determination of Whether Samba is Entitled to
      Prejudgment Interest....................................................................................................11

      A.   Shaw Waived Illegality as a Defense by Failing to Plead it as an Affirmative
           Defense in Shaw's Answer ....................................................................................11

      B.   Islamic Law Does Not Preclude the Award of Prejudgment Interest to
           SAMBA .................................................................................................................12

VI.   Conclusion...................................................................................................................13

# TABLE OF AUTHORITIES[1]

## FEDERAL CASES

*American Equities Group, Inc. v. Ahava Dairy Products Corp.*, 01 Civ. 5207,
   2004 U.S.Dist. LEXIS 6970 ......................................................................................6

*In re: Arbitration Between Trans Chemical Ltd. and China National Machine*, 978 F.
   Supp. 266 ..................................................................................................................2

*Cargill, Inc. v. Charles Kowsky Resources, Inc.*, 949 F.2d 51 .............................................6

*Devex Corp. v. General Motors Corp.*, 569 F. Supp. 1354..................................................2

*Colon Velez v. Puerto Rico Marine Management, Inc.*, 957 F.2d 933 .............................1, 2

*In re Fleming Companies, Inc.*, 316 B.R. 809 .....................................................................8

*Hansen v. Continental Insurance Co.*, 940 F.2d 971 .......................................................1, 2

*In re Laforgia*, Nos. 5-95-00036, 5-95-00976, 1998 WL 59480 .......................................10

*Sinclair Oil Corp. v. Schaefer*, No. 91-36089, 1993 WL 441988.........................................9

*Steadman v. Steadman*, No. Civ. A. 02-CV-8888, 2004 WL 503512.................................10

*Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516 ....................................8

*U.S. v. Enviroserve, Inc.*, 301 F. Supp. 2d 56................................................................1, 2

*U.S. v. Star Brite Construction Co.*, 848 F. Supp. 1161 ......................................................2

## STATE CASES

*Bickford v. Smithson*, C.A. No. 2002-05-187, 2003 WL 22931394 ...................................8

*Citadel Holding Corp. v. Roven*, 603 A.2d 818 ..................................................................3

*Hercules Inc. v. Aetna Casualty and Surety Co.*, Nos. 92C-10-105, 90C-FE-195- 1-CV,
   1998 WL 962089 .....................................................................................................3

---

[1] Copies of the unpublished cases cited herein (and which were not cited in Saudi American Bank's Opening Brief) are submitted herewith in the Appendix to Saudi American Bank's Reply Brief to the Response of the Shaw Group, Inc. in Opposition to Saudi American Bank's Motion for Assessment of Damages, Exhibit A at B1-B25.

*Indosuez International Finance B.V. v. National Reserve Bank*, 774 N.E.2d 696...............6

*Zeevi & Sons v. Grindlays Bank*, 37 N.Y.2d 220 ................................................................6

**FEDERAL RULES & STATUTES**

11 U.S.C. 101 et seq.................................................................................................................2

Bankruptcy Code § 502(a), 11 U.S.C. § 502 ....................................................................10

Fed. R. Bankr. P. 3001 .......................................................................................................10

Fed. R. Civ. P. 8 ................................................................................................................12

**TREATISE & LAW REVIEW**

5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278 .... 11, 12

*Barry W. Rashkover, Title 14, New York Choice of Law Rule for Contractual Disputes:
    Avoiding the Unreasonable Results,* 71 Cornell L. Rev. 227 ......................................5, 7

**I.      Introduction**

Plaintiff Saudi American Bank ("SAMBA") hereby submits the following Reply Memorandum in further support of its Motion for Assessment of Damages. As SAMBA explained in its Opening Brief in Support of its Motion for Assessment of Damages, SAMBA is entitled to a judgment consisting of the principal owed under the Guaranty[2] and Payment Letter, pre-judgment interest, expenses including attorneys' fees and costs, and post-judgment interest. Despite the Shaw Group Inc.'s ("Shaw") attempt to have the Court focus on issues of Saudi Arabian law and selectively to misdirect the Court to provisions of the Credit Agreement, Guaranty and/or Payment Letter depending on which document supports Shaw's argument, the Court must look to the terms of the Guaranty and the obligations of BS&W covered thereby, including BS&W's obligations under all of the loan and security documents with SAMBA. The Court should also consider Shaw's conduct in this matter.

**II.     In the Absence of Federal Law on the Issue of Pre-Judgment Interest the Court Must Apply Delaware Law**

   **A.     SAMBA is Entitled to Pre-Judgment Interest**

As a general rule, where a cause of action arises out of a federal statute, federal law governs the scope of available remedies, including whether pre-judgment interest is to be allowed and at what rate.[3] See Colon Velez v. Puerto Rico Marine Mgmt., Inc., 957 F.2d 933, 941 (1st Cir. 1992); Hansen v. Continental Ins. Co., 940 F.2d 971, 983 (5th Cir. 1991). However, where the statute is silent on the issue of prejudgment interest, this general rule "often leads back

---

[2] All capitalized terms not expressly defined herein have the same meaning ascribed to those defined terms in SAMBA's Opening Brief.

[3] While there is a generally applicable statute governing postjudgment interest, there is no equivalent statute regarding prejudgment interest. See Hansen v. Continental Ins. Co., 940 F.2d 971, 984 (5th Cir. 1991); U.S. v. Enviroserve, Inc., 301 F. Supp.2d 56, 75 (D. Mass. 2003).

1

to state law" and courts look to state law to set the prejudgment interest rate. Hansen, 940 F.2d at 984; see also U.S. v. Enviroserve, Inc., 301 F. Supp.2d 56, 75 (D. Mass. 2003) (awarding the Massachusetts statutory interest rate of 12% as prejudgment interest in a Miller Act case); Colon Velez., 957 F.2d at 941 (awarding the Puerto Rico statutory prejudgment interest rate of 12% in an ERISA action); In re: Arbitration Between Trans Chemical Ltd. and China Nat'l Mach., 978 F. Supp. 266, 313 (S.D. Tex. 1997) (awarding prejudgment interest on a Foreign Sovereign Immunities Act and Federal Arbitration Act claim at the 10% Texas rate); U.S. v. Star Brite Construction Co., 848 F. Supp. 1161, 1169 (D. Del. 1994) (awarding prejudgment interest in a Miller Act claim at the Delaware legal rate of 5% over the Federal Reserve discount rate). Cf. Devex Corp. v. General Motors Corp., 569 F. Supp. 1354, 1367 (D. Del. 1983) (rejecting the application of the Delaware statutory rate for prejudgment interest on a patent claim, where the Patent Act otherwise provides for prejudgment interest.

SAMBA's Complaint in this matter arose under the Bankruptcy Code. See Memorandum Opinion dated May 3, 2005 at 1 ("Th[is] court has jurisdiction over actions arising out of Chapter 11 of the Bankruptcy Code pursuant to 28 U.S.C. § 1334(a)"); Complaint of Saudi American Bank at 1 ("This is an action under 11 U.S.C. §§ 105, 363 and 365 and under Fed. R. Bankr. P. 7001 and 7019"). The Bankruptcy Code does not contain a provision governing prejudgment interest. See 11 U.S.C. 101 et seq.; see also Robinson v. Watts Detective Agency, 685 F.2d 729, 741 (1st Cir. 1982) (recognizing that because the Bankruptcy Act does not provide for prejudgment interest, courts turn to federal common law in determining whether to award prejudgment interest, but denying an award of prejudgment interest where the general damages were unascertainable). In the absence of a general federal statute or a provision in the Bankruptcy Code governing prejudgment interest, this Court should turn to Delaware law as

instructive. As set forth in SAMBA's Opening Brief, Delaware courts have awarded pre-judgment interest on compensatory damages as a matter of right. See Salaman v. National Media Corp., No. C.A. 92C-01-161, 1994 WL 465535, at *1 (Del. Super. July 22, 1994); see also Hercules Inc. v. Aetna Casualty and Surety Co., Nos. 92C-10-105, 90C-FE-195-1-CV, 1998 WL 962089, at *8 (Del. Super. Sep. 30, 1998); Citadel Holding Corp. v. Roven, 603 A.2d 818, 826 (Del. 1992). Under Delaware law, if the contract at issue does not specify the applicable rate of interest, Delaware courts apply the Delaware legal rate.

SWEC's Guaranty and the Payment Letter formed the predicate of SAMBA's claims against Shaw. As set forth more fully in SAMBA's Opening Brief, both the Guaranty[4] and the SAMBA/Bugshan Credit Agreement provide that interest is to be paid, but neither document explicitly provides the applicable interest rate. The amount of interest and commission owing to SAMBA on the date Debtors' filed bankruptcy was calculated at a rate of 9.5% for purposes of the Cure Claim. In SAMBA's subsequent answers to interrogatories in this action, and as demonstrated in the Declaration of Arif Usmani, SAMBA's Chief Risk Officer, which was filed in support of SAMBA's Motion for Assessment of Damages, SAMBA stated that interest should be calculated at an interest rate of 7.375% compounded daily, but SAMBA was referring to the applicable rate under the BS&W Credit Agreement. SAMBA asserts that the interest rate applicable to SWEC's obligations under the Guaranty need not be the same as the rate applicable to BS&W's obligations under the Credit Agreement, a Saudi Arabian contract. Under circumstances such as these — that is, where the contract before the Court (the Guaranty) does

---

[4] "[T]he undersigned hereby unconditionally guarantees the punctual payment when due of 50% of all obligations of the Borrower to you now or hereafter existing ("Obligations") together with interest thereon and any and all expenses incurred by you in enforcing your rights under this Guaranty." Exhibit C at A57. All Exhibit references to pages A1-A128 are to pages in the Appendix to SAMBA's Opening Brief.

not specify an interest rate — Delaware law provides that the Delaware legal rate as of the date the liability becomes payable should be applied to determine pre-judgment interest. Based on the facts of this case, the appropriate rate for calculating SAMBA's pre-judgment interest under the Guaranty is 11%. Thus, SAMBA is entitled to pre-judgment interest under the Guaranty in the amount of $3,646,054.90.[5] Alternatively, this Court may assess interest at the rate set forth in SAMBA's interrogatory answers.[6]

### B. Choice of Law

As described above, SAMBA's action is based upon SWEC's Guaranty of the obligations of BS&W. The Guaranty covered "50% of all obligations . . . ("Obligations") together with interest thereon and any and all expenses incurred by you in enforcing your rights under this Guaranty." One of the issues raised by Shaw's Response is which jurisdiction's law should be considered by the Court in determining the amount of "interest" and the meaning of "any and all expenses" as used in the Guaranty. Exhibit C at A57. Based on a tortured analysis, Shaw argues that because the Obligations owed by BS&W (principal, commissions/interest and expenses of enforcing the BSW loan documents) are governed by Saudi Arabian law, the Guaranty is necessarily governed by Saudi law (at least insofar as calculation of interest is concerned). Shaw conveniently, though inconsistently, asserts that Delaware law applies to the question of whether Shaw is responsible for SAMBA's attorneys' fees.

Shaw's argument is fallacious. The Guaranty is an entirely separate, independent contract, not "derivative" from the BS&W loan documents. Furthermore, the Guaranty recites

---

[5] This is calculated as follows: (4.9287671 years (May 31, 2000 through May 4, 2005) x 11%) x $6,725,000 = $3,646,054.90.

[6] Pre-judgment interest on the principal, at a rate of 7.375%, compounded daily, totals approximately $2,806,000.00.

4

that it is governed by New York law. However, that is only one factor to be considered by the Court in determining which jurisdiction's law should be used to determine the applicable interest rate.

For the reasons set forth above, SAMBA asserts that Delaware law should be used to determine the applicable interest rate and allowable expenses. It is appropriate to explain how SAMBA reconciles its position with the governing law clause in the Guaranty.

In this connection it is important to note that none of the parties, nor any aspect of either the BS&W loan documents, the loan transactions thereunder, SWEC's Guaranty or the Payment Letter, has any connection or contact with New York. Neither of the parties was organized or located in that state, the Guaranty was not executed or delivered there, nor to be performed there, and the question of how the Guaranty is interpreted will have no impact on New York, so it has no economic interest in the matter.[7]

---

[7] In 1984 New York enacted General Obligations Law ("GOL") Section 5-1401 which provides that in larger commercial transactions, (at least $250,000) the parties can provide that New York law will govern their documents even if neither the parties nor the transaction have New York contacts. However, the purpose of this provision was not to require New York courts to ignore all choice of law theory and practice. When New York law applies as a result of GOL §5-1401, the New York choice of law rules, not just the substantive law of the State, must be considered in appropriate situations. Further, there are some serious questions under the United States Constitution about applying GOL 5-1401 in a situation where there are no New York connections to the matter. See Barry W. Rashkover, Title 14, New York Choice of Law Rule for Contractual Disputes: Avoiding the Unreasonable Results, 71 Cornell L. Rev. 227 (1985) (concluding that section 5-1401 violates the full faith and credit clause of the Federal constitution in requiring New York courts to apply New York law to contracts bearing no significant contact to the State and in possible circumvention of the laws of other states). Section 5-1401 provides, in relevant part:

> The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars, including a transaction otherwise covered by subsection one of section 1-105 of the uniform commercial code, may agree that the laws of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or

In a recent large commercial case, the New York Court of Appeals stated:

> New York choice of law principles require a court to apply the law of the state with the most significant relationship with the particular issue in conflict (see Zeevi & Sons v. Grindlays Bank, 37 N.Y.2d 220, 226-227, 371; N.Y.S.2d 891, 333 N.E.2d 168 [1975], cert. denied 423 U.S. 866, 96 S.Ct. 126, 46 L.Ed.2d 95 ["(T)he rule which has evolved clearly in our most recent decisions is that the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict" (internal citations and quotations omitted)]; Restatement [Second] of Conflict of Laws § 188[1]; § 292[1]).

Indosuez Int'l Finance B.V. v. Nat'l Reserve Bank, 774 N.E.2d 696, 700 (2002); see American Equities Group, Inc. v. Ahava Dairy Products Corp., 01 Civ. 5207, 2004 U.S. Dist. LEXIS 6970, at *18-22 (S.D.N.Y. Apr. 23, 2004); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51, 55 (2d Cir. 1991) ("New York law allows a court to disregard the parties' choice when the 'most significant contacts' are in another state"). The *Indosuez* case involved a dispute between two foreign banks over a series of forward exchange contracts, some of which stipulated New York as the governing law. There were numerous contacts with New York which the Court found were sufficient not only to support jurisdiction over the parties and the subject matter of the dispute but also to support the application of New York law to interpret the contracts.

However, it has been stated that

> Consequently, if parties with no other New York contacts stipulate New York law under title 14 and then bring their action in a different state, New York law probably will not govern the dispute. Courts applying the reasonable relationship test will void the

---

undertaking bears a reasonable relation to this state. This section shall not apply to any contract, agreement or undertaking (a) for labor or personal services, (b) relating to any transaction for personal, family or household service, or (c) to the extent provided to the contrary in subsection two of section 1-105 of the uniform commercial code.

6

> governing law clause on the ground that New York lacks the requisite contact with the agreement. Similarly, courts using the interest analysis test will ignore the governing law clause and apply the law of a state significantly interested in the transaction.

71 Cornell L. Rev. at 244.

Thus, SAMBA's view is that either the Court should void or ignore the governing law clause in the Guaranty, or determine that the New York law which governs the Guaranty incorporates the choice of law rule of New York which requires the forum, as a matter of equity when there are no New York contacts, to apply the law of the state with the most significant relationship to the issues of the interest and expenses to be paid under the Guaranty.

SAMBA's action arose out of the SWEC bankruptcy case in Delaware and fundamentally involved interpretation of the Asset Purchase Agreement ("APA") under which Shaw purchased the assets of the Debtors, and the order of the Delaware Bankruptcy Court approving the APA. The APA provides that it is governed by Delaware law (APA § 10.06), and the Bankruptcy Court's approving order is intended to protect all those who were affected by the APA, including SAMBA. This case obviously is in a forum located in Delaware, and SWEC was organized as a Delaware corporation. These factors, plus the reasons asserted under Part A of this Section II above, require the application of Delaware law to the issue of the interest and expenses to which SAMBA is entitled under the Guaranty.

Another jurisdiction whose laws might be deemed to govern these issues is Massachusetts, which is the jurisdiction in which SWEC had its executive office and where SWEC negotiated and executed the Guaranty. It is also the state from which SWEC would have remitted the payments to perform under the Guaranty. While Massachusetts law provides for a 12% pre-judgment interest rate, which is more favorable to SAMBA than Delaware's 11% rate,

7

SAMBA respectfully suggests that Delaware has the more significant interests in and contacts with this matter, and that its laws should be controlling with respect to interest and expenses.

### III.     SAMBA is Entitled to Attorneys' Fees

Attorney fees can be awarded if there is a contractual basis for them.  See In re Fleming Companies, Inc., 316 B.R. 809, 815 (D. Del. 2004) (Robinson, J.); see also Bickford v. Smithson, C.A. No. 2002-05-187, 2003 WL 22931394, at *1 (Del. Com. Pl. Nov. 20, 2003).  It is well-established that Delaware courts give "great weight to contract clauses creating the right to payment of attorneys' fees in subsequent litigation" by "routinely enforc[ing] provisions of a contract allocating costs of legal actions arising from the breach of a contract."  Bickford, 2003 WL 22931394, at *1.

The Credit Agreement and Guaranty provide for the payment of any and all expenses incurred by SAMBA in enforcing its rights under either agreement.  See SAMBA/Bugshan Credit Agreement ¶ 9, Exhibit E at A62-A65 (providing for the reimbursement of "all expenses, including attorney's fees, court costs, appraisal fees and all other fees and expenses, incurred by the Bank in obtaining or enforcing any of its rights under this Agreement, the Note or the Security Documents."); Guaranty ¶ 1, Exhibit C at A57 ("[T]he undersigned hereby unconditionally guarantees the punctual payment when due of 50% of all obligations of the Borrower to you now or hereafter existing ("Obligations") together with interest thereon and any and all expenses incurred by you in enforcing your rights under this Guaranty.").  Courts have held nearly identical language to include attorneys' fees.  See Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516, 525 & n. 3 (7th Cir. 1995) (holding that a Guaranty "undoubtedly" contemplated attorneys' fees where the Guaranty provided for the payment of "any and all expenses which may be incurred [by you] in collecting all or any of the Obligations and/or in enforcing any rights hereunder," even though Guaranty did not explicitly reference

8

attorneys' fees); Sinclair Oil Corp. v. Schaefer, No. 91-36089, 1993 WL 441988, at *4 (9th Cir. 1993) (granting a request for attorneys fees where "the guaranty contract states that [the guarantor] guarantees payment of all expenses that may be incurred in enforcing any rights under the contract").

SAMBA incurred significant expenses in enforcing its rights under the operative agreement, including but not limited to attorneys' fees, court costs, and travel expenses. Under these circumstances, SAMBA is entitled to recover its travel expenses, and its reasonable attorneys' fees and costs, as well as estimated attorneys' fees which will be incurred in connection with the preparation of its Motion for Assessment of Damages, the instant Reply and the supporting documentation filed therewith, less the $1,000,000 in fees already recovered from SWEC in the Preference Action, resulting in net, reimbursable expenses of $985,663.56.

**IV.    Shaw Waived the Right to Object to the Amount of Samba's Cure Claim**

    **A.    SAMBA's Cure Claim Constitutes *Prima Facie* Evidence of the Validity and Amount of the Claim**

As set forth in SAMBA's Opening Brief, on or about August 24, 2000, SAMBA filed a Cure Claim to recover $6,728,549, plus interest, commissions, attorneys' fees and expenses from Shaw. Specifically, SAMBA's Cure Claim covered the amount of BS&W's loan outstanding on the date of the Debtor's bankruptcy petition, June 2, 2000, U.S. $6,728,549, which was comprised of $6,725,000 of principal and $3,549 of interest, and specifically claimed both interest and commissions as provided in the loan documents and Guaranty and all expenses of enforcement. After SAMBA filed its Cure Claim, Shaw did not file any objections to the substance of SAMBA's claim. In fact, Shaw has never contested the amount at issue in SAMBA's Cure Claim or, until it filed its Response, SAMBA's claim for interest and expenses. More specifically, Shaw has never contested the validity of the Guaranty, the Credit Agreement

9

or any of the express provisions contained therein, including the provisions in the Guaranty for the payment of interest on the obligations of BS&W and all of SAMBA's expenses of enforcing the Guaranty, or the provisions in the BS&W loan documents providing for the payment of interest and commissions on the outstanding principal and for the reimbursement of the expenses incurred in protecting and enforcing SAMBA's rights against BS&W.  As such, Shaw failed to rebut the *prima facie* validity of SAMBA's Cure Claim and is liable to SAMBA for the full amount due and owing under its Cure Claim, including prejudgment interest, commissions and attorneys' fees.  See Fed. R. Bankr. P. 3001(f); Bankruptcy Code § 502(a), 11 U.S.C. § 502(a); Steadman v. Steadman, No. Civ. A. 02-CV-8888, 2004 WL 503512, at *2 n.1 (E.D. Pa. Mar. 15, 2004) (discussing failure to object to proof of claim); In re Laforgia, Nos. 5-95-00036, 5-95-00976, 1998 WL 59480, at *3 (Pa. Bankr. Jan. 21, 1998) (discussing burden of the objector to come forward with evidence sufficient to rebut the presumption of validity).

  **B.** **Shaw Failed to Contest SAMBA's Cure Claim**

On December 20, 2000, the Bankruptcy Court approved a letter agreement between Debtors and Shaw dated December 27, 2000 supplementing the Asset Purchase Agreement (hereinafter, the Court's December 20, 2000 Order is referred to as the "December Order" and the letter agreement is referred to as the "December Agreement"; relevant excerpts of the December Agreement are attached as Exhibit B at B26-B34[8]).  In the December Agreement Shaw agreed to use commercially reasonable efforts to resolve contested Cure Claims before December 30, 2000, and to provide, on or before January 15, 2001, a list "of cure claims . . . that

---

[8]  All Exhibit references to pages B1-B34 are to pages in the Appendix to SAMBA's Reply Brief which is being filed herewith.

Shaw contends . . . (ii) that the asserted amount of any such filed cure claim . . . is overstated." See December Agreement at para. 7, Exhibit B at B30.

Notwithstanding the December Order and December Agreement, Shaw failed to contest or pay SAMBA's cure claim by December 30, 2000 and failed to file a Disputed Claims List by January 15, 2001. In fact, Shaw failed to assert any objection to SAMBA's Cure Claim until it filed and served its Second Omnibus Objection to Claims, which merely stated that SAMBA's claim was duplicative.

It is beyond dispute that the Letter Agreement established a process by which Shaw could challenge any cure claims that it disputed. One of the grounds explicitly identified as a basis for Shaw to contest a cure claim was if Shaw believed "that the Disputed Claim was overstated as to an amount or not an Assumed Liability under the Shaw Agreement." See December Agreement at para. 7, Exhibit B at B30. By failing to abide by the terms of the Bankruptcy Court's order and the Letter Agreement, Shaw waived its right to refute the validity or amount of SAMBA's Cure Claim. Therefore, this Court should find that Shaw has effectively waived any right to object to the amount of SAMBA's Cure Claim and is liable to SAMBA for the amount due and owing under its Cure Claim, which includes prejudgment interest, commissions and attorneys' fees.

**V.    Islamic Law Does Not Govern the Determination of Whether Samba is Entitled to Prejudgment Interest**

    **A.    Shaw Waived Illegality as a Defense by Failing to Plead it as an Affirmative Defense in Shaw's Answer**

Shaw has effectively waived the defense of illegality. Illegality is an affirmative defense that must be pleaded and cannot be raised by a subsequent motion or pleading where it will result in unfair surprise and prejudice to the plaintiff. See generally 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1278 (3d ed. 2004). It is universally accepted by the

11

federal courts that the failure to plead an affirmative defense as required by Rule 8(c) of the Federal Rules of Civil Procedure, results in the waiver of that defense. See id. Illegality is one of the specifically enumerated defenses that is subject to waiver if not timely raised. See Fed. R. Civ. P. 8(c). Not only did Shaw not assert any objection to the provisions of SAMBA's Cure Claim asserting a right to interest under the Guaranty, it failed to assert the defense of illegality when it answered SAMBA's Complaint. The defense was available to Shaw and foreseeable at the time it answered the Complaint. Shaw also failed to raise the issue in its motion papers and at oral argument. Therefore, Shaw waived the defense that the award of pre-judgment interest would be illegal.

In its Response to SAMBA's Motion for Assessment of Damages, Shaw raises the concept of illegality for the first time, by arguing that an award of prejudgment interest would be illegal under Saudi Law. At this stage in the proceedings, SAMBA would be unfairly prejudiced by Shaw's sudden and late assertion of this defense. Given the length of time between commencement of this action and the Court's ruling on the parties' summary judgment motions, during which period Shaw might have sought to raise the question of illegality, Shaw's failure to plead illegality operates as a bar to the Court's consideration of such issues. Accordingly, the Court should preclude Shaw from relying on and litigating any issues that relate to the unpleaded affirmative defense of illegality.

   **B.**  **Islamic Law Does Not Preclude the Award of Prejudgment Interest to SAMBA**

Even if the Court allows Shaw to assert illegality as a defense to an award of pre-judgment interest, principles of Islamic law do not govern the application of prejudgment interest under either or both of the BS&W loan documents and Guaranty. As set forth in the Declaration of Mohammed Saleh Mohammed Al-Motlaq, which is being filed herewith, Shaw's position, that

12

SAMBA is not entitled to prejudgment interest because it is forbidden by Saudi Arabian law, is simply incorrect.  See Decl. of Mohammed Saleh Mohammed Al-Motlaq at ¶¶ 4-7.  As a banking institution, SAMBA is not subject to a strict interpretation of Islamic law and is not precluded from charging or receiving interest payments.  See id. at ¶¶ 4, 5.  Commercial disputes involving a bank are heard before a quasi judicial body known as the Banking Disputes Settlement Committee ("Committee") of the Saudi Arabian Monetary Agency ("SAMA").  See id. at ¶ 4.  The Committee upholds arrangements which it considers to be customary or an internationally recognized banking practice, such as the collection of interest by a lending institution.  See id. at ¶¶ 4, 5.  In fact, on numerous occasions, the Committee has awarded SAMBA interest payments.  See id. at ¶ 5.  Thus, Shaw's purported reliance on Islamic principles and the regulations governing SAMA in support of its argument that Saudi law would not permit the application of prejudgment interest is entirely misplaced.  See id. at ¶ 7.  The Islamic prohibition concerning the collection of interest does not strictly apply to SAMBA or this dispute, and therefore, SAMBA is entitled to an award of prejudgment interest.  See id. at ¶¶ 4-7.

## VI.    Conclusion

Thus, in accordance with the Credit Agreement between BS&W and SAMBA, SWEC's Guaranty, SWEC's Payment Letter, applicable Orders of this Court and the Bankruptcy Court, and applicable law, SAMBA respectfully requests that this Court enter an order allowing its Motion for Assessment of Damages and awarding it:

(1)    the Initial Judgment of $6,725,000.00;

(2)    pre-judgment interest on this Initial Judgment in the amount of $3,646,054.90 (calculated at the Legal Accrual Rate of 11%);[9]

---

[9] Alternatively, if the Court decides that interest should be calculated under the Guaranty at the same rate as under the Credit Agreement, namely at a 7.375% compounded daily rate, the total

13

(3)    SAMBA's net expenses in the amount of $985,663.56, which include:

>    (a) SAMBA's travel expenses in the amount of $36,931.00;
>
>    (b) attorneys' fees, court costs, and all other fees and expenses, SAMBA incurred in obtaining or enforcing its rights under the Credit Agreement, in the amount of $1,927,982.56; and
>
>    (c) an estimated $20,750.00[10] in additional fees and costs incurred in connection with this Reply, the Declaration in Support of same, the Motion, Opening Brief, Affidavits and Declaration in Support of same,
>
>    which total $1,985,663.56,
>
>    less: $1,000,000.00 in fees and costs already recovered from SWEC in the Preference Action,
>
>    resulting in net expenses to be reimbursed in the amount of $985,663.56;

(4)    post-judgment interest on all portions of the Judgment ($11,356,718.46) at a rate of 3.33% beginning on May 5, 2005 until the date of full payment; and

(5)    leave to file supplemental motions for an assessment of damages pending the resolution of the related cases.

SAMBA further respectfully requests that this Court direct the Defendants to tender such total amount of damages, to Plaintiff's counsel by a date certain, and order any further relief as justice so requires.

---

amount of the prejudgment interest would be $2,806,000.00. As another alternative, if the Court decides that the obligations covered by the Guaranty include the accrued interest and commission under the Credit Agreement, the amount guaranteed would also include the $2,806,000.00 of accrued interest and commissions.

[10] This estimate may increase.

14

        Respectfully submitted,
        SAUDI AMERICAN BANK,
        By its attorneys,


<u>/s/ Francis A. Monaco, Jr.</u>
Francis A. Monaco, Jr. (#2078)
Kevin Mangan (#3810)
Monzack & Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE  19801
(302) 656-8163

Of Counsel:

John C. Hutchins (BBO #246060)
Daniel E. Rosenfeld (BBO #560226)
Amy B. Abbott (BBO #648072)
Kirkpatrick & Lockhart Nicholson Graham LLP
75 State Street
Boston, MA  02109
(617) 261-3100

Dated:  June 8, 2005

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| STONE & WEBSTER, INCORPORATED ) | Case No. 00-02142 (PJW) |
| et al., ) | Jointly Administered |
| ) | Adv. No. 01-7766 (PJW) |
| Debtors ) | |
| ) | |
| SAUDI AMERICAN BANK, ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 04-CV-834 (SLR) |
| ) | |
| THE SHAW GROUP INC., SWINC ) | |
| ACQUISTION THREE, INC., and ) | |
| STONE & WEBSTER ENGINEERING ) | |
| CORPORATION, et al., ) | |
| Defendants ) | |

**CERTIFICATE OF SERVICE**

  **I, Francis A. Monaco, Jr.,** certify that I am not less than 18 years of age, and that service of the foregoing document was made on June 8, 2005 upon:

**VIA HAND DELIVERY and Electronic Mail**

| | |
|---|---|
| Gregory A. Taylor, Esq. | Adam G. Landis, Esq. |
| Stephen Jenkins, Esq. | Landis Rath & Cobb LLP |
| Ashby & Geddes | 919 Market Street, Suite 600 |
| 222 Delaware Avenue | Wilmington, DE  19801 |
| Wilmington, DE  19899 | *(Counsel to SWE&C)* |
| gtaylor@ashby-geddes.com | landis@lrclaw.com |
| *(Counsel to Shaw Group, Inc.* | |
| *and SWINC Acquisition)* | |

  Under penalty of perjury, I declare that the foregoing is true and correct.

Date: June 8, 2005    _/s/ Francis A. Monaco, Jr.___
            Francis A. Monaco, Jr.

Document #:44601