IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| STONE & WEBSTER, INCORPORATED, *et al.*, | ) | |
| | ) | Case No. 00-02142 (PJW) |
| | ) | Jointly Administered |
| Debtors, | ) | Adv. No. 01-7766 (PJW) |
| | ) | |
| SAUDI AMERICAN BANK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | 1:04-cv-00834-SLR |
| | ) | |
| THE SHAW GROUP INC. and | ) | JURY TRIAL DEMANDED |
| SWINC ACQUISITION THREE, INC., | ) | |
| and STONE & WEBSTER ENGINEERING | ) | |
| CORPORATION, *et. al.* | ) | |
| | ) | |
| Defendants | ) | |

**RESPONSE OF THE SHAW GROUP INC. IN OPPOSITION TO
PLAINTIFF'S REVISED ITEMIZATION OF ATTORNEYS' FEES AND COSTS**

The Shaw Group Inc. ("Shaw"), by its undersigned counsel, hereby responds to and opposes the Revised Itemization of Attorneys' Fees and Costs filed by plaintiff Saudi American Bank ("SAMBA"). For the following reasons, Shaw respectfully requests that the Court limit SAMBA's recovery of attorneys' fees and costs to those incurred solely in this action in the enforcement of the Guaranty (as defined herein):

**I.   INTRODUCTION**

1.   The issue presented by SAMBA's itemization is to what extent Shaw is responsible for the attorneys' fees SAMBA incurred in trying to collect from other entities the money it is owed and in defending itself against other claims. SAMBA essentially argues that Shaw should be

responsible for all of those fees, including fees SAMBA incurred in defending itself against other parties and in pursuing collection from other sources of payment, and that in any event Shaw should be responsible for fees that go well beyond those SAMBA incurred in pursuing Shaw in this action.

2.  Thus, without expressly saying so, SAMBA is asking to reargue this Court's November 8, 2006 Amended Memorandum Opinion, which states that SAMBA's right to attorneys' fees stems solely from the "Guaranty," and the Guaranty says quite clearly that SAMBA is only allowed to collect its expenses for enforcing its "rights under this Guaranty."

3.  Most of SAMBA's attorneys' fees were incurred in defending against a preference action in bankruptcy court -- which had nothing to do with its rights under the Guaranty -- or pursuing Saudi Aramco, the fund holder who legitimately owes SAMBA the money due to it. Saudi Aramco's liability, however, has nothing to do with the Guaranty here. Rather, SAMBA's rights against Saudi Aramco stem from a wholly separate document giving it rights to collect against accounts receivable. SAMBA also says that it cannot separate most of the fees it incurred in this action from the fees it incurred in defending the Preference Action, and thus Shaw should pay both. But that too misses the mark. It is SAMBA, not Shaw, that has the burden of proving which attorneys' fees relate to which action, and it is patent that most of the attorneys' fees SAMBA incurred in the Preference Action have nothing to do with its rights under the Guaranty.

4.  In the end, SAMBA argues that it should not be out of pocket for any sums it has expended in trying to collect the amounts due on its loan. SAMBA's rights here, however, came from one document only -- the Guaranty -- and that document makes clear that SAMBA is entitled to collect fees only for its attempts to enforce that Guaranty. By attempting to go beyond that limit, SAMBA is ignoring the clear words of this Court's opinions.

## II. BACKGROUND

5. Stone & Webster Engineering Corporation ("SWEC"), a Delaware corporation, and Abdullah Said Bugshan & Bros. ("Bugshan"), a Saudi Arabian company, formed a joint venture, Bugshan Stone & Webster Company Limited ("BS&W"), under Saudi Arabian laws. In a letter agreement dated October 11, 1994, SWEC guaranteed to repay 50% of any loan, up to $35 million, from SAMBA to BS&W (the "Guaranty"). In a credit agreement dated January 22, 1998 (the "Credit Agreement"), SAMBA agreed to loan BS&W $35 million towards its upgrade of a Saudi Arabian oil refinery. The BS&W project ran into difficulties, and BS&W failed to repay SAMBA the outstanding loan amount. On December 22, 1998, SWEC and Bugshan entered into a letter agreement with SAMBA (the "Payment Letter"), with each agreeing to repay one-half of BS&W's outstanding loan at the rate of $650,000 a month.

**A.   Various Actions Related to the Debtors' Bankruptcy**

6. On June 2, 2000, Stone & Webster, Inc. ("S&W") and its subsidiaries, including SWEC (collectively, the "Debtors"), filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code. On July 14, 2000, Shaw and the Debtors entered into an Asset Purchase Agreement (the "APA") through which Shaw purchased a substantial portion, but not all, of the Debtors' assets and assumed certain of their liabilities.

**(1)   The Preference Action**

7. On August 24, 2000, SAMBA filed a Proof of Claim and statement of Cure Claim that were based upon SWEC's alleged liability under the Guaranty. The Proof of Claim included a contingent claim against SWEC in the event Shaw was determined not to have assumed liability under the Guaranty. (*See* D.I. 20 at A84).

8. On August 1, 2001, the Debtors initiated an adversary proceeding against SAMBA, which included causes of action to recover alleged preferential transfers and other alleged fraudulent conveyances, and to disallow the Proof of Claim (the "Preference Action").

9. On June 12, 2003, the Bankruptcy Court for the District of Delaware entered an order approving a settlement agreement between S&W, SWEC and SAMBA. In that agreement, the parties "agreed to settle the disputes involved in the Preference Action and SAMBA's contingent claims against SWEC...." (D.I. 20 at A85). As a result of the agreement, SWEC paid SAMBA $1,000,000, which SWEC and SAMBA agreed was to be credited against attorneys' fees first. (*Id.* at A86).

    (2)    **The Saudi Aramco Action**

10. On May 31, 2002, S&W and SWEC brought an adversary proceeding against Saudi Aramco seeking, *inter alia*, an award of damages for Saudi Aramco's breach of contract and an order demanding that Saudi Aramco account for and turn over certain withheld funds that were due and owing to BS&W. On November 7, 2002, SAMBA moved to intervene in the that adversary proceeding (the "Saudi Aramco Action"), and its Complaint in Intervention seeks declaratory and injunctive relief that, *inter alia*, an Assignment of Contract Proceeds is valid and enforceable, and entitles SAMBA to all monetary proceeds resulting from enforcement of the Assignment. There seems little question but that Saudi Aramco indeed owed the money to BS&W, and that SAMBA has the right to collect all sums due it under the Credit Agreement from any amount paid by Saudi Aramco.

    (3)    **This Proceeding -- The "Recovery" Action**

11. On October 18, 2001, SAMBA brought this adversary proceeding against Shaw and the Debtors alleging that Shaw had assumed the debt owed by SWEC to SAMBA under the

4

Guaranty and Payment letter (SAMBA now calls this the "Recovery Action;" we will follow SAMBA's nomenclature in this response).

12.  On August 13, 2002, Shaw moved for summary judgment in this proceeding, and SAMBA subsequently cross-moved for summary judgment. After briefing, the case was removed to this Court. On May 3, 2005, the Court entered an Order and Memorandum Opinion denying Shaw's motion for summary judgment and granting summary judgment in favor of SAMBA. (*See* D.I. 11). The Court held that, under the APA, Shaw had assumed the Guaranty and Payment Letter on behalf of SWEC and is liable for SWEC's outstanding obligation to SAMBA. (*Id.* at 17). On May 5, 2005, this Court entered judgment for SAMBA against Shaw in the amount of $6,728,549. On May 18, 2005, SAMBA filed a Motion for Assessment of Damages seeking to recover interest and attorneys' fees and expenses.

13.  On November 8, 2006, the Court issued an Amended Memorandum Opinion ruling on SAMBA's Motion for Assessment of Damages. (*See* D.I. 39). In that Opinion, the Court held that SAMBA was entitled to prejudgment interest and attorneys' fees and costs under the Guaranty (and only the Guaranty). In the Amended Order entered on November 8, 2006, the Court requested that SAMBA submit "an itemized account of its costs and expenses specifically incurred in connection with obtaining judgment in this case." D.I. 40 at ¶2. SAMBA filed its itemization as requested on November 20, 2006.

### III.  ARGUMENT

**A.  Attorneys' Fees Should Be Limited To Fees Incurred In Prosecuting This Action**

14.  The Court held that the obligation of SWEC to repay SAMBA (as assumed by Shaw) arose under the Guaranty and Payment Letter. *See* D.I. 39 at 6-7. "The obligation for SWEC to repay SAMBA did not arise out of the Credit Agreement, as SWEC and Bugshan were not parties to that agreement." *Id.* at 6. The Guaranty "'is a separate contract involving duties and

5

responsibilities which are different from the basic contract to which it is collateral.'" *Id.* at 6 quoting D.I. 11 (May 5 Mem. Op.). Furthermore, it is the Guaranty (and the Guaranty only) that entitles SAMBA to recover its attorneys' fees and costs. *See id.* at 13. The language of the Guaranty limits recovery of costs to "any and all expenses incurred by [SAMBA] in enforcing [its] rights under this Guaranty."

      15.    Given the limiting language of the Guaranty and this Court's prior decisions, the expenses recoverable by SAMBA are necessarily limited to the attorneys' fees that SAMBA incurred while prosecuting <u>this</u> action against Shaw -- the only action to enforce the Guaranty against Shaw -- and do not include those fees incurred in defending SAMBA in the Preference Action or in bringing actions against other entities to collect amounts owed under the Credit Agreement (e.g., the Saudi Aramco Action). Despite the holding of the Court and the limiting language of the Guaranty, SAMBA, however, repeatedly asserts in its Itemization that it is entitled to recover all its fees because the other actions were "efforts to enforce its rights and obligations under the Guaranty <u>and Credit Agreement</u>...." D.I. 51 at 3 (emphasis added); *see also id.* at 3 ("all three actions concern SAMBA's rights and obligations under the Guaranty and Credit Agreement") *and* 3-4 ("SAMBA's efforts to enforce its rights under the Credit Agreement and Guaranty in this proceeding"). As seen above, though this Court has already held that SAMBA is limited to seeking attorneys' fees under the Guaranty only and <u>not</u> the Credit Agreement.

      (1)    **The Preference Action**

      16.    The Preference Action was brought by the Debtors against SAMBA in connection with the Debtors' filing for relief under Chapter 11 of the Bankruptcy Code. Debtors claimed that certain payments received by SAMBA prior to the Chapter 11 filing amount to a preferential payment. Shaw was never a party to the Preference Action, and thus Shaw cannot be liable for

6

attorneys' fees sustained by SAMBA in defending that action. SAMBA argues that Shaw is responsible for such fees because the Bankruptcy Court instructed the parties to treat the Preference and Recovery Actions as consolidated for discovery purposes. D.I. 51 at 4. Even if one were to set aside the fact that the Preference Action has nothing to do with the Guaranty, it is Shaw's understanding that the effective consolidation was done for SAMBA's sake -- it certainly was not done to aid Shaw, which had no interest in the Preference Action. In any event, while discovery was consolidated (to a certain extent -- depositions that related to only one case were attended only by the parties to that case), the cases were not consolidated and Shaw never was a party to that action. Moreover, the docket sheet for the Preference Action (attached hereto as Exhibit A) shows at least 65 entries that have nothing to do with any consolidated discovery, including, among other things, briefing on motions for partial summary judgment, to amend the complaint and for partial judgment on the pleadings. There can be little doubt that a majority of the fees were incurred in connection with issues other than those related to discovery.

17.     It is unclear whether any of SAMBA's fees in the Preference Action also relate to work performed in support of this case. It is clear, though, that most of the fees SAMBA incurred in defending the Preference Action could not have anything to do with this case, and therefore cannot be Shaw's responsibility. The only fees for which SAMBA is entitled to reimbursement are fees incurred in the enforcement of the Guaranty, and enforcement of the Guaranty simply was not implicated in the Preference Action.

   **(2)   The Saudi Aramco Case**

18.     Similarly, SAMBA has no right to recover from Shaw the attorneys' fees SAMBA incurred in connection with prosecuting the Saudi Aramco Action, as Shaw is not a party to that litigation nor is the Guaranty the contract SAMBA is trying to enforce there. SAMBA's attempt to

7

intervene in the Saudi Aramco action involves enforcement of the Assignment of Proceeds that it received from BS&W as part of its loan collateral -- not the Guaranty. We wish SAMBA well in that case -- from what we can tell this entire episode came about because Saudi Aramco unjustly withheld payment to BS&W with devastating results to both BS&W and SWEC -- and it is Saudi Aramco that should pay all amounts owed to SAMBA (including, presumably, its attorneys' fees). But the Guaranty says nothing about paying for all suits brought by SAMBA against any possibly liable party; instead it says that SWEC will pay for all expenses incurred "in enforcing your rights under this Guaranty." SAMBA is not suing Saudi Aramco under the Guaranty, and thus is not entitled to pursue those attorneys' fees here.

**B.    SAMBA Has Failed to Isolate Fees Related Solely to the Recovery Action**

19.    While Shaw does not dispute the hours or rates incurred by SAMBA's attorneys, it does dispute that all of the work was performed in pursuing SAMBA's rights under the Guaranty. The Court requested that SAMBA break down and isolate the fees related to obtaining the judgment in this action. That is -- the fees related to the enforcement of the Guaranty. SAMBA, however, argues that the actions are "so intertwined" that it would be "impracticable and unjust to allocate SAMBA's fees and costs to one action at the exclusion of the other related actions." D.I. 51 at 3. As a result, SAMBA says it was able to isolate fees incurred solely in connection with the Recovery Action in very limited instances.

20.    Despite SAMBA's plaint that it is "impracticable and unjust" to break down the fees it has incurred, it would be utterly unjust to require Shaw to pay for fees for which it is not liable. SAMBA is entitled to be reimbursed only for those fees incurred to enforce the Guaranty -- not to those it incurred to defend itself in the Preference Action, and not to those against Saudi Aramco. SAMBA has the burden of proving what those fees are. If SAMBA cannot more accurately isolate

which fees correspond to each action, then it is not entitled to those fees. SAMBA's failure to carry its burden cannot mean the default is that Shaw should be liable for all fees, regardless of whether SAMBA incurred them in enforcing the Guaranty.

21. Accordingly, in order for SAMBA to recover only those attorneys' fees Shaw actually might owe, SAMBA must submit a breakdown of its attorneys' fees demonstrating which hours were dedicated to prosecuting this, and only this, action. Otherwise, SAMBA only is liable for $345,714.50, which comprises those fees specifically identified as attributable solely to the Recovery Action.[1]

### C. The $1,000,000 Credit Applies to Fees Incurred in Enforcing the Guaranty

22. Finally, SAMBA also argues that should the Court determine that Shaw is not liable for all of the fees incurred in connection with the Preference, Recovery and Saudi Aramco Actions, then the $1,000,000 SAMBA recovered in the May 2003 settlement should be applied first to those fees that are not recoverable.

23. Presumably SAMBA's argument is that the settlement agreement applies only to the Preference Action, and thus the $1,000,000 should be used for fees related to that action only. SAMBA ignores, however, that the settlement agreement was in settlement of "the Preference Action and SAMBA's contingent claims against SWEC...." (D.I. 20 at A85 (emphasis added)). In addition to its Proof of Claim, SAMBA sued SWEC in this action alleging that "[u]nless Shaw assumes its obligation to pay SAMBA under the Guaranty, the Funding Letter, and SAMBA's Cure Claim, SWEC is obligated to pay SAMBA under the Guaranty, the Funding Letter, and SAMBA's Proof of Claim." (D.I. 1 in Adv. Pro. 01-07766 (Complaint) at ¶60). Indeed, SAMBA had no

---

[1] There is a similar issue with respect to the recovery of costs as requested by SAMBA. SAMBA failed to submit a breakdown that identifies the actions to which the costs correspond. Without such a breakdown, Shaw cannot determine the costs in this action for which it is liable.

9

affirmative claims in the Preference Action and the debtors would not have paid SAMBA one penny to settle that action, much less $1,000,000. Every penny of that million dollars necessarily relates directly to the claims brought by SAMBA in this action <u>under the Guaranty</u>. The claim in this action against SWEC is part of SAMBA's contingent claims that were settled. Accordingly, the $1,000,000 must be applied against any fees and costs incurred by SAMBA in this action for which Shaw is liable.

WHEREFORE, for the foregoing reasons, Shaw respectfully requests that the Court grant SAMBA those attorneys' fees and costs that were incurred solely in this action in the enforcement of the Guaranty.

ASHBY & GEDDES

/s/ Catherine A. Strickler
Stephen E. Jenkins (I.D. No. 2152)
Catherine A. Strickler (I.D. No. 4310)
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
*Attorneys for The Shaw Group Inc.*

Dated: December 7, 2006
175430.1