IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STONE & WEBSTER, INC. | ) | Bk. No. 00-02142 (PJW) |
| et al., | ) | Jointly Administered |
| | ) | |
| Debtors | ) | |
| | ) | |
| SAUDI AMERICAN BANK, | ) | Adv. No. 01-7766 (PJW) |
| Plaintiff | ) | |
| | ) | Civ. No. 04-834-SLR |
| v. | ) | |
| | ) | |
| THE SHAW GROUP INC., SWINC | ) | |
| ACQUISTION THREE, INC., and | ) | |
| SWE&C LIQUIDATING TRUSTEE, | ) | |
| Defendants | ) | |

### SAUDI AMERICAN BANK'S REPLY TO THE RESPONSE OF THE SHAW GROUP INC. IN OPPOSITION TO PLAINTIFF'S REVISED ITEMIZATION OF ATTORNEYS' FEES AND COSTS

**Monzack & Monaco, P.A.**
Francis A. Monaco, Jr. (#2078)
Kevin Mangan (#3810)
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
(302) 656-8163

**Kirkpatrick & Lockhart Nicholson Graham LLP**
John C. Hutchins (BBO #246060)
Daniel E. Rosenfeld (BBO #560226)
Amy B. Abbott (BBO #648072)
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100

Dated: December 18, 2006

BOS-1034564 v8

# TABLE OF CONTENTS

I. Introduction ............................................................................................................................ 1

II. SAMBA's Attorneys' Fees and Costs Incurred in the Preference and Saudi Aramco Actions are Recoverable in this Proceeding as Costs of Obtaining Judgment ................... 2

    A. The Preference Action ............................................................................................ 2

    B. Consolidation of the Preference and Recovery Actions ........................................ 3

    C. SAMBA's Recovery in the Settlement of the Preference Action Should be Allocated First to any of SAMBA's Fees and Expenses Found to be Non-Recoverable from Shaw in this Case ............................... 4

    D. Saudi Aramco Action ............................................................................................. 5

III. All Fees and Expenses incurred in the Preference and Saudi Aramco Actions are "Obligations" of BS&W Covered by the Guaranty ........................................................... 6

    A. The "Obligations" of BS&W Under the Credit Agreement ................................... 6

IV. Conclusion ........................................................................................................................ 8

I. **Introduction**

The Court's Amended Memorandum Opinion, read in conjunction with the loan documents, makes it clear that all debt obligations of BS&W[1] to SAMBA were guaranteed by SWEC and ultimately assumed by Shaw. In its Response to SAMBA's Revised Itemization of Attorneys' Fees and Costs, Shaw selectively quotes from the Court's Opinion in a blatant effort to distort the Court's award of SAMBA's fees and costs incurred in connection with the Preference and Saudi Aramco Actions. Shaw's efforts to revisit and reinterpret the clear and unambiguous language of the loan documents at issue in this case is inconsistent with the reasoning and findings set forth in the Court's Revised Memorandum Opinion and Revised Order.[2]

Moreover, despite Shaw's assertions to the contrary, the Revised Itemization of Fees and Costs submitted by SAMBA is in compliance with this Court's Order. As requested in this Court's November 8, 2006 Order, SAMBA specifically itemized the costs and fees SAMBA incurred in connection with obtaining judgment in this case. Shaw takes an unjustifiably narrow view of the phrase "costs and fees incurred in obtaining the judgment" which conflicts with the tenor of the Court's Memorandum and is inconsistent with the relevant documents. When three

---

[1] All capitalized terms not otherwise defined herein have the meaning ascribed to them in SAMBA's Opening Brief in Support of Saudi American Bank's Motion for Assessment of Damages.

[2] As this Court implicitly recognized in its Amended Memorandum of Opinion, the fees and costs SAMBA incurred in obtaining or enforcing its rights under the Credit Agreement are recoverable in this proceeding. See Amended Memorandum Opinion at 13. It appears from the Court's Memorandum that the principal issue to be addressed in SAMBA's Itemization of Fees and Costs was whether the costs incurred by SAMBA in connection with the Saudi Aramco Action were included in the amount set forth by SAMBA in its Motion for Assessment of Damages. See id.

1

adversary proceedings in the same bankruptcy case share as many common parties, issues and relevant documents and are as mutually dependent upon the outcome in each proceeding as is the case with respect to the Recovery, Preference and Saudi Aramco Actions, it is well nigh impossible to say that the costs incurred primarily in one proceeding were not also costs of obtaining judgment in one of the other proceedings.

As set forth below, the attorneys' fees and costs incurred by SAMBA in the Preference and Saudi Aramco Actions are recoverable in this proceeding because they constitute costs and expenses specifically incurred in connection with obtaining judgment in this case. In addition, the attorneys' fees and costs incurred by SAMBA in connection with enforcing the Credit Agreement and Assignment of Contract Proceeds are recoverable in this proceeding because they are "obligations" of BS&W covered by the Guaranty.

### II. SAMBA's Attorneys' Fees and Costs Incurred in the Preference and Saudi Aramco Actions are Recoverable in this Proceeding as Costs of Obtaining Judgment

As set forth in SAMBA's Opening Brief in Support of its Motion for Assessment of Damages [D.I. 21] ("Opening Brief"), SAMBA's Reply Brief to the Response of the Shaw Group, Inc. in Opposition to SAMBA's Motion for Assessment of Damages [D.I. 29] and SAMBA's Revised Itemization of Attorneys' Fees and Costs [D.I. 51], all of the fees and costs incurred by SAMBA in the Recovery, Preference and Saudi Aramco Actions were incurred in "obtaining judgment in this case" because they resulted from SAMBA's efforts to enforce its rights and obligations under the Guaranty and Credit Agreement in the face of Shaw's refusal to accept responsibility for its assumption of SWEC's liabilities to SAMBA.

#### A. The Preference Action

All of the fees and costs incurred by SAMBA in the Preference Action are directly related to SAMBA's efforts to enforce its rights under the Credit Agreement and Guaranty in this

2

proceeding.[3] If SAMBA had not been able to successfully defend itself in the Preference Action, Shaw would have assumed an additional principal debt of up to $7.8 million, plus any claims for interest on the additional principal amount and costs allowed by the court. Not only did the time and effort that SAMBA expended in the Preference Action ultimately reduce Shaw's exposure and reduce the judgment against it in this proceeding, that time and effort also reduced further Shaw's actual liability by collecting reimbursement from the Debtors in the amount of $1,000,000, which SAMBA applied to the attorneys' fees it had incurred to that time. Thus, SAMBA's efforts in the Preference Action served to mitigate significantly its damages in this proceeding. As such, the fees and costs SAMBA incurred in connection with the Preference Action were incurred in connection with obtaining judgment in this case.

B.   Consolidation of the Preference and Recovery Actions

Moreover, the fees and costs that SAMBA incurred in the Preference Action are part and parcel of SAMBA's efforts to enforce its rights under the Credit Agreement and Guaranty in this proceeding. Shaw cannot and does not dispute the simple fact that the Preference and Recovery Actions were consolidated for discovery purposes. Rather, at this late date, Shaw attempts to reargue the position that it put forth, and Judge McKelvie rejected, in its Opposition to SAMBA's Motion for Consolidation. After being fully briefed and hearing from the parties, Judge McKelvie provided explicit instructions "to build the evidentiary record together with the idea

---

[3] In connection with SAMBA's efforts to enforce its rights under the loan documents in this case, SAMBA prepared and filed Cure Claims and Proofs of Claim and monitored the administration of the main chapter 11 bankruptcy cases of SWEC and the other Debtors. The fees identified in SAMBA's Revised Itemization of Attorneys' Fees and Costs as those incurred in the Preference and Recovery Actions include attorneys' fees and costs incurred in connection with those services. The expenses SAMBA incurred for those services were specifically incurred in connection with obtaining judgment in this case.

3

that you can use it in either case."[4] January 25, 2002 Hearing Transcript [Bankruptcy Case No. 00-2142, D.I. 2543] at 30, attached hereto as Exhibit 1.[5] Following Judge McKelvie's instructions, the parties, including Shaw, treated the Preference and Recovery Actions as if they were consolidated for discovery purposes.

Shaw neither appealed Judge McKelvie's ruling nor objected to the manner in which discovery was taken or noticed. Shaw's strategic decision not to attend certain depositions is irrelevant. The cases were consolidated for discovery purposes, and therefore, the time and expense that SAMBA expended in connection with the Preference Action is inexplicably intertwined with SAMBA's efforts in this proceeding. Accordingly, the fees and costs that SAMBA incurred in the Preference Action are recoverable as costs of obtaining judgment in this case.

        C.      <u>SAMBA's Recovery in the Settlement of the Preference Action Should be Allocated First to any of SAMBA's Fees and Expenses Found to be Non-Recoverable from Shaw in this Case</u>

In its Response, Shaw takes the inconsistent and illogical position that Shaw should not be responsible for fees and costs incurred in the Preference Action because Shaw had no interest in the Preference Action and "enforcement of the Guaranty simply was not implicated in the Preference Action." See Response at 7. Then, incredibly, Shaw goes on to argue that it is entitled to receive the benefit of the $1,000,000,000 Settlement Agreement reached in the

---

[4] Counsel for Shaw was present at the hearing and stated "I was not prepared to speak to this motion today as counsel for Debtors stated it's not ripe. I believe we would oppose consolidation, and I believe I would agree with Debtors' suggestion we have a teleconference to discuss these issues." Tr. at 24, Exhibit 1. Shortly thereafter, Judge McKelvie stated that the parties should treat the cases as consolidated for discovery purposes. See Tr. at 30, Exhibit 1.

[5] Pages 1-3 and 25-30 of the Hearing Transcript were attached as Exhibit H to SAMBA's Opening Brief. Relevant portions of the Hearing Transcript are attached hereto as Exhibit 1 for ease of reference and to include page 24, which is cited in footnote 4 above.

Preference Action because "every penny of that million dollars necessarily relates directly to the claims brought by SAMBA in this action under the Guaranty." See Response at 10 (emphasis in original). Shaw cannot have it both ways.

As SAMBA has consistently stated, it is not seeking to recover any portion of the $1,000,000 fee previously recovered in the settlement of the Preference Action. In fact, SAMBA has always taken the position that by defending itself in the Preference Action, SAMBA mitigated its damages in this case by reducing SAMBA's claims for attorneys' fees by $1,000,000. If, however, the Court were to determine that Shaw is not liable for some portion of the fees and expenses itemized by SAMBA, then the Court will have necessarily found that those fees and expenses were not incurred in connection with obtaining judgment in this case or in connection with enforcement of SAMBA's rights under the Credit Agreement and Guaranty. In such a circumstance, the $1,000,000 that SAMBA recovered from the Debtors in the Preference Action should be allocated first to any fees and expenses deemed non-recoverable.

If any fees and costs are deemed non-recoverable by the Court, Shaw should not receive the benefit of the favorable settlement that SAMBA and Debtors worked hard to reach because, in Shaw's own words, "Shaw had no interest in the Preference Action." See Response at 7. As such, Shaw has "no interest" in the $1,000,000 that SAMBA received in settlement of the claims asserted by and against the Debtors.

### D. Saudi Aramco Action

In addition, the fees and costs that SAMBA has incurred (and continues to incur) in the Saudi Aramco Action are recoverable in this proceeding as costs of obtaining judgment.

Due to Shaw's denial of, and strenuous opposition to SAMBA's attempts to make it assume, responsibility for SWEC's outstanding financial obligations to SAMBA, SAMBA was forced to take all the necessary steps to try to collect the principal amount due and owing under

5

BS&W's debt obligations to SAMBA. Accordingly, SAMBA was required by the circumstances to file a Motion to Intervene in the Saudi Aramco Action to protect its rights and interests under the Assignment of Contract Proceeds and Credit Agreement. But for Shaw's obdurate refusal to acknowledge its liability under the Guaranty, SAMBA would not have had to take any action in connection with the Saudi Aramco Action. Therefore SAMBA's fees and expenses in that proceeding must be deemed to be costs incurred in obtaining judgment in this case.

### III.   All Fees and Expenses incurred in the Preference and Saudi Aramco Actions are "Obligations" of BS&W Covered by the Guaranty

In its Response, Shaw argues that SAMBA's right to collect attorneys' fees and costs stems solely from the Guaranty. Shaw is not correct on this point. What Shaw has chosen to overlook in making that statement is that the Guaranty covered fifty percent of all obligations of BS&W to SAMBA. The obligations of BS&W to SAMBA expressly included all fees and expenses incurred by SAMBA in obtaining or enforcing any of its rights under SAMBA's Credit Agreement with BS&W, the Note issued to SAMBA by BS&W and the security documents securing BS&W's obligations, which included the Assignment of Contract Proceeds. Accordingly, all the fees and costs SAMBA incurred in connection with enforcing the Credit Agreement and Assignment of Contract Proceeds are recoverable as "obligations" of BS&W covered by the Guaranty. Thus, the fees and costs incurred by SAMBA in connection with the Credit Agreement and Assignment of Contract Proceeds are recoverable in this proceeding not only as costs incurred in connection with obtaining judgment in this case but also because they are "obligations" of BS&W covered by the Guaranty.

   A.  The "Obligations" of BS&W Under the Credit Agreement

Pursuant to the terms of the Guaranty, SWEC unconditionally guaranteed (a) fifty percent of <u>all obligations</u> of BS&W to SAMBA "<u>now or hereafter existing</u> ('Obligations') together with

6

interest thereon, and (b) any and all expenses incurred" by SAMBA in enforcing its rights under the Guaranty. See Guaranty, attached as Exhibit C at A57-A60 to SAMBA's Opening Brief (emphasis added). The stated purpose of the Guaranty was to induce SAMBA "to extend credit by way of overdraft, short termloans [sic], letters of credit, letters of gurantees, to or for the account of Bugshan S&W Company Ltd. ('the Borrower') and purchase or accept instruments upon which the Borrower is liable. . . ." Id.

After the execution of the Guaranty, SAMBA extended credit to BS&W and accepted instruments upon which BS&W was liable, namely the Credit Agreement, Promissory Note, Payment Letter and Assignment of Contract Proceeds. SAMBA did so in reliance upon the broad, unconditional guaranty that <u>all obligations</u> of BS&W were being guaranteed by SWEC, including those responsibilities and obligations that were created by and set forth in those documents.

As the Court found in its Amended Memorandum Opinion, "the Credit Agreement created the debt obligation of the BS&W joint venture" to SAMBA. See Amended Memorandum Opinion at 11 [D.I. 39]. The Credit Agreement is an instrument upon which BS&W is liable to SAMBA, and therefore, under the express terms of the Guaranty, the Credit Agreement is an obligation covered by the Guaranty. See Credit Agreement, attached as Exhibit E at A62-A65 to SAMBA's Opening Brief. Accordingly, SWEC's liability for the debt obligations set forth in the Credit Agreement is unconditional.

A fundamental component of BS&W's debt obligation to SAMBA under the Credit Agreement is to pay:

> all expenses, including attorney's fees, court costs, appraisal fees and all other fees and expenses, incurred by the Bank in obtaining or enforcing any of its rights under this Agreement, the Note or the Security Documents.

7

Id. Thus, the fees and expenses incurred by SAMBA in obtaining and enforcing its rights under the Credit Agreement, the Promissory Note and the Security Documents constitute part of BS&W's debt obligation to SAMBA under the Credit Agreement. Accordingly, BS&W's debt to SAMBA under the Credit Agreement included the attorneys' fees and costs SAMBA incurred in obtaining and enforcing its rights under the Credit Agreement, the Promissory Note and the collateral Security Documents, namely the Assignment of Contract Proceeds.

The Preference Action was a direct attack on payments made to SAMBA by BS&W and credited against the Note. The proposed settlement of SWEC's adversary proceeding against Saudi Aramco could irreparably damage SAMBA's rights under the Assignment of Contract Proceeds. Therefore, by defending itself in the Preference Action and seeking to intervene in the Saudi Aramco Action, SAMBA was seeking to protect and enforce its rights under the Credit Agreement and Note and to protect its rights under the Assignment of Contract Proceeds. Accordingly, the Guaranty covers SAMBA's attorneys' fees and costs incurred in the Preference and Saudi Aramco Actions as "obligations" of BS&W. Therefore, the fees and costs that SAMBA incurred throughout the pendency of the Preference action and which it continues to incur in the Saudi Aramco Action are recoverable in this proceeding as obligations of BS&W covered by the Guaranty.

## IV. Conclusion

All of the fees and costs incurred by SAMBA in the Recovery, Preference and Saudi Aramco Actions resulted from SAMBA's efforts to enforce its rights and obligations under the Guaranty and Credit Agreement. Thus, in accordance with this Court's November 8, 2006 Amended Order, Shaw should pay SAMBA attorneys' fees and costs in the full amount of

8

$2,318,764.05, less the $1,000,000 previously recovered from SWEC in the Preference Action, resulting in net fees and costs of $1,318,764.05.[6]

Respectfully submitted,
SAUDI AMERICAN BANK,
By its attorneys,

*/s/ Kevin Mangan*

Francis A. Monaco, Jr. (#2078)
Kevin Mangan (#3810)
Monzack & Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE  19801
(302) 656-8163

Of Counsel:
John C. Hutchins (BBO #246060)
Daniel E. Rosenfeld (BBO #560226)
Amy B. Abbott (BBO #648072)
Kirkpatrick & Lockhart Nicholson Graham LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
(617) 261-3100

Dated:  December 18, 2006

---

[6] The total fees set forth herein include the fees and costs billed in connection with the Opening Brief in Support of Saudi American Bank's Motion for Assessment of Damages.  See Amended Order at ¶ 2(c).