```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF DELAWARE

In re:                           ) Chapter 11
                                 )
STONE & WEBSTER, INC. et al.,    ) Bk. No. 00-2142(PJW)
                                 ) Jointly Administered
         Debtors.                )
                                 )
_____)
                                 )
SAUDI AMERICAN BANK,             ) Adv. No. 01-7766(PJW)
                                 )
         Plaintiff,              )
                                 )
    v.                           ) Civ. No. 04-834-SLR
                                 )
SHAW GROUP, INC., SWINC          )
ACQUISITION THREE, INC., and     )
SWE&C LIQUIDATING TRUSTEE,       )
                                 )
         Defendants.             )
```

Francis A. Monaco, Jr., Esquire and Kevin Mangan, Esquire of Monzack & Monaco, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: John C. Hutchins, Esquire, Daniel E. Rosenfeld, Esquire and Amy B. Abbott, Esquire of Kirkpatrick & Lockhart Nicholson Graham L.L.P., Boston, Massachusetts.

Stephen E. Jenkins, Esquire, and Catherine A. Strickler, Esquire of Ashby & Geddes, Wilmington, Delaware. Counsel for Defendant Shaw Group, Inc.

**MEMORANDUM OPINION**

Dated: February 13, 2007
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On June 2, 2000, debtor Stone & Webster, Inc. filed a voluntary petition for relief under chapter 11, title 11 of the United States Code. On October 18, 2001, plaintiff Saudi American Bank ("plaintiff") filed an adversary proceeding (Adv. No. 01-7766) against defendants Shaw Group, Inc. ("Shaw"), SWINC Acquisition Three, Inc. and SWE&C Liquidating Trustee (collectively "defendants") in the United States Bankruptcy Court for the District of Delaware (the "bankruptcy court"). (Bank. D.I. 1)[1] In this action, referred to by the parties as the "recovery action," plaintiff alleged that, under an Asset Purchase Agreement ("the APA"), defendants assumed a debt owed to plaintiff by Stone & Webster Engineering Corporation ("SWEC"), a subsidiary of Stone & Webster. (Id.) The adversary proceeding was withdrawn from bankruptcy court on September 13, 2004. (Bank. D.I. 88) Plaintiff and defendants filed motions for summary judgment. The court granted plaintiff's motion for summary judgment (Bank. D.I. 47) and denied defendants' motion for summary judgment (Bank. D.I. 29). (D.I. 11) Defendant Shaw appealed (D.I. 24) and the case was remanded for clarification on the issue of damages. (D.I. 33)

The court issued its amended memorandum opinion regarding

---

[1] References to "Bank. D.I." refer to the docket in the bankruptcy court for Adv. No. 01-7766.

damages on November 8, 2006. (D.I. 39) In its accompanying order, the court required plaintiff to submit to defendant Shaw an itemized account of its costs and expenses, and set a schedule for submissions regarding any disputes regarding plaintiff's accounting. (D.I. 40) Plaintiff submitted its itemization of fees and costs on November 20, 2006 (D.I. 41), and a revised itemization on November 21, 2006 (D.I. 51). Defendant Shaw filed its response in opposition on December 7, 2006. (D.I. 52) Plaintiff filed its responsive paper on December 12, 2006. (D.I. 54) The court has jurisdiction over actions arising out of chapter 11 of the bankruptcy code pursuant to 28 U.S.C. § 1334(a).

## II. BACKGROUND

The court recited many of the pertinent facts in its memorandum opinion accompanying its order granting summary judgment to plaintiff (D.I. 11) and memorandum opinion accompanying its order on damages. (D.I. 39) The most pertinent facts related to the present motion for assessment of damages are summarized below.

In 1980, a joint venture called Bugshan Stone & Webster ("BS&W") was created under the laws of Saudi Arabia. BS&W was owned in equal shares by SWEC and Abdullah Said Bugshan & Bros. ("Bugshan"). BS&W entered into a $130 million contract in the mid-1990s to upgrade a large oil refinery at Ras Tanura in Saudi

2

Arabia. In an effort to induce plaintiff to grant credit to BS&W, Bugshan and SWEC executed a "Guaranty" wherein each party guaranteed 50% of all obligations to plaintiff bank from BS&W. (D.I. 26, ex. B) Plaintiff granted $35 million of credit to BS&W by agreement on January 22, 1998. (Id., ex. C) A contract was signed by Bugshan and SWEC on December 22, 1998 (the "Payment Letter") which specified that Bugshan and SWEC were each obligated to repay half of the loan balance to plaintiff, with each party paying $650,000 per month. (Id., ex. D) The court previously determined that defendant Shaw assumed the obligations of the Guaranty and Payment Letter when it acquired SWEC. (D.I. 11 at 17)

SWEC made monthly $650,000 payments to BS&W for the repayment of plaintiff's loan. (D.I. 21 at 7) SWEC filed for bankruptcy on June 2, 2000, at which time it owed plaintiff $6,728,549. (D.I. 11 at 3; Adv. No. 00-2142, D.I. 49 at A69) This amount reflected $6,725,000 in unpaid principal and $3549 of interest. (Id.) Anticipating SWEC's petition for bankruptcy, plaintiff demanded payment on May 31, 2000. (Id.; Bank. D.I. 1) Plaintiff never received payment from SWEC. In its bankruptcy petition, SWEC listed the total debt owed plaintiff.

Plaintiff moved the court for an order that Shaw assumed SWEC's debt through its acquisition of SWEC. (Bank. D.I. 29) The court granted plaintiff's motion (D.I. 11), and subsequently

3

awarded plaintiff $6,728,549 in damages,[2] prejudgment interest, post-judgment interest, and $20,750 in costs, as well as the fees and costs incurred by plaintiff which were "specifically incurred in connection with obtaining judgment in this case." (D.I. 39, 40) The current dispute arises as the result of plaintiff's accounting of said expenses. (D.I. 41)

## III. DISCUSSION

### A. Other Actions Involving the Parties

Several actions have been commenced and litigated by the parties: (1) a preference action (Adv. No. 01-1120); (2) the "Saudi Aramco" action (Adv. No. 02-3963), initiated by Stone & Webster and SWEC, in which plaintiff filed a motion to intervene; and (3) the instant recovery action. Prior to the withdrawal of the recovery action to this court, the recovery action and the preference action identified above (the "preference action") were consolidated for purposes of discovery. (D.I. 21 at 10)

The preference action was initiated on August 1, 2001 by Stone & Webster and its subsidiaries, including SWEC (collectively, "the debtors"), to recover alleged preferential transfers made by SWEC to plaintiff in March and April of 2000 totaling $975,000. (Adv. No. 01-1120, D.I. 1) The preference

---

[2]The court incorrectly awarded plaintiff $6,728,594, rather than the $6,728,549 sought by plaintiff. The court hereby amends its order (D.I. 40) to reflect the $6,728,549 sought by plaintiff, irrespective of interest.

4

action was scheduled for trial on May 14, 2003. Prior to that date, the parties executed an agreement whereby the preference action was settled and SWEC paid plaintiff $1 million.[3] (Id., D.I. 119, ex. A) An order dismissing the preference action was issued by the bankruptcy court on May 25, 2004. (Id., D.I. 120) Plaintiff states that it applied this $1 million "to the attorneys' fees it had incurred to that time, including fees related to the [r]ecovery [a]ction." (D.I. 51 at 4-5)

The Saudi Aramco action was filed in bankruptcy court on May 31, 2002 by the debtors against the Saudi Arabian Oil Company for declaratory judgment, indemnification, breach of contract and turnover of estate property. (Adv. No. 02-3963, D.I. 1) Plaintiff filed a motion to intervene on November 7, 2002. (Id., D.I. 19) Through the Saudi Aramco action, plaintiff sought an alternative source of payment from BS&W for the 1998 loan. (D.I. 51 at 5) The bankruptcy court denied plaintiff's motion to intervene on May 1, 2006.[4] (Adv. No. 02-3963, D.I. 47, 50)

### B. Plaintiff's Accounting

Plaintiff's itemization totals $2,124,641.30 in fees and

---

[3]The agreement also stated that plaintiff retains a general, unsecured claim for $2.5 million against SWEC. (Adv. No. 01-1121, D.I. 119, ex. A)

[4]Plaintiff has appealed this decision to district court. (Adv. No. 02-3963, D.I. 58)

$194,122.75[5] in costs. (D.I. 51 at 7-9) Plaintiff claims that the fees could only be isolated into distinct fee groups (corresponding to the preference and recovery actions, the recovery action alone, and the Saudi Aramco action) "in **very** limited circumstances," such as when the preference action was dismissed, or filings in the recovery action which did not relate to discovery. (D.I. 51 at 7) (emphasis in original) To further complicate matters, plaintiff admits that fees listed in its "preference and recovery actions" group - by far the fee group including the largest chunk of attorneys' fees (at $1,553,254.25)- include "[l]egal fees that are related to multiple matters . . . (e.g. Saudi Aramco and [r]ecovery)." (Id.) Plaintiff also has identified fees incurred in the Saudi Aramco action or recovery action alone.[6] (Id. at 8) Plaintiff also itemized three additional fees: (1) $274.50 in fees billed by plaintiff's counsel; (2) $5.884.05 in fees billed by Clifford Chance; and (3) $15,334.00 in fees billed by Judge Francis G.

---

[5]In its first non-"revised" filing (November 20, 2006), plaintiff's costs totaled $192.961.11. (D.I. 41) The additional $1,161.64 corresponds to "[c]osts to be billed by [plaintiff's counsel Kirkpatrick & Lockhart Nicholson Graham LLP ("K&L")] (as of 11.20/06)". (D.I. 51 at 9)

[6]Plaintiff submitted with its original accounting four affidavits in support. (D.I.s 42-45) A revised version of one of the affidavits was subsequently filed with four additional exhibits, containing attorney invoices. (D.I.s 46-50) All of plaintiff's exhibits are color-coded to designate fees incurred in either the preference and recovery actions, the recovery action, or the Saudi Aramco action.

Conrad. (D.I. 51 at 8) It is unclear as to what particular actions these other fees correspond. Finally, plaintiff has listed its costs billed by its two law firms and specifically relating to travel, which are not broken down by action.[7] (<u>Id.</u> at 9)

### C. Analysis

In its memorandum opinion, the court specifically stated that plaintiff could recover only those costs and fees incurred in obtaining the judgment in this case, in other words, those fees and expense incurred in enforcing its rights under the Guaranty. (D.I. 39) Plaintiff apparently takes issue with the court on this point, arguing instead that "the [r]ecovery, [p]reference, and Saudi Aramco [a]ctions are [all] recoverable in this proceeding . . . [because they] are so intertwined that, in the vast majority of instances, it would be both impracticable and unjust to allocate [plaintiff's] fees and costs to one action at the exclusion of the other related actions." (D.I. 51 at 3) Plaintiff then goes on at length to explain why the recovery, preference and Saudi Aramco actions are related. (<u>See</u> D.I. 51 at 6-9)

Although the court does not dispute that these actions are

---

[7]These costs are $151,445.99 in costs billed by K&L, the $1,161.64 additional in K&L costs discussed <u>supra</u>, $4,584.12 in costs billed by counsel Monzack & Monaco, P.A., and $36,931.00 in "travel expenses," which are not attributed to either K&L or M&M specifically.

7

related to the same universe of facts, the court decided in plaintiff's favor in the instant litigation based on the legal consequences flowing from the Guaranty, and concluded that only those fees and expenses related to enforcing plaintiff's rights under that instrument should be awarded.[8] After reviewing the record, therefore, defendant Shaw shall pay plaintiff $345,714.50, the amount identified by plaintiff as its fees attributable solely to the recovery action. (D.I. 51 at 8) Defendant Shaw shall not be responsible for any of plaintiff's itemized costs, insofar as these costs have not been clearly correlated to any particular action. See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) ("The party seeking attorneys'

---

[8]Given that plaintiff's motion to intervene in the Saudi Aramco action was denied, the court cannot fathom how any fees and expenses in that litigation could possibly be so "intertwined" with the litigation at bar as to justify allocating said expenses to defendant Shaw.
　　The court finds that the issues presented in the preference action - whether SWEC made preferential payments to plaintiff in March and April 2000 - differs significantly from those presented in the instant recovery action - whether plaintiff could rightfully recover from Shaw the money owed by SWEC pursuant to the Guaranty. Further, the settlement agreement specifically provides that it is not intended to have, nor does it have, "any effect with respect to [plaintiff's] action against Shaw in connection with [plaintiff's] Cure Claim" "or any of the claims or causes of action asserted" in the instant adversary proceeding. (Adv. No. 01-1120, D.I. 199, ex. A) For these reasons, the court declines to make Shaw responsible for the fees and expenses related to the preference action. By the same reasoning, the court grants plaintiff's request that the $1 million it recovered in the preference action "be allocated first to the non-recoverable fees and expenses, with only the balance being used to reduce Shaw's liability for the fees and expenses found to be recoverable from Shaw." (D.I. 51 at 7)

fees has the burden to prove that its request is reasonable.").

## IV. CONCLUSION

For the aforementioned reasons, the court finds that defendant Shaw shall pay plaintiff $345,714.50 in fees, pursuant to its previous memorandum opinion and order. (D.I.s 39, 40)  An order shall follow.