IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| STONE & WEBSTER, INCORPORATED, *et al.*, ) | |
| ) | Case No. 00-02142 (PJW) |
| ) | Jointly Administered |
| Debtors, ) | Adv. No. 01-7766 (PJW) |
| ) | |
| ) | |
| SAUDI AMERICAN BANK ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -against- ) | 1:04-cv-00834-SLR |
| ) | |
| THE SHAW GROUP INC. and ) | JURY TRIAL DEMANDED |
| SWINC ACQUISITION THREE, INC., ) | |
| and STONE & WEBSTER ENGINEERING ) | |
| CORPORATION, *et. al.* ) | |
| ) | |
| Defendants ) | |

**MOTION TO APPROVE SUPERSEDEAS BOND
AND FOR STAY PENDING APPEAL**

Pursuant to Federal Rule of Civil Procedure 62(d), defendant The Shaw Group Inc. ("Shaw"), by its undersigned attorneys, hereby moves the Court to approve its Supersedeas Bond in the form filed herewith as Exhibit A. Plaintiff Saudi American Bank ("SAMBA") does not object to the proposed form. In support of its motion, Shaw states as follows:

### I.   BACKGROUND

1.   Stone & Webster Engineering Corporation ("SWEC"), a Delaware corporation, and Abdullah Said Bugshan & Bros. ("Bugshan"), a Saudi Arabian company, formed a joint venture, Bugshan Stone & Webster Company Limited ("BS&W"), under Saudi Arabian laws. In a letter agreement dated October 11, 1994, SWEC guaranteed to repay 50% of any loan, up to $35 million,

from SAMBA to BS&W (the "Guaranty"). In a credit agreement dated January 22, 1998 (the "Credit Agreement"), SAMBA agreed to loan BS&W $35 million towards its upgrade of a Saudi Arabian oil refinery. The BS&W project ran into difficulties, and BS&W failed to repay SAMBA the outstanding loan amount. On December 22, 1998, SWEC and Bugshan entered into a letter agreement with SAMBA (the "Payment Letter"), with each agreeing to repay one-half of BS&W's outstanding loan at the rate of $650,000 a month.

2. On June 2, 2000, Stone & Webster, Inc. ("S&W") and its subsidiaries, including SWEC (collectively, the "Debtors"), filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code. On July 14, 2000, Shaw and the Debtors entered into an Asset Purchase Agreement (the "APA") through which Shaw purchased a substantial portion, but not all, of the Debtors' assets and assumed certain of their liabilities.

3. On October 18, 2001, SAMBA brought this adversary proceeding against Shaw and the Debtors alleging that Shaw had assumed the debt owed by SWEC to SAMBA under the Guaranty and Payment letter.

4. On August 13, 2002, Shaw moved for summary judgment, and SAMBA subsequently cross-moved for summary judgment. After briefing, the case was removed to this Court. On May 3, 2005, the Court entered an Order and Memorandum Opinion denying Shaw's motion for summary judgment and granting summary judgment in favor of SAMBA. (*See* D.I. 11). The Court held that, under the APA, Shaw had assumed the Guaranty and Payment Letter on behalf of SWEC and is liable for SWEC's outstanding obligation to SAMBA. (*Id.* at 17). On May 4, 2005, the Court entered judgment for SAMBA against Shaw in the amount of $6,728,549.

5. On May 18, 2005, SAMBA filed a Motion for Assessment of Damages seeking to recover interest and attorneys' fees and expenses. On May 26, 2005, Shaw filed a Notice of

Appeal, appealing the judgment to the United States Court of Appeals for the Third Circuit. On January 19, 2006, SAMBA filed a Motion to Dismiss Appeal for Lack of Jurisdiction arguing that the District Court had not rendered a final appealable judgment in the SAMBA Proceeding because of the outstanding Motion for Assessment of Damages. On February 7, 2006, the Third Circuit denied SAMBA's motion to dismiss the appeal, but remanded the case to this Court for clarification regarding damages. (*See* D.I. 33).

6. On November 8, 2006, the Court issued an Amended Memorandum Opinion ruling on SAMBA's Motion for Assessment of Damages and holding that SAMBA was entitled to prejudgment simple interest at 9%, post-judgment compound interest at 3.33% and attorneys' fees and costs in an amount to be determined. (*See* D.I. 39 *and* 40). On February 13, 2007, the District Court issued a Memorandum Opinion and Order awarding SAMBA $345,714.50 in attorneys' fees. (*See* D.I. 55 *and* 56).

7. Now that the Court has clarified its ruling on damages and attorneys' fees, Shaw has appealed the final judgment to the United States Court of Appeals for the Third Circuit, filing its Notice of Appeal on March 14, 2007.

II. **The Court Should Approve the Supersedeas Bond and Enter a Stay Pending Appeal**

8. Shaw now seeks to post a supersedeas bond in order to obtain a stay pending appeal pursuant to Rule 62(d). Rule 62(d) states: "When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay.... The bond may be given at or after the time of filing the notice of appeal.... The stay is effective when the supersedeas bond is approved by the court." F.R.C.P. 62(d).

A. **The Amount of the Supersedeas Bond is Sufficient to Protect SAMBA's Interests**

9. Shaw proposes posting a supersedeas bond in the form filed herewith as Exhibit

A. A bond in the amount of $11,385,000 is adequate to protect the interests of SAMBA should Shaw fail to prevail upon appeal. The total judgment in this matter through February 13, 2007 equals $10,634,277.11. Thereafter, post judgment interest will total $354,121.43 for February 14, 2007 through February 13, 2008, and $365,913.67 for February 14, 2008 through February 13, 2009. Thus, as of February 13, 2009, a total amount of $11,383,264.86 will be owed to Shaw. Accordingly, Shaw proposes a bond in the amount of $11,385,000, which would allow for the appeal to take approximately two years. Shaw does not expect the appeal will take that long, but if it does, SAMBA will be fully protected.

**B.    The Supersedeas Bond Issuer is an Approved Surety**

10.    National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is listed on the Department of the Treasury's Listing of Approved Sureties as a company holding a Certificate of Authority as Acceptable Surety. (*See* ww.fms.treas.gov/c570/c570.html#certified). National Union also has an underwriting limitation of $632,477,000, which is well in excess of the amount of the proposed bond. (*See id.*). Accordingly, Shaw's interests will be protected as the supersedeas bond will be issued by an appropriate surety.

**C.    SAMBA Does Not Object to the Proposed Supersedeas Bond**

11.    Counsel for SAMBA have received a copy of the proposed supersedeas bond and have indicated that SAMBA does not object to the proposed form.

**D.    A Stay Becomes Effective Once the Court Approves the Supersedeas Bond**

12.    Once the Court approves the form of supersedeas bond, the stay pending appeal becomes effective. F.R.C.P. 62(d). Accordingly, Shaw respectfully request that the Court enter a stay pending appeal once it approves the form of supersedeas bond.

WHEREFORE, for the foregoing reasons, Shaw respectfully requests that the Court enter an order approving Shaw's proposed supersedeas bond (Exhibit A hereto) and enter a stay pending appeal.

ASHBY & GEDDES

/s/ *Catherine A. Strickler*
Stephen E. Jenkins (I.D. No. 2152)
Catherine A. Strickler (I.D. No. 4310)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sjenkins@ashby-geddes.com
cstrickler@ashby-geddes.com

Dated: March 29, 2007
178254.1

*Attorneys for The Shaw Group Inc.*